## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CENTILLION DATA SYSTEMS, LLC, a Delaware corporation, </br></br> Plaintiff, </br></br> v. </br></br> AVOLENT, INC., a Delaware corporation, </br></br> Defendant. | ) ) ) ) ) ) C. A. No. 05-712-JFF ) ) JURY TRIAL DEMANDED ) ) ) ) |

**BRIEF IN SUPPORT OF AVOLENT INC.'S MOTION TO STAY ACTION
PENDING REEXAMINATION OF THE '270 PATENT**

|  |  |
|---|---|
|  | Richard L. Horwitz (#2246) |
|  | David E. Moore (#3983) |
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | Hercules Plaza, 6th Floor |
|  | 1313 N. Market Street |
| A. James Isbester | P.O. Box 951 |
| Gillian W. Thackray | Wilmington, DE 19899-0951 |
| ISBESTER & ASSOCIATES | Tel.: (302) 984-6000 |
| 3160 College Avenue, Suite 203 | rhorwitz@potteranderson.com |
| Berkeley, CA 94705 | dmoore@potteranderson.com |
| Telephone: (510) 655-3014 |  |
| Facsimile: (510) 655-3614 | *Attorneys for Defendant Avolent, Inc.* |
|  |  |
| Dated: November 8, 2005 |  |

## TABLE OF CONTENTS

I. PROCEDURAL AND FACTUAL BACKGROUND ..................................................... 1

II. APPLICABLE LEGAL STANDARDS REGARDING A STAY
    PENDING REEXAMINATION ................................................................................ 2

        A.    Congress Created the Reexamination Procedure In
              Order To Create A Less Costly Alternative Forum
              For Addressing Questions of Patent Validity. ............................... 2

        B.    In Order to Give Effect To Congress's Intent,
              District Courts Generally Stay Patent Infringement
              Cases When the Patents Are Subject To
              Reexamination. .............................................................................. 3

III. ARGUMENT .......................................................................................................... 6

        A.    Centillion Will Not Be Prejudiced By A Stay Of
              Proceedings. .................................................................................. 6

        B.    The Issues For Trial Will Be Simplified by a Stay of
              Proceedings ................................................................................... 8

        C.    The Case Is At An Early Stage, Before Onset Of
              Discovery, Favoring A Grant Of Stay. ....................................... 11

        D.    Judicial Resources Will Be Conserved And
              Litigation Cost Reduced If A Stay Is Granted. ........................... 12

IV. CONCLUSION AND REQUEST FOR ORDER ................................................... 13

## TABLE OF AUTHORITIES

### CASES

*ASCII Corp. v. STD Entertainment USA., Inc.*,
   844 F. Supp. 1378 (N.D. Cal. 1994) ................................................................... 4, 5, 11

*Alloc, Inc. v. Unilin Decor N.V.*,
   C. A. No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) ........................ 5

*Bausch & Lomb, Inc. v. Alcon Laboratories*,
   914 F. Supp. 951 (W.D.N.Y. 1996) ...................................................................... 7, 12

*Braintree Labs., Inc. v. Nephron-Tech. Inc.*,
   1997 WL 94237 (D.Kan. 1997) ................................................................................ 10

*Citicasters Co. v. Country Club Communications*,
   44 U.S.P.Q. 2d 1223 (C.D. Cal. 1997) ....................................................................... 4

*Clinton v. Jones*,
   520 U.S. 681 (1997) ................................................................................................... 4

*Cognex Corp. v. National Instruments Corp.*,
   C. A. No. 00-442-JJF, 2001 WL 34368283 (D. Del. June 29, 2001) ...................... 4, 5

*Cost Brothers Inc. v. Travelers Indemnity Co.*,
   760 F.2d 58 (3rd Cir. 1985) ....................................................................................... 3

*Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co.*,
   1987 WL 6413 (N.D. Ill. 1987) ................................................................... 3, 4, 10, 12

*Ethicon Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988) ................................................................................. 3

*GPAC, Inc. v. D.W.W. Enterprises, Inc.*,
   144 F.R.D. 60 (D.N.J. 1992) ............................................................................ 5, 6, 12

*Gould v. Control Laser Corp.*,
   705 F.2d 1340 (Fed. Cir. 1983) ................................................................................. 3

*Grayling Industries, Inc. v GPAC, Inc.*,
   19 U.S.P.Q. 2d 1872, 1991 WL 236196 (N.D. Ga. 1991) ....................................... 12

*Gioello Enters. Ltd. v. Mattel, Inc.*,
   C. A. No. 99-375-GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001) .......................... 5

*Hamilton Industries, Inc. v. Midwest Folding Prod. Mfg. Corp.*,
  1990 WL 37642 (N.D. Ill. 1990) ...............................................................................3, 10

*Intervascular Research Ltd. v. United States District Court for the
  District of Delaware*, 994 F. Supp. 564 (D.Del. 1998) ...................................................2

*Landis v. North America Co.*,
  299 U.S. 248 (1936).........................................................................................................3

*Lectrolarm Custom Services, Inc. v. Vicon Industries, Inc.*,
  2005 WL 2175436 (W.D. Tenn. 2005).........................................................................11

*Loffland Brothers Co. v. Mid-Western Energy Corp.*,
  225 U.S.P.Q. 886, 1985 WL 1483 (W.D. Okla. 1985)..................................................12

*Lutron Electronics Co. v. Genlyte Thomas Group, L.L.C.*,
  2004 WL 953088, (E.D. Pa. 2004) .................................................................................5

*Middleton, Inc. v. Minnesota Mining and Manufacturing Co.*,
  2004 WL 1968669 (S.D. Iowa 2004) ...............................................................10, 11, 12

*Pegasus Dev. Corp. v. Directv, Inc.*,
  C. A. No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003)..............*passim*

*Purolite Int'l, Ltd. v. Rohm and Haas Co.*,
  1992 WL 142018 (E.D. Pa. 1992) ...................................................................................5

*Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine Inc.*,
  68 U.S.P.Q. 2d 1755 (E.D. Mich. 2003)..................................................................11, 12

*Remington Arms, Co. v. Modern Muzzleloading, Inc.*,
  1998 WL 1037920 (1998 M.D. N.C. 1998) ....................................................................6

*Robert H. Harris Co., Inc. v. Metal Manufacturing Co., Inc.*,
  19 U.S.P.Q. 2d 1786, 1991 WL 217666 (E.D. Ark. 1991)............................................12

*Rockwood Pigments, NA, Inc. v. Interstate Materials, Inc.*,
  2002 U.S. Dist. LEXIS 9509 (N.D. Ill. 2002) .................................................................8

*Softview Computer Prods. Corp. v. Haworth, Inc.*,
  2000 WL 1134472 (S.D. N.Y. 2000).......................................................................11, 12

*Sun-Flex Co. v. Softview Computer Prods. Corp.*,
  1989 WL 117976 (N.D. Ill. 1989) .................................................................................11

*Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*,
   2004 WL 422697 (N.D. Ill. 2004), ...................................................................7, 8

*Teradyne, Inc. v. Hewlett-Packard Co.*,
   1993 U.S. Dist. LEXIS 14601 (N.D. Cal. 1993) ..........................................................8

*United Sweetner USA. Inc. v. Nutrasweet Co.*,
   766 F. Supp. 212 (D. Del. 1991).................................................................................4

*Vitronics Corp. v. Conceptronic Inc.*,
   36 F. Supp. 2d 440 (D. N.H. 1997).............................................................................10

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) .....................................................................................9

*Wireless Spectrum Techs., Inc. v. Motorola Corp.*,
   2001 WL 32852 (N.D. Ill. 2001) .................................................................................7

*Xerox Corp. v. 3 Comm. Corp.*,
   69 F. Supp. 2d 404 (W.D.N.Y. 1999) .........................................................................4

## STATUTES

35 U.S.C. §301 ...................................................................................................................2

35 U.S.C. §305 ..............................................................................................................2, 11

35 U.S.C.§307(a) ................................................................................................................8

## OTHER

DONALD S. CHISUM, CHISUM ON PATENTS § 11.07[4][B][IV]
   (Matthew Bender & Co. 2004) ..................................................................................11

I.      PROCEDURAL AND FACTUAL BACKGROUND

This is a patent infringement action. The patent in question is U.S. Patent No. 5,287,270 (the "'270 Patent"). The '270 patent proposes an alternative to traditional paper invoicing for large, complicated bills such as corporate telephone bills. Under the system described in the patent, the large computers on which such bills are created and maintained would be used to create an electronic database of the invoice, which would then be saved in some readily accessible format on a 5¼" or 3½" "floppy disk," and mailed to the customer. This purportedly met a demand by customers that they be able to analyze their bills more efficiently. The '270 patent sets forth three independent claims and a host of dependent claims.

On September 30, 2005, plaintiff Centillion Data Systems, LLC ("Centillion") sued Avolent, Inc. ("Avolent") for infringing unspecified claims of the '270 patent. Centillion served the Complaint on October 19, 2005.

Five months before Centillion initiated this action, on May 5, 2005, an unidentified third party (not Avolent) requested that the United States Patent and Trademark Office reexamine the three independent claims, Claims 1, 8 and 47, of the '270 patent. The request for reexamination stated that these claims were unpatentable over two pieces of prior art. The first is an article entitled *TI SW Bell United in EDI Billing Trial* (the "SW Bell/TI Article"), published in Net World, June 20, 1988. The second is a users' manual for DMW Commercial Systems, Inc. Communications Management Software (the "DMW Reference"). The Patent Office granted the reexamination request on June 26, 2005, stating that it agreed that this prior art raised a substantial new question of patentability as to Claims 1, 8, and 47 and that a reasonable examiner would consider the SW Bell/TI Article, in particular, to be important in deciding whether or not the claims are patentable. (Ex. 1 hereto).

In view of the fact that the reexamination had been on-going for many months prior to initiation of this suit and could significantly impact issues in this suit and the fact

that discovery has not yet begun, Avolent contacted Centillion and inquired whether Centillion would agree to stay the current litigation pending resolution of the reexamination. Centillion refused to stipulate to a stay. Thus, in an effort to conserve judicial and both parties' resources, Avolent is filing this motion to stay all proceedings pending resolution of the reexamination.

A motion to stay ordinarily tolls a party's time to respond. *Intervascular Research Ltd. v. United States District Court for the District of Delaware*, 994 F.Supp. 564, 567 (D.Del. 1998). Accordingly, Avolent has not yet answered the Complaint. Avolent stands ready to do so, however, should the Court so desire.

## II.     APPLICABLE LEGAL STANDARDS REGARDING A STAY PENDING REEXAMINATION

### A.     Congress Created the Reexamination Procedure In Order To Create A Less Costly Alternative Forum For Addressing Questions of Patent Validity.

As the Court well knows, the process by which patents are granted in this country is entirely closed. Although the examiner performs a prior art search, and the applicant is required to provide prior art of which the applicant is aware, there is no opportunity for the public to contribute to the collection of prior art the examiner considers in evaluating a patent application. And thus, the examiner must often consider the patentability of the claims of the application without an accurate view of the existing level of technology. The result is that the Patent Office can grant patents that mistakenly encompass within their claims activity that long predates the patentees' invention. In the past, the only way this mistake could be rectified was through patent infringement litigation.

Recognizing the inefficiency in using the courts to remedy deficiencies in the Patent Office's access to prior art, in 1980 Congress created the reexamination procedure, now codified in Title 35 United States Code, sections 301-307. This process permits a member of the public to bring to the Patent Office's attention additional prior art that might bear on the patentability of the claims. If, upon review of this prior art, the Patent

2

Office concludes that the art indeed does raise "a substantial *new* question of patentability," the Patent Office declares a reexamination of the claims. The patent is then subjected to the exact same examination procedure applicable to an original application, including discussion between the applicant and the examiner of the meaning of claim terms and comparison of the prior art to the claims, as well as possible amendment of the claims.

As the foregoing discussion demonstrates, by enacting the reexamination procedure, Congress created a vehicle for "speedy and less costly review of the validity of patents…" *Hamilton Indus., Inc. v. Midwest Folding Prod. Mfg. Corp.*, 1990 WL 37642, at *1 (N.D. Ill. 1990). (Ex. 2 hereto) The goal was not to cause duplication of the efforts of the district courts in reviewing patent validity, but rather, to provide an alternative to that process. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

### B. In Order to Give Effect To Congress's Intent, District Courts Generally Stay Patent Infringement Cases When the Patents Are Subject To Reexamination.

The Court has the inherent power to stay an action in the interests of efficient and fair resolution of the disputed issues. *See Landis v. North Am. Co.,* 299 U.S. 248, 254 (1936). "The decision to stay a case is firmly within the discretion of the Court." *Pegasus Development Corp. v. Directv, Inc.*, C. A. No. 00-1020-GMS, 2003 WL 21105073, at *1 (D. Del. May 14, 2003) (Ex. 3 hereto), *citing Cost Bros. Inc. v. Travelers Indem. Co.,* 760 F.2d 58, 60 (3rd Cir. 1985). The Federal Circuit has recognized that a district court may properly stay a patent case where the Patent Office is reexamining the patent in question. *Ethicon Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."). Indeed, Congress approved the liberal granting of such stays. *Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co.,* 1987 WL 6314, at *2 (N.D. Ill. 1987) (Ex. 4 hereto), ("[I]n passing the

3

legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."). Continuing with litigation over a particular right while the very existence of that right is uncertain not only duplicates burden upon the parties, but could constitute a significant waste of court resources. *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) ("[T]here is a liberal policy in favor of granting motion to stay pending the outcome of USPTO reexamination or reissuance proceedings.")

In determining whether to grant a stay, courts look to several factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Pegasus Dev. Corp. v. Directv, Inc.*, C. A. No. 00-1020-GMS, 2003 WL 21105073, at *1 (D. Del. May 14, 2003) (Ex. 3), *quoting Xerox Corp. v. 3 Comm. Corp.,* 69 F.Supp. 2d 404, 406 (W.D.N.Y. 1999) (citing cases); *cf. United Sweetner USA. Inc. v. Nutrasweet Co., 766* F. Supp. 212, 217 (D. Del. 1991) (stating a similar test). Thus, a stay is acceptable when the court properly analyzes the effect of the delay and the stage of the proceedings. *Clinton v. Jones*, 520 U.S. 681, 706-707 (1997); *Citicasters Co. v. Country Club Communications*, 44 U.S.P.Q.2d 1223, 1224 (C.D. Cal. 1997). In addition, courts may also examine advantages in granting a stay, such as conservation of judicial resources and the reduction in litigation costs for both parties. *Emhart Indus., Inc. v. Sankyo Seiki Mfg., Co.*, 1987 WL 6314 at *2 (N.D. Ill. 1987) (Ex. 4). Thus, the courts seek to balance these various factors in the decision making process. *Cognex Corp. v. National Instruments Corp.,* C. A. No. 00-42-JJF, 2001 WL 34368283, at *1 (D. Del. June 29, 2001) (Ex. 5 hereto).

Applying these standards, the courts have created a remarkably homogeneous body of case law. Where a request for reexamination has been filed early in a patent infringement suit, the litigation is almost uniformly stayed to allow the Patent Office to

4

complete its Congressional mandate. *Alloc, Inc. v. Unilin Décor N.V.,* C. A. No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) (Ex. 6 hereto) (motion to stay granted as reexamination was ongoing as to a related patent, which could impact the patentability of the patent at suit, and discovery had not yet begun.); *Pegasus Dev. Corp. v. Directv, Inc.* C. A. No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) (Ex. 3) (motion to stay granted as reexamination may affect the issues in the case); *Gioello Enters. Ltd. v. Mattel, Inc.*, C. A. No. 99-375-GMS, 2001 WL 125340 (D. Del. Jan 29, 2001) (Ex. 7 hereto)(motion to stay granted although discovery nearly complete, as reexamination may impact the issues at trial); *United Sweetener USA Inc v. Nutrasweet Co.,* 766 F.Supp. 212 (D.Del. 1991) (stay granted as the court had only contended with pretrial motions and little, if any discovery has been conducted); *ASCII Corp. v. STD Entertainment USA., Inc.*, 844 F.Supp. 1378 (N.D. Cal. 1994) (motion to stay was granted as the parties were in the initial stages of the lawsuit and had undertaken little or no discovery.); *Lutron Electronics Co. v. Genlyte Thomas Group L.L.C.*, 2004 WL 953088 (E.D. Pa. 2004) (Ex. 8 hereto) (Motion to stay was granted upon the USPTO deciding to grant the reexamination.); *Purolite Int'l, Ltd v. Rohm and Haas Co.,* 1992 WL 142018 (E.D. Pa. 1992) (Ex. 9 hereto) (court granted motion to stay upon Patent Office decision to grant the reexamination); *GPAC, Inc. v. D.W.W. Enters., Inc.,* 144 F.R.D. 60 (D.N.J. 1992) (stay granted given the relative infancy of the case, the non-moving party would not be unduly prejudiced). Only when the defendant initiates a request late in the proceedings as an effort to delay, when the plaintiff-patentee decides to request reexamination of its own patent late in the proceedings, or the reexamination will not affect the bulk of the issues before the court is the motion to stay denied. *See, e.g.*, *Cognex* at *2-3.

As Centillion will not be prejudiced, let alone unduly prejudiced, because the issues for trial will be simplified, and because discovery has not even begun nor a trial date set, the Court should grant Avolent's motion for a stay. Moreover, the advantages of

5

judicial economy and the cost reduction to the parties further weigh in favor of granting a stay of the proceedings.

### III.    ARGUMENT

####    A.    Centillion Will Not Be Prejudiced By A Stay Of Proceedings.

One of the factors considered by courts when granting a stay is whether the non-moving party will be unduly prejudiced or presented with a clear tactical disadvantage. *Pegasus Dev. Corp. v. Directv, Inc.*, C. A. No. 00-1020-GMS, 2003 WL 21105073, at *1 (D.Del. May 14, 2003) (Ex. 3).  Types of prejudice examined by the courts involve the past expenditures on the case, already conducted discovery, and the timing of the reexamination request.  *See e.g., Remington Arms, Co., Inc. v. Modern Muzzleloading Inc.,* 1998 WL 1037920, at *2-3 (1998 M.D. N.C.) (Ex. 10 hereto) (examining the expenses of the plaintiff, the timing of the request, and the fact that discovery was closed).

There has been no expenditure by Centillion except for the cost of filing the Complaint and discovery has not yet been initiated.  Thus, Centillion can not claim any prejudice due to expenditure on discovery.  Failure to show significant expenditures reduces the probability of prejudice.  *See, GPAC Inc. v. DWW Enterprises, Inc.,* 144 F.R.D. 60, 64-65 (D.N.J. 1992) (The court in granting the motion to stay focused on the fact that substantial discovery had yet to occur, a final pre-trial order would not be submitted for some time, and plaintiff had not demonstrated that substantial expense and time had been invested in the litigation which would militate against granting the motion).  Moreover, it is highly probable that resolution of the reexamination before beginning discovery will ultimately result in reduction of costs for Centillion while providing numerous other advantages, as discussed further *infra*.

Furthermore, the request for reexamination was filed months before the Complaint in this suit and Centillion was aware of this when it made its decision to file. This reexamination was not filed on behalf of Avolent and even if it had been, any delay

that may result from a grant of stay would in and of itself be insufficient grounds for not granting the stay. *See e.g., Pegasus,* 2003 WL 21105073, at *2 (Ex. 3) ("as the plaintiffs had affirmatively invoked the rights of the patent statute, they can hardly be heard now to complain of the rights afforded others by that same statutory framework."). To the extent that Centillion argues, in an opposition to this motion, that it would be prejudice by a delay, such prejudice would be a consequence of actions entirely under Centillion's control, as Centillion choose the timing for the filing of this action, knowing full well that a reexamination was ongoing.

Besides, rather than prejudicing or tactically disadvantaging Plaintiff, a stay will benefit Centillion in that it will prevent Centillion from wasting time and resources litigating the alleged infringement of patent claims which ultimately may be cancelled or amended by the Patent Office. *See e.g., Bausch & Lomb, Inc. v. Alcon Labs.,* 914 F. Supp. 951, 953 (W.D. N.Y. 1996); *Wireless Spectrum Techs., Inc. v. Motorola Corp.,* 2001 WL 32852, at *2 (N.D. Ill. 2001) (Ex. 11 hereto), and *Tap Pharm. Prods. v. Atrix Labs., Inc.,* 2004 WL 422697, at *2 (N.D. Ill. 2004) (Ex. 12 hereto) (granting stay despite the patent's pending expiration in a "large and likely complicated patent," because "it is possible that the re-examination will simplify these proceedings and ultimately make up for any delay that has been cause"). Thus, Centillion is far better served by waiting for the determination of the Patent Office and this factor weighs in favor of granting a motion to stay.

Finally, Avolent would be prejudiced if the motion to stay is not granted. Avolent would be forced to expend resources in time and money to address claims that may be invalidated. Even if the claims are not invalidated and only amended, Avolent will need to spend additional resources dealing with the changes such amendments may have on claim construction and any defenses that Avolent may assert.

### B.    The Issues For Trial Will Be Simplified by a Stay of Proceedings

Granting a stay will simplify the issues for trial. Centillion asserts that Avolent infringes the '270 Patent. Several defenses against infringement are likely to be asserted by Avolent, not the least of which is invalidity based upon anticipation and obviousness. The reexamination request similarly challenges the validity of the '270 Patent citing to a specific piece of prior art not previously examined by the Patent Office during prosecution of the patent. During a reexamination, the Patent Office reviews the cited prior art and determines whether it somehow invalidates one or more of the claims and may cancel or modify these claims.[1] Thus, the Patent Office's reexamination could affect Avolent's invalidity defense in this case.[2]

Centillion cannot argue that the reexamination likely to be trivial. The SW Bell/TI Article describes an effort on the part of SW Bell to record the billing data of one of its major customers, Texas Instruments, in a database file that could then be transferred to a Texas Instruments computer for further analysis. In short, the article describes a system very like that described in the patent.

This impact is not limited to the claims for which reexamination was requested, but extends to all the claims in the patent. Centillion has not yet identified which claim or claims it asserts that Avolent infringes. But as the request for reexamination was directed to all of the independent claims of the '270 Patent, Claims 1, 8, and 47, any

---

[1]  35 U.S.C.§307(a) (Upon completion of the reexamination process, the Patent Office "will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amendment of new claims determined to be patentable.")

[2]  "It has been estimated that in 77 percent of all re-examination applications, the claims are either amended or cancelled during re-examination." *Teradyne, Inc. v. Hewlett-Packard Co.*, 1993 U.S. Dist. LEXIS 14601, at *23 (N.D. Cal. 1993) (Ex. 13 hereto); *see also, Tap Pharm. Prods., Inc. v. Atrix Labs., Inc*., 2004 WL 422697, at *2 (N.D. Ill 2004) (Ex. 12) ("Generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims 64% of the time."); *Rockwood Pigments, NA, Inc. v. Interstate Materials, Inc.,* 2002 U.S. Dist. LEXIS 9509, at *2-3 (N.D. Ill. 2002) (Ex. 14 hereto) ("[P]laintiff's data indicates that in third party requester re-examinations the claims are cancelled or at least changed 70 percent of the time.").

cancellations of, amendments to, changes to or delineations in scope of these independent claims will also impact the remaining eighty-two dependent claims of the patent.

Moreover, a reexamination subjects all the claims, not just the claims cited in the request to the reexamination process.[3] Examination of all the claims of the patent is begun anew and not just in view of the new art cited in the request. The examiner will conduct new searches of the art during the reexamination procedure to re-assess the validity of each of the claims of the patent.[4] The statistics referenced *supra* as to percent of reexamination applications where the claims are amended or cancelled is thus not limited to the claims requested for reexamination, but applies to all the claims in the application. Therefore, to the extent that Centillion may argue the reexamination is limited to only three claims of eighty-five and is unlikely to impact any of the other claims at issue, this is simply not true.

In addition to the significant probabilities and statistics surrounding cancellation or amendment of the claims, is the fact that arguments by Plaintiff during the re-prosecution of this application could impact claim interpretation. Thus, reexamination may also affect this Court's claims construction determination. The Patent Office's and patentee's actions during the reexamination procedure become part of the prosecution history. And the prosecution history is a valuable source of intrinsic evidence which may be used in claim construction. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). Hence, granting a stay will allow a court the benefit of the Patent Office's determination or affirmation of the claims' scope prior to the court conducting

---

[3]  MPEP 2255 Scope of Ex Parte Reexamination IV B. *All "Live" Claims Are Reexamined During Reexamination*  ("Even when a request for reexamination does not present a substantial new question as to all "live" claims i.e., each existing claim not held invalid by a final decision, after all appeals, each claim of the patent will be reexamined. The resulting reexamination certificate will indicate the status of all of the patent claims and any added patentable claims.")

[4]  MPEP 2260 Office Actions [R-3] (a) Examiner's action. ("(3) An international-type search will be made in all national applications filed on and after June 1, 1978.")

9

its own claim interpretation. *Vitronics Corp. v. Conceptronic Inc.,* 36 F. Supp.2d 440, 442 (D. N.H. 1997) ("The reexamination process could more precisely define the scope of claim 1, or it could leave claim 1 unchanged. Because determining the scope of the disputed claim is central to the resolutions of this case, it would be inefficient for the court to expend time and resources engaging in claim interpretation while the scope of the claim is still under review at the PTO.")

      Even in the event that none of the above occurs, a stay will allow the Court and the parties to gain the benefit of the Patent Office's expertise and analysis of the newly cited art and will greatly assist in reducing issues at trial. *Pegasus Dev. Corp.,* C. A. No. 00-1020-GMS, 2003 WL 21105073, at *2 (D. Del. May 14, 2003) (Ex. 3). *See also, Braintree Labs., Inc. v. Nephron-Tech. Inc.,* 1997 WL 94237, at *9 (D.Kan. 1997) (Ex. 15 hereto); *Hamilton Indus. Inc. v. Midwest Folding Prods. Mfg.,* 1990 WL 37642, at *1-2 (N.D. Ill. 1990) (Ex. 2). The Patent Office is particularly suited to analyze this new art, especially in terms of evaluating its significance in light of the prior art disclosed by Centillion during the initial examination of the application. *See e.g. Emhart Indus., Inc. v. Sankyo Seiki Mfg., Co.,* 1987 WL 6314, at *2 ( N.D. Ill. 1987) (Ex. 4) (PTO possesses "particular expertise" in evaluating prior art).

      Other potential efficiencies resulting from the reexamination process include: (1) alleviation of discovery problems relating to the prior art; (2) likely entering of the record of the reexamination at trial, thus reducing the complexity and length of the litigation; (3) more easily limiting the issues, defenses, and evidence in pre-trial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed. *Middleton, Inc. v. Minnesota Mining and Manufacturing Co.,* 2004 WL 1968669, at *3 (S.D. Iowa 2004) (Ex. 16 hereto), *citing Emhart Indus. Inc. v. Sankyo Seiki Mfg., Co.,* 1987 WL 6314, at *2 (N.D. Ill. 1987) (Ex. 4). These efficiencies will result in a reduced cost of litigation for the parties and more

effective utilization of the limited resources of the court.  These are considerable economies.  *Softview Computer Products Corp. v. Haworth, Inc.,* 2000 WL 1134472, at *3 (S.D. N.Y. 2000) (Ex. 17 hereto) ("[T]he grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."); *Sun-Flex Co. v. Softview Computer Prods. Corp.,* 1989 WL 117976, at *1 (N.D. Ill. Sept. 1989) (Ex. 18 hereto) ("Even if issues remain to be litigated after the re-examinations are completed, the cost and scope of the remaining litigation are likely to be substantially reduced.").

In light of all these factors, and considering that the reexamination process will proceed "with special dispatch," pursuant to 35 U.S.C. 305, a stay is warranted.[5]

### C. The Case Is At An Early Stage, Before Onset Of Discovery, Favoring A Grant Of Stay.

The early stage of this case favors the grant of a stay of proceedings. Reexamination by the Patent Office, "if available and practical should be deferred to by the courts, especially where the infringement litigation is in the early stages." *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine Inc.,* 68 U.S.P.Q.2d 1755, 1757 (E.D. Mich. 2003) (Ex. 23 hereto); *see also, ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp.1378 (N.D. Cal. 1994) (Motion to stay was granted as the parties were in the initial stages of the lawsuit and had undertaken little or no discovery.); 4 DONALD S. CHISUM, CHISUM ON PATENTS § 11.07[4][B][IV](Matthew Bender & Co. 2004) ("Stays are more likely to be granted if requested early in litigation before

---

[5] This is not a case where discovery has been on-going for some time and then a reexamination is initiated.  In this case, there has been no discovery and the reexamination was ongoing for over six months prior to serving the Complaint. The typical reexamination takes about 19 months. *See e.g., Middleton, Inc. v. Minn. Mining & Mfg,, Co.,* 2004 WL 1968669 at *5 n.11 (S.D. Iowa, 2004) (Ex. 16). Thus, as the MPEP regulations actually state that the reexamination proceeding will be expedited if the request for reexamination indicates that litigation has been stayed (*see e.g., Lectrolarm Custom Services, Inc. v. Vicon Industries, Inc.*, 2005 WL 2175436 at *2 (W.D. Tenn. 2005) (Ex. 19 hereto)), it is expected that the reexamination will delay this case for a period of less than 13 months.

substantial discovery and trial preparation and less likely to be granted if requested late.").

Discovery has not been initiated and a trial date has not been set. Thus, all aspects of this case remain to be explored. Even if this case were at a late stage, courts frequently grant motions to stay pending patent reexamination.[6] As discovery has not yet begun and trial is not yet scheduled, these factors also support Avolent's motion to stay proceedings.

### D. Judicial Resources Will Be Conserved And Litigation Cost Reduced If A Stay Is Granted.

Court's have also looked at the advantages of granting a stay when deciding whether to exercise discretion. Until the UPSTO issues its determination following the reexamination, the court and the parties face the prospect of protracted and expensive litigation over a potentially invalid patent. *See e.g., Middleton*, 2004 WL 1968669, at *4 (Ex. 16); *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.,* 1987 WL 6314, at *2 (N.D. Ill.

---

[6] *Pegasus Development Corp v. Directv, Inc.* C. A. No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) (Ex. 3) (motion to stay granted although trial was set, extensive discovery had been done although not completed, and the case already had suffered several delays); *Middleton, Inc. v. Minnesota Mining and Manufacturing Co.,* 2004 WL 1968669 (S.D. Iowa 2004) (Ex. 16) (granting defendant's motion to stay when litigation had already been ongoing for over eight years); *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mack, Inc.,* 68 U.S.P.Q.2d 1755, 2003 WL 22870902 (E.D. Mich. 2003) (Ex. 23) (granting defendant's motion to stay filed less than two months before trial was scheduled to commence and after extensive discovery); *Softview Computer Prods. Corp. v. Haworth Inc.,* 56 U.S.P.Q. 2d 1633, 2000 WL 1134472 (S.D.N,Y. 2000) (Ex. 17) (granting motion to stay after burdensome discovery); *Bausch Lomb, Inc. v. Alcon Labs., Inc.,* 914 F. Supp. 951 (W.D.N.Y 1996) (granting motion to stay after fact discovery was completed and trial date set); *Robert H. Harris Co. Inc. v. Metal Manufacturing Co., Inc.*, 19 U.S.P.Q.2d 1786, 1991 WL 217666 (E.D. Ark. 1991) (Ex. 20 hereto) (granting motion to stay approximately one month before trials was scheduled to begin); *Grayling Indus., Inc. v GPAC, Inc.* 19 U.S.P.Q.2d 1872, 1991 WL 236196 (N.D. Ga. 1991) (Ex. 21 hereto) (granting motion to stay after action had been pending for two years and pretrial order was signed); *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.,* 3 U.S.P.Q.2d 1889, 1987 WL 6314 (N.D. Ill. 1987) (granting motion to stay after discovery was completed) (Ex. 4); *Loffland Bros. Co. v. Mid-Western Energy Corp.,* 225 U.S.P.Q. 886, 1985 WL 1483 (W.D. Okla. 1985) (Ex. 22 hereto) (granting motion to stay after substantial discovery, issuance of the pretrial order, and continuance of original trial date.).

1987) (Ex. 4) (benefits accruing to the court and parties from stay pending re-examination likely include reducing the cost, complexity and duration of the litigation). Granting a stay will conserve judicial resources.  As claim scope may change, or the claims may be altered or cancelled, it would be a waste of judicial resources for the court to make decisions regarding claim construction or any other dispositive motions that would be pending absent a stay, prior to resolution of the reexamination.

Additionally, as discussed *supra*, cost for both of the parties will be reduced if a stay is granted.

Therefore the advantages of granting a stay also support Avolent's motion.

## IV.   CONCLUSION AND REQUEST FOR ORDER

For the foregoing reasons, Avolent respectfully requests that this Court GRANT Avolent's Motion to Stay Action Pending the Patent and Trademark Office's Reexamination of the '270 Patent, and that this Court enter Avolent's Proposed Order.

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*

| OF COUNSEL: | Richard L. Horwitz (#2246) |
| --- | --- |
| | David E. Moore (#3983) |
| A. James Isbester | Hercules Plaza, 6th Floor |
| Gillian W. Thackray | 1313 N. Market Street |
| ISBESTER & ASSOCIATES | P.O. Box 951 |
| 3160 College Avenue, Suite 203 | Wilmington, DE 19899-0951 |
| Berkeley, CA 94705 | Tel.:  (302) 984-6000 |
| Telephone: (510) 655-3014 | rhorwitz@potteranderson.com |
| Facsimile: (510) 655-3614 | dmoore@potteranderson.com |

Dated:  November 8, 2005
706690 / 29651

*Attorneys for Defendant Avolent, Inc.*

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on November 8, 2005, the attached document was hand-delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Neal C. Belgam
Dale R. Dubé
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE  19801

I hereby certify that on November 8, 2005, I have Federal Expressed the documents to the following non-registered participants:

| | |
|---|---|
| Grant S. Palmer | Michael C. Greenbaum |
| Blank Rome LLP | Joel R. Wolfson |
| One Logan Square | Denise Lane-White |
| Philadelphia, PA  19103-6299 | Blank Rome LLP |
| | 600 New Hampshire Avenue, NW |
| | Washington, DC  20037 |

By: */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

706630