# EXHIBIT 1

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,533 | 05/05/2005 | 5287270 | | 1995 |

| | | | EXAMINER |
|---|---|---|---|
| 2779 | 7590 | 06/26/2005 | |

BLANK ROME LLP
THE WATERGATE BUILDING
600 NEW HAMPSHIRE AVENUE, NW
WASHINGTON, DC 20037

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 06/26/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| **Order Granting / Denying Request For Ex Parte Reexamination** | Control No. 90/007,533 | Patent Under Reexamination 5287270 |
|---|---|---|
| | Examiner James S. McClellan | Art Unit 3627 |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>05 May 2005</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☒ PTO-892,     b)☒ PTO-1449,     c)☐ Other: _____

1. ☒   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____,  or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

*James S. McClellan*
/James S McClellan
Primary Examiner
Art Unit: 3627

cc:Requester ( if third party requester )

Application/Control Number: 90/007,533                                    Page 2
Art Unit: 3627

*Reexamination*

<u>DECISION</u>

1.      A substantial new question of patentability affecting claims 1, 8, and 47 of United States

Patent Number 5,287,270 is raised by the request for *ex parte* reexamination.

    Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in

*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

    The Patent Owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 5,287,270, throughout the course of this reexamination proceeding.

2      The request indicates that the Requester considers that claims 1, 8, and 47 are

unpatentable over Non-Patent Literature document, *TI, SW Bell Unite in EDI Billing Trial*

(hereinafter, "SW Bell/TI Article"), alone or in combination with Non-Patent Literature

document, *DMW Commercial Systems, Inc. Communications Management Software* (hereinafter

"DMW Reference").

3.      It is agreed that SW Bell/TI Article taken alone or incombination with DMW Reference

raises a substantial new question of patentability as to claims 1, 8, and 47.

    As pointed out in pages 5-7 of the request, that SW Bell/TI Article discloses transferring

billing data from SW Bell to a personal computer of TI for further analysis by the user. More

specifically, SW Bell/TI Article notes on page 2, first paragraph that billing summaries are sent

Application/Control Number: 90/007,533                                Page 3
Art Unit: 3627

to TI. There is a substantial likelihood that a reasonable Examiner would consider the SW

Bell/TI Article important to deciding whether or not the claims are patentable.

### *Conclusion*

4.      It is noted that the SW Bell/TI article is cited on an attached PTO-892 since it was not

cited on a PTO-1449 (MPEP 2257) by the Requestor.

5.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to James S. McClellan whose telephone number is (571) 272-6786.

The examiner can normally be reached on M-F (9:30-6:00).

       If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Alexander Kalinowski can be reached on (571) 272-6771. The fax phone number for

the organization where this application or proceeding is assigned is 703-872-9306.

       Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

                                              *James S. McClellan*
                                              James S McClellan
                                              Primary Examiner
                                              Art Unit 3627

jsm
June 22, 2005

(PATENT)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reexamination of:
Robert M. Hardy, et al.

Patent No.: 5,287,270                    Group Art Unit: Not Yet Assigned

Issue Date: February 15, 1994          Examiner: Not Yet Assigned

For:  BILLING SYSTEM

**DETAILED REQUEST FOR EX PARTE REEXAMINATION**

## TABLE OF CONTENTS

Page

INTRODUCTORY COMMENTS ................................................................................ 1

CLAIMS FOR WHICH REEXAMINATION IS REQUESTED ................................ 1

SUMMARY OF THE '270 PATENT ........................................................................ 2

PRIOR ART ............................................................................................................ 2

    TI, SW Bell unite in EDI billing trial, Network World, June 20, 1988 ............... 2

    DMW Commercial Systems, Inc. Comm. Management Software, July, 1987 ............. 3

STANDARD FOR EXAMINATION ........................................................................ 3

DETAILED ANTICIPATION ANALYSIS OF PRIOR ART TO CLAIMS 1, 8, 47 ................ 4

    Claim 1 ............................................................................................................ 4

    Claim 8 ............................................................................................................ 7

    Claim 47 .......................................................................................................... 9

DETAILED OBVIOUSNESS ANALYSIS OF PRIOR ART TO CLAIMS 1, 8, 47 ............... 10

SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY ................................... 13

CONCLUSION ...................................................................................................... 13

## TABLE OF CONTENTS
(continued)

### ATTACHED EXHIBITS

Exhibit 1 ........................................................................................ '270 Invalidity Chart

Exhibit 2 ........................................................................................ U.S. Patent No. 5,287,270

Exhibit 3 ....................... TI, SW Bell unite in EDI billing trial, Network World, June 20, 1988

Exhibit 4 .. DMW Commercial Systems, Inc. Communications Management Software, July, 1987

Exhibit 5 ...................................Structured Computer Organization, Andrew S. Tanenbaum, 1976

Exhibit 6 ...................................................March 2, 1993 Office Action for '270 application

Exhibit 7 ..................................................... Declaration of Daniel D. Briere, June 30, 1993

Exhibit 8 .......................................Applicant's Amendment Under 37 C.F.R. 1.115, June 30, 1993

1

## INTRODUCTORY COMMENTS

This is a request for reexamination under 35 U.S.C. §§ 302 and 37 C.F.R. § 1.510.
Reexamination is requested of U.S. Patent No. 5,287,270. The '270 Patent issued on February 15,
1994 to Robert M. Hardy, et al.

Recently, documents were discovered describing a system publicly in use prior to the
filing of the '270. Upon examination of these documents all of the independent claims of the '270
are found. Additionally, these newly discovered documents, which were not before the examiner,
fill in the missing elements that were pointed out as missing in the cited prior art during the
prosecution of this patent. When combining this new reference with the references reviewed by the
examiner, all elements are now disclosed, and had the examiner reviewed this new reference during
prosecution, the elements which ultimately led to the allowance of the '270 patent would not have
been found to be novel.

Accordingly, an order for reexamination of claims 1, 8 and 47 of the '270 Patent
should be issued.

## CLAIMS FOR WHICH REEXAMINATION IS REQUESTED

As set forth below and in the invalidity chart attached as Exhibit 1, this request for
reexamination raises the following substantial new questions of patentability with respect to the '270
Patent (attached as Exhibit 2).

Claims 1, 8, and 47 are anticipated under 35 U.S.C. § 102(a) and (b) by the June 20,
1988, Network World article entitled, "TI, SW Bell unite in EDI billing trial" (hereinafter referred to
as the "SWBell/TI Article" and attached as Exhibit 3), which is listed on the attached form PTO-
1499.

Claims 1, 8, and 47 are invalid under 35 U.S.C. § 103 as obvious in view of the
SWBell/TI Article, and the DMW Commercial Systems, Inc. Company Information (hereinafter
referred to as the "DMW reference" and attached as Exhibit 4), which was before the examiner. The

2

motivation to combine these two references comes not only from the nature of the problem being solved, but the fact that the two articles are both describing the exact same system in operation.

When allowing the '270 patent over the DMW reference, the examiner made it clear what elements were lacking. By combining this reference with the SWBell/TI Article, all the elements of the independent claims of the '270 patent are found, clearly making all independent claims of the '270 patent invalid due to obviousness under U.S.C 35 § 103.

## SUMMARY OF THE '270 PATENT

The '270 Patent is directed to a system for the electronic invoicing of customers. This system is used to deliver telecommunications bills to end customers. In the patented system a telephone or other service provider stores the billing records for customers. Billing records are then separated by customer. The specific customer records are then pre-processed by mainframe or large capacity processor to analyze the billing records and create summary reports for the customers. The billing data and summary reports are then put into an information format suitable for further processing on personal computers. This formatted information is then transferred to the customer for further processing and analysis on personal computers. This system is illustrated in Figure 1 of the '270 patent, as shown in Exhibit 2.

## PRIOR ART

### TI, SW Bell unite in EDI billing trial, Network World, June 20, 1988

This reference was published in the periodical Network World on June 20, 1988, and thus constitutes prior art to the '270 Patent under 35 U.S.C. § 102(a) or (b). The SWBell/TI Article was not submitted by the inventors of the '270 patent nor cited by the Examiner during prosecution. This reference discloses a trial between SWBell and TI to deliver telecommunications bills through Electronic Data Interchange ("EDI"). The system discloses SWBell storing customer actual and exact billing records. These records are then pre-processed, using computer hardware and software, to produce summary reports for specific customers, in this case TI. These summary reports are then transferred to computers for further analysis by TI employees.

3

## DMW Commercial Systems, Inc. Comm. Management Software, July, 1987

The DMW reference describes an end-user system for call accounting. DMW's software is used in conjunction with hardware connected to a company's phone system, so that call data can be recorded, stored, and transferred to personal computers running DMW software for further analysis and summary reporting. Before data is transferred to personal computers for analysis, it is formatted to meet the needs of the particular personal computer system, and transfer medium, whether it be through modem, tape, diskette, or network. The DMW reference was before the examiner during the '270 prosecution. In fact, several rejections were issued on the applicant's proposed claims due to obviousness in view of the DMW reference. After several office actions and iterations of claims in attempts to overcome the obviousness rejections, the applicants orally stressed the novelty of the '270 patent over the DMW reference to the examiner. This was noted by the examiner to be the pre-processed summary reports that the '270 patent claims. The examiner invited the patentees to submit affidavits from those skilled in the art, speaking towards the novelty of the claims. In these affidavits, it was stressed that the prior art references cited by the examiner, and specifically the DMW reference, did not contain the elements of the *pre-processed summary reports*, nor the *exact charges* claimed in the '270 patent. The examiner then allowed the claims. From examining the file history, and the DMW reference itself, it is clear that all other elements of claims 1, 8, and 47 are found in this reference.

## STANDARD FOR EXAMINATION

Before applying these references to claims 1, 8, and 47 of the '270 Patent, it should be noted that claims should be given their broadest reasonable interpretation, consistent with the specification, in reexamination proceedings. This long-standing requirement was recently reaffirmed by the Federal Circuit in *In re American Academy of Science Tech Center*, 367 F.3d 1359, 1364 (Fed. Cir. 2004).

In *American Academy*, the patent owner appealed to the Federal Circuit after the Board of Patent Appeals and Interferences upheld an examiner's rejection of certain claims in a reexamination proceeding. The patent owner sought to overcome the Board's ruling by interpreting the claims narrowly. The Federal Circuit rejected this approach in view of the broadest reasonable

4

interpretation rule. The Court noted that "[c]onstruing claims broadly during prosecution is not unfair to the applicant (or, in this case, the patentee), because the applicant has the opportunity to amend the claims to obtain more precise claim coverage." *Id.* (citation omitted).

The patent owner also argued that the Board's broad interpretation of the claims was inconsistent with a district court's narrower interpretation of the same claims in a copending litigation. The Federal Circuit explained the Board is required to use a different standard for construing claims than that used by the district court, which operates under the assumption that the patent is valid. The Court held that the "PTO is *obligated* to give claims their broadest reasonable interpretation during examination." *Id.*, at 1369 (emphasis added).

## DETAILED ANTICIPATION ANALYSIS OF PRIOR ART TO CLAIMS 1, 8, 47

### Claim 1

Claim 1 of the '270 Patent is reproduced below:

1.    A system for presenting information concerning the actual cost of a service provided to a user by a service provider, said system comprising:
[¶] storage means for storing individual transaction records prepared by said service provider, said transaction records relating to individual service transactions for one or more service customers including said user, and the exact charges actually billed to said user by said service provider for each said service transaction;
[¶] data processing means comprising respective computation hardware means and respective software programming means for directing the activities of said computation hardware means;
[¶] means for transferring at least a part of said individual transaction records from said storage means to said data processing means;
[¶] said data processing means generating preprocessed summary reports as specified by the user from said individual transaction records transferred from said storage means and organizing said summary reports into a format for storage, manipulation and display on a personal computer data processing means;
[¶] means for transferring said individual transaction records including said summary reports from said data processing means to said personal computer data processing means; and
[¶] said personal computer data processing means being adapted to perform additional processing on said individual transaction records which have been at least in part preprocessed by said data processing means utilizing said summary reports for expedited retrieval of data, to present a subset of said selected records including said exact charges actually billed to said user.

5

The SWBell/TI Article fully discloses every element of claim 1 of the '270 Patent, as discussed below and summarized in the claim chart attached as Exhibit 1. It should be noted that the following analysis separates claim 1 into distinct elements simply for ease of review.

Claim 1 is directed to a system for presenting actual cost information for a service from the service provider to a customer as set forth in the preamble. The SWBell/TI Article describes the trial between SWBell and TI for transferring billing data for TI phone service through EDI. This billing data is the actual invoice information, representing the actual cost of services that TI will pay. SWBell is provider of telecommunications services, and thus is a service provider. TI is a user or customer of telecommunications services.

The first element of claim 1 – "storage means for storing individual transaction records prepared by said service provider, said transaction records relating to individual service transactions for one or more service customers including said user, and the exact charges actually billed to said user by said service provider for each said service transaction" – is fully disclosed in that SWBell is a provider of phone service and must necessarily store individual phone call transactions as well as exact phone charges for those call transactions in order to properly bill their client. The SWBell/TI Article refers to transferring this call transaction data from SWBell computers to TI computers, thus inherently discloses the storage means which must hold the call transaction data before it is transferred. Further, the information that is being transferred is actual invoice data, so it must contain the actual cost of the call transactions that TI will be responsible for paying, thus it is inherent that the exact charges are disclosed in the SWBell/TI Article as well.

The next element of claim 1 is " data processing means comprising respective computation hardware means and respective software programming means for directing the activities of said computation hardware means" As previously mentioned, the SWBell/TI Article specifically states that the call transactions data is transferred from computers at SWBell. A computer, by definition, is made up of hardware and software for directing the activities of the hardware. "The central processing unit (CPU) is the 'brain' of the computer. Its function is to execute programs stored in the main memory by fetching their instructions, examining them, and

6

then executing them one after the other." (*See* the Tanenbaum reference shown in Exhibit 6 at page 18). The Tananbaum reference is evidence of what one skilled in the art would have considered to be inherent in a computer during the time when the '270 patent was prosecuted. Accordingly, this element is inherently disclosed by the SWBell/TI Article.

Also disclosed inherently is the next element of claim 1: "means for transferring at least a part of said individual transaction records from said storage means to said data processing means." It would be obvious to one of skill in the art at the time of the '270 examination that telephone billing data to be transferred via computer, must be stored on a computer first. Secondly, the SWBell/TI Article specifically points out the creation of summary reports which inherently requires processing of call transaction data. Again, as illustrated in Tanenbaum, the typical disk ("storage means") is coupled through the input/output processor and the I/0 bus to the data processing means." (*See* Exhibit 6, Fig. 2-1). It is therefore inherent in the SWBell/TI Article that there would be an I/O bus or other network means for transferring the stored call transactions to a processor for processing and generation of summary reports.

The SWBell/TI Article discloses the next element of claim 1: "said data processing means generating preprocessed summary reports as specified by the user from said individual transaction records transferred from said storage means and organizing said summary reports into a format for storage, manipulation and display on a personal computer data processing means." As previously discussed it is explicitly disclosed that SWBell sent bill summaries to TI based on the needs of TI to analyze call information. This was a trial between SWBell and TI, and TI necessarily had to request that certain summaries be sent to them in order to maintain their bill analysis processes. Additionally, the SWBell/TI Article specifically points out that the call transaction data transferred electronically to TI would be further analyzed by TI employees on computers, without having to waste time entering the data into a computer from previously sent paper bills. Therefore, the bill summaries and data transferred to TI for analysis by employees must necessarily have been in a format allowing the employees' personal computers to manipulate and display the information. Accordingly, this element is disclosed.

7

The SWBell/TI Article fully discloses the next element of claim 1: "means for transferring said individual transaction records including said summary reports from said data processing means to said personal computer data processing means." As disclosed, the EDI system is used to transfer bill summaries and call transaction information from "computer to computer." The receiving computers are the personal computers that the TI employees use to further analyze the SWBell billing information. EDI is designed for the implementation of systems for the electronic transfer of data from one data processor and storage system to another data processor and storage system.

The final element of claim 1 is "said personal computer data processing means being adapted to perform additional processing on said individual transaction records which have been at least in part preprocessed by said data processing means utilizing said summary reports for expedited retrieval of data, to present a subset of said selected records including said exact charges actually billed to said user." As previously discussed in connection with prior elements, TI employees further analyzed the electronic call information received. The SWBell/TI Article specifically states that the employees no longer needed to spend time entering this information into the computer since it was transferred from computer to computer. This allowed them to immediately use their personal computers to analyze the bill summaries prepared, and also analyze the exact charges owed by TI. Accordingly, this element is disclosed and thus anticipated by the SWBell/TI Article.

In view of the disclosure of each and every element of claim 1 of the '270 Patent by the SWBell/TI Article, the claim is clearly anticipated under 35 U.S.C. § 102(a) or (b).

### Claim 8

Claim 8 of the '270 Patent is reproduced below:

8.    system for presenting, under control of a user, usage and actual cost information relating to telecommunications service provided to said user by a telecommunications service provider, said system comprising:

[¶] telecommunications service provider storage means for storing records prepared by a telecommunications service provider relating to telecommunications usage for one or more telecommunications subscribers including said user, and the exact charges actually billed to said user by said service provider for said usage;

[¶] data processing means comprising respective computation hardware means and respective software programming means for directing the activities of said computation hardware means;

[¶] means for transferring at least a part of the records from said service provider storage means to said data processing means;

[¶] said data processing means generating preprocessed summary reports as specified by the user from said telecommunications usage records transferred from said storage means and organizing said summary reports into a format for storage, manipulation and display on a personal computer data processing means;

[¶] means for transferring said telecommunications usage records including said summary reports from said data processing means to said personal computer data processing means; and

[¶] said personal computer data processing means being adapted to perform additional processing on said telecommunications records which have been at least in part preprocessed by said data processing means utilizing said summary reports for expedited retrieval of data, to present a subset of said telecommunications usage records including said exact charges actually billed to said user.

Claim 8 mirrors that of claim 1, except for two minor exceptions. The service provider described in claim 1 is specifically stated to be that of a telecommunications service provider throughout claim 8. Additionally, the transactions and charges being billed and transferred to the user are specifically telecommunications related.

The SWBell/TI Article fully discloses every element of claim 8 of the '270 Patent, as summarized in the claim chart attached as Exhibit 1. Due to the enormous similarity between claims 1 and 8, the examiner is respectfully directed towards the previous analysis of claim 1 elements. In addition it is noted that the only two differences between claims 1 and 8 are fully disclosed in the SWBell/TI Article. SWBell is a telecommunications service provider. Additionally, the billing information being transferred from SWBell to TI is that of telecommunications usage. Accordingly, for all the reasons previously cited in claim 1, and these additional elements shown to be disclosed, each and every element of claim 8 of the '270 Patent is anticipated by the SWBell/TI Article according to 35 U.S.C. § 102(a) or (b).

9

## Claim 47

Claim 47 of the '270 Patent is reproduced below:

47.    A method for presenting information on a personal computer data processing means concerning the actual cost of a service provided to a user by a service provider, said method comprising:

[¶] storing individual transaction records prepared by said service provider on a storage means, said transaction records relating to individual service transactions for at least one service customer including said user, and the exact charges actually billed to said user by said service provider for each said service transaction;

[¶] transferring at least a part of said transaction records from said storage means to a data processing means;

[¶] generating preprocessed summary reports as specified by the user from said individual transaction records transferred from said storage means and organizing said summary reports into a format for storage, manipulation and display on a personal computer data processing means;

[¶] transferring said preprocessed individual transaction records including said summary reports from said data processing means to at least one personal computer data processing means;

[¶] performing additional processing of said individual transaction records on said at least one personal computer data processing means utilizing said summary reports for expedited retrieval of data;

[¶] presenting a subset of said individual transaction records chosen via said at least one personal computer data processing means including said exact charges actually billed to said user; and

[¶] said data processing means and said at least one personal computer processing means comprising respective computation hardware means and respective software programming means arranged for directing the activities of said computation hardware means.

As with claim 8, claim 47 is overwhelming the same language as claim 1, and thus the detailed analysis discussed under claim 1 above also applies to claim 47 elements as well. Claim 47 is a method claim representation of the system disclosed in claim 1. Claim 47 takes the last element of claim 1 and breaks this up into two separate elements of claim 47, "performing additional processing of said individual transaction records on said at least one personal computer data processing means utilizing said summary reports for expedited retrieval of data," and "presenting a subset of said individual transaction records chosen via said at least one personal computer data processing means including said exact charges actually billed to said user." Since there is nothing novel or different about these elements compared to the conjunction of the same elements in claim

10

1, the detailed analysis for the last element of claim 1 still applies, and these elements are disclosed in the SWBell/TI Article.

The final element of claim 47 is inherently disclosed by the SWBell/TI Article. This element states, " said data processing means and said at least one personal computer processing means comprising respective computation hardware means and respective software programming means arranged for directing the activities of said computation hardware means." As earlier described for a similar element in claim 1, personal computers are used by the employees of TI to further analyze the billing information received. These computers inherently have computation hardware and software to operate. This element is basically defining a computer. "The central processing unit (CPU) is the 'brain' of the computer. Its function is to execute programs stored in the main memory by fetching their instructions, examining them, and then executing them one after the other." (*See* the Tanenbaum reference shown in Exhibit 6 at page 18). The Tananbaum reference is evidence of what one skilled in the art would have considered to be inherent in a computer during the time when the '270 patent was prosecuted. Accordingly, this element is inherently disclosed by the SWBell/TI Article.

For all the reasons previously cited in claim 1, and these additional claim 47 elements shown to be disclosed, each and every element of claim 47 of the '270 Patent is anticipated by the SWBell/TI Article according to 35 U.S.C. § 102(a) or (b).

## DETAILED OBVIOUSNESS ANALYSIS OF PRIOR ART TO CLAIMS 1, 8, 47

The combination of the SWBell/TI Article and DMW reference fully discloses every element of claim 1 of the '270 Patent, as summarized in the claim chart attached as Exhibit 1. As discussed previously, in the examiners final rejection of the '270 application claims on March 2, 1993, the claims were rejected as obvious in view of the DMV reference. (*See* Exhibit 6). The examiner specifically points out that the DMV system discloses and it was known for telecommunications service providers to collect and store call usage and cost information for each customer. The DMV reference therefore discloses the preamble of claim 1, as well as the storage means for transactional records in claim 1. The only possibly novel item of the first element of claim 1 is that of using exact charges in the data transferred to the customer. The SWBell/TI Article

11

clearly anticipates using the actual and exact charges in the data sent to the customer, since this will be the actual bill paid by the customer. Accordingly, the combination of SWBell/TI Article and DMV reference fully discloses all the elements of the preamble and first element of claim 1, therefore rendering it obvious.

As discussed during the anticipation analysis, the second element of claim 1 is inherent in the SWBell/TI Article. The DMV reference explicitly discloses the hardware and software data processing means of this element. This element is therefore obvious in view of the combination of the SWBell/TI Article and the DMV reference.

When analyzing the transferring means in the third element of claim 1, it is again inherent in both the SWBell/TI Article and the DMW reference due to the nature of computer systems and the coordination of central processing units and storage mediums. The DMV reference also explicitly discloses the collection of phone usage data and the transfer of this data to mainframes for processing. In the examiner's last rejection, the examiner also notes that the applicants also admit that it was known in the art for users to receive tapes containing call detail records which would be transferred to mainframe computers for processing and analysis. (*See* Exhibit 6). Accordingly, this element is obvious in view of the combination of the SWBell/TI Article and the DMW reference.

The fourth element of claim 1 contains the proposed novel components of pre-processed summary reports specified by the user, and the formatting of data for later analysis on a personal computer. The examiner originally rejected this claim in view of the DMV reference, due to the DMV reference disclosing the pre-processing and formatting of data for use on a personal computer. The DMV reference clearly discloses formatting of data for use on a personal computer, and the use of summary reports specified by the user. The applicant's argued the fact that the pre-processed summary reports were not enclosed and indeed novel. They supported their argument with a declaration from Daniel D. Briere, attached as Exhibit 7. On page 4 of this declaration, Mr. Briere admitted that it was known in the art to use personal computers to process and analyze raw call data transferred from the service provider, however, this would be cumbersome. He specifically points out the cited references, including the DMW reference. Regardless, this declaration

12

demonstrates the obviousness of using a personal computer for analysis of call data, and formatting the data for a personal computer before transferring it. The item the applicant's argue remains novel from this element is the service provider pre-processing the data and producing summary reports, which are sent to the customer. The SWBell/TI Article clearly discloses the service provider producing such summary reports and transferring them to the customer. Therefore, this claim 1 element must be found obvious in view of the SWBell/TI Article and the DMW reference.

In reviewing the fifth element of claim 1, the means for transferring call data and summary reports to personal computers is obvious. The SWBell/TI Article clearly discloses transferring such data and summary reports to the end user that will then be analyzed by individual employees on terminals or personal computers. The examiner makes a clear statement as to the obviousness of this element in his final rejection, when he stated, "The following are well known and therefore do not add any patentable weight: preparing summary reports and graphs, reorganizing data into table format, RBASE database, creating additional records, magnetic tapes, magnetic disk, and a data communications line." (*See* Exhibit 6, page 4-5). Further, the declaration submitted by Mr. Briere on behalf of the applicant states that it was known in the art and disclosed in the cited references, in which he includes the DMW reference, to "process raw call-by-call data from magnetic tape or cassette as provided by the long distance carriers." (*See* Exhibit 7, Page 4). Accordingly, there are no novel components and this element is obvious in view of the SWBell/TI Article and the DMW reference.

The final element of claim 1 is also rendered obvious in view of the combination of the SWBell/TI article and the DMW reference. As discussed previously, the examiner, the declaration submitted on behalf of the applicants, and the DMW reference itself explicitly disclose the use of personal computers for further processing and analysis of call data transferred from the service provider. The SWBell/TI Article also discusses the customer employees doing further analysis on the data now contained in electronic form, thus requiring the use of personal computers. The only piece of this element possibly still novel is the use of exact charges in the call data being analyzed on personal computers. The SWBell/TI Article clearly discloses that the call data and cost information sent to the customer is the billing information that will be paid by the customer, thus making it the actual and exact cost data.

13

In the remarks during the applicant's amendment on June 30, 1993, to the examiner's last office rejection, the applicants clearly state the items they considered novel in claim 1. (*See* Exhibit 8). They highlight two elements as being novel. The first is the pre-processing of summary reports by the service provider, and the second being the use of exact charges in the data transferred to the customers. The DMV reference was viewed by the examiner to disclose all other elements besides these two. The SWBell/TI Article clearly discloses both the pre-processing of summary reports by the service provider and the use of actual and exact charges in the billing data transferred to the customer. Accordingly, claim 1 of the '270 patent is rendered obvious in view of the SWBell/TI Article and DMW reference.

As discussed in the anticipation analysis for claim 8, the only difference to claim 1 is the specifying that the service provider is a telecommunications provider, and that the data being transferred is telecommunications usage and call data. Both the DMW reference and the SWBell/TI Article clearly disclose the use of telecommunications usage data, and the SWBell/TI Article discloses the service provider being a telecommunications provider. Accordingly, claim 8 of the '270 patent is obvious in view of the SWBell/TI Article and the DMW reference. Likewise, claim 47 is just a method claim, holding no additional novel elements over the system claim 1. Applying the claim 1 obviousness analysis therefore renders claim 47 of the '270 patent obvious as well in view of the SWBell/TI Article and the DMW reference.

## SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

The SWBell/TI Article was not of record in the '270 Patent. Because the SWBell/TI Article either anticipates or renders obvious claims 1, 8, and 47 of the '270 Patent, a substantial new question of patentability is raised. It is noted that the DMW reference was cited in the prosecution of the '270 Patent, but it was never cited in combination with the SWBell Article.

## CONCLUSION

For the reasons set forth above, it is requested that the reexamination of claims 1, 8, and 47 of the '270 Patent is granted.

14

Dated: *May 3* , 2005

Respectfully submitted,

Blakely Sokoloff Taylor & Zafman, LLP

By

Gregory D. Caldwell
Registration No.: 39,926

Blakely Sokoloff Taylor & Zafman LLP
12400 Wilshire Boulevard, Seventh Floor
Los Angeles, CA  90025

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail with sufficient postage in an envelope addressed to Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313 on:

5/3/05
Date of Deposit

Annie Rearson
Name of Person Mailing Correspondence

Annie R                    5/3/05
Signature                  Date

# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.                                                                Page 1
Not Reported in F.Supp., 1990 WL 37642 (N.D.Ill.)
**(Cite as: 1990 WL 37642 (N.D.Ill.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
HAMILTON INDUSTRIES, INC., an Illinois
Corporation, Plaintiff,
v.
MIDWEST FOLDING PRODUCTS MFG. CORP.,
an Illinois Corporation, Defendant.
No. 89 C 8696.

March 20, 1990.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

*1 This matter is before us on the defendant
Midwest Folding Products' motion for a stay pending
reexamination of U.S. Patent No. 4,819,569 by the
Patent and Trademark Office ("PTO"). The plaintiff,
Hamilton Industries, opposes the motion. For the
following reasons we grant the defendant's motion
and dismiss this action with leave to reinstate
subsequent to the patent reexamination.

In passing the legislation establishing the
reexamination proceeding, Congress stated its
approval of district courts liberally granting stays
within their discretion as a means of preventing
"costly pre-trial maneuvering which attempts to
circumvent the reexamination procedure [and to]
provide a useful and necessary alternative for
challengers and for patent owners to test the validity
of United States patents in an efficient and relatively
inexpensive manner." H.R.Rep. No. 1307 Part I, 96th
Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong.
& Ad. News 6460, 6463.

With this in mind we turn to Hamilton's three
reasons for opposing the motion. First, Hamilton
claims that the defendant is seeking a stay simply for
the sake of delay in an attempt to "frustrate the
judicial process and Hamilton's right to exclude
[Midwest Folding] from use of its property."
Midwest Folding, however, is entitled by law to

request a reexamination of the patent. 35 U.S.C. § §
302-307; 37 C.F.R. § 1.525. The reexamination
procedure was created to promote speedy and less
costly review of the validity of patents in certain
limited situations. The fact that the PTO granted
Midwest Folding's request for reexamination
indicates that the PTO deems it worthy of further
consideration. Even assuming there has been some
strategic behavior in this case (of which it is not
readily apparent that Hamilton is not also guilty), it
occurred fairly contemporaneously and was well
within the rights of Midwest Folding. Midwest
Folding invoked the reexamination procedure on
December 7, 1989, after learning that Hamilton was
threatening suit, after first notifying Hamilton that it
intended to make the request on November 19, 1989,
and only two weeks after Hamilton ultimately filed
suit in this Court. Midwest Folding's decision to
request reexamination did not occur so late in the
proceedings as to warrant the conclusion that it was
solely pursued for the purposes of delay.

Second, Hamilton claims that the reexamination will
not affect this action or facilitate its prosecution. We
disagree. The issue of the patent's validity is clearly
one that will have to be resolved in this case. We
believe that shifting the validity issue to the PTO in
this case will provide the many advantages found by
courts as grounds for a stay:

1. All prior art presented to the Court will have
been first considered by the PTO with its particular
expertise.
2. Many discovery problems relating to prior art
can be alleviated by the PTO examination.
3. In those cases resulting in effective invalidity of
the patent, the suit will likely be dismissed.
*2 4. The outcome of the reexamination may
encourage a settlement without the further use of
the Court.
5. The record of reexamination would likely be
entered at trial, thereby reducing the complexity
and length of the litigation.
6. Issues, defenses, and evidence will be more
easily limited in pre-trial conferences after a
reexamination.
7. The cost will likely be reduced both for the
parties and the Court.
See, e.g., Emhart Indus., Inc. v. Sanyo Seiki Mfg.
Co., No. 85 C 7565, slip op. (N.D. Ill. January 30,
1987). Further, once a request for reexamination has
been granted, the Commissioner lacks the power to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp                                                        Page 2
Not Reported in F Supp , 1990 WL 37642 (N D Ill )
**(Cite as: 1990 WL 37642 (N.D.Ill.))**

stay the reexamination pending the outcome of an
overlapping proceeding in federal court. See Ethicon
Inc. v. Quigg, 849 F.2d 1422 (Fed. Cir. 1988) We
see no reason why parallel proceedings should be
required here and we believe that this litigation may
materially benefit from the PTO's disposition of the
validity issue

 Finally, Hamilton argues that it will suffer harm
from a stay. The only harm which Hamilton contends
will occur as a result of the stay is that the stay will
delay the imposition of an injunction and thereby
deny Hamilton its "right to exclude." The question
whether or not an injunction will issue in this case,
however, will turn upon resolution of the patent's
validity. Thus, any delay occasioned by that
determination will occur regardless of the forum in
which that issue is considered. And we find that,
given Congress's mandate that the PTO conduct the
patent reexamination expeditiously--that is, "with
special dispatch"--it is likely that resolution of the
validity issue will occur more swiftly than it would
here. Hamilton additionally contends that piecemeal
resolution of the validity and infringement issues
would increase Hamilton's costs. We see no basis for
this contention. To the contrary, we believe that an
increase in costs is more likely to result from the
inevitable parallel proceedings that would occur were
we to refuse to stay this action. As we discussed
above, the Commissioner lacks the authority to stay
the reexamination. Thus, even if by some chance we
were to reach the validity issue before the PTO does,
and even if the PTO then exercised its discretion in
deferring to our ruling (which the PTO is by no
means bound to do), increased costs nevertheless
would be incurred in both forums during the race to
the patent validity determination. We will concede
that race to the PTO.[FN1]

> FN1 Hamilton also contends that Midwest
> Folding "will likely seek another
> reexamination upon completion of the
> present reexamination " We disregard that
> contention as having no basis at this time.

 We grant the defendant's motion and order this
action dismissed with leave to reinstate in the event
issues remain after the PTO's consideration of
Midwest Folding's request for reexamination  If such
be the case, these issues will be disposed of promptly
by the Court  It is so ordered

 Not Reported in F Supp , 1990 WL 37642 (N D Ill )

**Motions, Pleadings and Filings (Back to top)**

•              1:89cv08696              (Docket)
(Nov 22, 1989)

END OF DOCUMENT

© 2005 Thomson/West  No Claim to Orig U.S. Govt Works.

# EXHIBIT 3

Westlaw

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
**(Cite as: 2003 WL 21105073 (D.Del.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PEGASUS DEVELOPMENT CORPORATION and
Personalized Media Communications, L.L.C.,
Plaintiffs
v.
DIRECTV, INC., Hughes Electronics Corporation,
Thompson Consumer Electronics,
Inc., and Philips Electronics North America
Corporation, Defendants.
**No. Civ.A. 00-1020-GMS.**

May 14, 2003

*MEMORANDUM AND ORDER*

SLEET, J.

*1 AND RELATED COUNTERCLAIMS

I. INTRODUCTION

On December 4, 2000, Pegasus Development Corporation ("Pegasus") and Personalized Media Communications, L.L.C. ("PMC") filed a complaint against several defendants, alleging infringement of six patents, including U.S. Patent Nos. 4,965,825 ("the '825 patent") and 5,335,277 ("the '277 patent"). Since that time, the original scheduling order has been revised several times. Currently, fact discovery is scheduled to close on August 22, 2003, and a trial is scheduled for February of 2004.

On February 4, 2003 and March 14, 2003, respectively, the defendant Thomson Consumer Electronics, Inc. ("Thomson") filed with the **Patent** and Trademark Office ("PTO") a request for *ex parte* **reexaminations** of the '825 and '277 patents. The request for **reexamination** of the '825 patent was granted on April 10, 2003. [FN1] Presently before the court is a joint **motion** by the defendants to **stay** the litigation pending the completion of the **patent reexaminations** (D.I.459). After careful consideration of the parties' submissions, and for the

reasons detailed below, the court will grant the **motion**.

> FN1. The court is not yet aware of a decision by the PTO regarding **reexamination** of the '277 patent.

II. DISCUSSION

The decision to stay a case is firmly within the discretion of the court. *Cost Bros., Inc. v. Travelers Indem. Co.,* 760 F.2d 58, 60 (3d Cir.1985). This authority applies equally to **patent** cases in which a **reexamination** by the PTO has been requested. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO **reexamination.**") (internal citation omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg.,* 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987) ("[I]n passing the legislation establishing the **reexamination** proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.1983) (citing legislative history of **reexamination** statute). In determining whether a stay is appropriate, the court is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp v. 3 Comm Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991) (stating a similar test).

In this case, there are two plaintiffs, four defendants, and several counter claimants, as well as six **patents** comprising dozens of claims. In addition, the written submissions in this case have been particularly voluminous; the briefing on claim construction alone, for example, constitutes 576 pages. *See* Report and Recommendation of Special Master Regarding Claim Construction at 2 (citing "copious briefing"). In these ways, the present suit is quite complex, although, perhaps, not extraordinarily so. The greater context of this suit is extraordinary, however: the plaintiffs have filed more than 300 related **patent** applications based

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
(Cite as: 2003 WL 21105073 (D.Del.))

upon an original **patent** application filed in 1981 and supplemented in 1987. Together, these applications contain an estimated 10,000 claims. Furthermore, as observed by the Special Master appointed in this case, the 1987 application alone constitutes over 300 columns of **patent** text and "is, by any measure, an extremely complex document." *Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21. Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

**\*2** The **reexamination** process will serve this purpose. For example, the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech, Inc.,* 1997 WL 94237, at *9 (D.Kan.1997); *Hamilton Indus., Inc. v. Midwest Folding Products Mfg.,* 1990 WL 37642, at *1-2 (N.D.Ill.1990). Other potential efficiencies resulting from the **reexamination** process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the **reexamination** likely would be entered at trial, reducing the complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a **reexamination;** (4) the outcome of the **reexamination** process may encourage a settlement without further involvement of the court; and (5) if the **patent** is declared invalid, the suit likely will be dismissed as to that **patent.** *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various **patents**-in-suit and hundreds of related **patents,** the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant **reexamination,** the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainslev,* 213 U.S.P.Q. 290, 290 (W.D.Okla.1982) ("Congress enacted the **reexamination** procedure to provide an inexpensive, expedient means of determining **patent**

validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc.,* 2000 WL 1134471, at *3 (S.D.N.Y.2000) ("[T]he grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the **reexamination** process will proceed "with special dispatch," 35 U.S.C. 305, the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, the court reminds the plaintiffs that they affirmatively invoked the rights of the **patent** statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the **reexamination** mechanism, and the PTO has determined that **reexamination** is warranted. There is nothing facially untoward in that. Moreover, the court notes that if, after **reexamination,** the plaintiffs' **patents** are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed.Cir.1986) (holding that upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1139 (Fed.Cir.1985)). In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is undue.

**\*3** Objecting to a **stay,** the plaintiffs also have complained of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint **Motion** to **Stay** (D.I.488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of **Motion** to **Stay** (D.I.460) at 4 ("Many of the Harvey **patents** had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("[I]t appears that PMC sought to 'overwhelm'

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
(Cite as: 2003 WL 21105073 (D.Del.))

Page 3

the PTO and the Courts ").

 As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for **reexamination** of the '825 patent comprised 2,610 pages; its request regarding the '277 patent totaled 4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's **reexamination** requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the **reexamination** procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the **patents**-in-suit, the implications of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found "substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the '825 patent necessitate a **reexamination**. *See* PTO's Decision Granting **Reexamination**, Supp. Appendix to Defs.' Joint Brief in Support of **Motion** to **Stay** (D.I.467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a **stay** outweigh the costs.

III. CONCLUSION

 Because the PTO's **reexamination** of one or more of the **patents**-in-suit may materially affect the issues in this case, the court will grant the defendants' **motion** to **stay**. The case is stayed pending a disposition of the PTO's **reexamination** of patent '825, and will be stayed pending **reexamination** of the '277 patent, if applicable. All pending **motions** will be denied without prejudice; the parties may refile them following the **stay** and upon the entry of a new scheduling order, if applicable.

 Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that:
  1. The defendants' **Motion** to **Stay** Pending **Reexamination** by the U. S. **Patent** and Trademark Office (D.I.459) is GRANTED. The proceedings are stayed from the date of this order until further notice.
  2. The parties shall advise the court of any decision that results from the PTO's **reexamination** of the '825 patent, and any other decision of the PTO regarding **reexamination** of any of the other **patents**-in-suit.
  *4 3. The plaintiffs' **Motion** for Leave to Assert

Claim 15 of U.S. Patent 4,965,825 (D.I.399) is DENIED without prejudice.
  4. Thomson's **Motion** to Dismiss or in the Alternative for Summary Judgment (D.I.376) is DENIED without prejudice.
  5. Phillips' **Motion** to Dismiss for Lack of Standing (D.I.396) is DENIED without prejudice.

 Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

•            1:00cv01020            (Docket) (Dec. 04, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 4

Westlaw.

1987 WL 6314                                                      Page 1
Not Reported in F.Supp., 1987 WL 6314 (N.D.Ill.), 3 U.S.P.Q.2d 1889
(Cite as: 1987 WL 6314 (N.D.Ill.))

H

United States District Court, N.D. Illinois, Eastern
Division.
EMHART INDUSTRIES, INC., Plaintiff,
v.
SANKYO SEIKI MFG. CO., LTD., Defendant.
No. 85 C 7565.

Feb. 2, 1987.

*MEMORANDUM OPINION*

OCORAS, District Judge:

**\*1** This matter comes before the Court on defendant,
Sankyo Seiki's motion to stay the proceedings in this
litigation pending a final determination regarding
reexamination by the Patent and Trademark Office of
the patent in suit.    For the reasons stated herein,
defendant's motion is granted.

*FACTS*

This is an action for patent infringement.    Plaintiff,
Emhart Industries, Inc. ("Emhart"), filed the
complaint on August 28, 1985, alleging that
defendant, Sankyo Seiki Mfg. Co., Ltd. ("Sankyo
Seiki"), has infringed its patent (the "Voland" patent)
for a "cam operated program timer" (U.S. Patent No.
3,727,015).    No preliminary injunctive relief was
sought.    The parties have been engaged in discovery
for almost one year, including depositions and
document production in Japan.    The discovery cut-
off date of November 30, 1986, has passed, however,
no pretrial order is in place and the Court has not
considered any trial schedule for this case.

Defendant contends that during recent (September
1986) depositions of plaintiff's in-house patent
counsel (Robert F. Meyer) and one of the alleged
inventors of the Voland patent (Kurt Pauker) it
discovered that two patents (the "Brown patents")
owned by plaintiff, antedated the Voland patent and
constituted prior art.    The Brown patents were not
cited to the Patent and Trademark Office ("PTO")
during the prosecution of the Voland patent
application.    On September 29, 1986, defendant filed
a request for reexamination of the Voland patent
based, in part, upon the Brown patents.    On
December 5, 1986, the PTO granted the request on
the grounds that it raised "substantial new questions
of patentability."    Presently pending before the Court

is defendant's motion to stay the proceedings in this
litigation, filed on December 11, 1986.

*DISCUSSION*

Reexamination is a relatively new procedure by
which any person can request that the PTO
reexamine or reevaluate the patentability of an
unexpired U.S. patent.    35 U.S.C. § 302.    A request
for such a reexamination must be based upon prior art
patents or publications which raise "a substantial new
question of patentability."    Typically, the cited prior
art patents or printed publications upon which such a
request is based are ones which were not considered
by the patent examiner during the processing of the
patent application which resulted in the patent-in-suit.
Once a reexamination request is granted, a Patent
Examiner who is familiar with the technology
involved with the patent conducts the reexamination
and is obligated to do so "with special dispatch."    37
C.F.R. § 1.550(a).

Determining the desirability of a staying district
court proceedings pending the outcome of a
reexamination proceeding before the PTO resides in
the discretion of the district court.    Rather than
terminating the action, a stay operates to shift to the
PTO a significant issue, patent claim validity,
involved in the dispute before the Court.    Shifting
the validity issue to the PTO has many advantages,
including:

**\*2** 1. All prior art presented to the Court will have
been first considered by the PTO, with its particular
expertise.

2. Many discovery problems relating to prior art can
be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of
the patent, the suit will likely be dismissed.

4. The outcome of the reexamination many
encourage a settlement without the further use of the
Court.

5. The record of reexamination would likely be
entered at trial, thereby reducing the complexity and
length of the litigation.

6. Issues, defenses, and evidence will be more easily
limited in pre-trial conferences after a reexamination.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 6314                                                                                                      Page 2
Not Reported in F Supp , 1987 WL 6314 (N D Ill ), 3 U S P Q 2d 1889
(Cite as: 1987 WL 6314 (N.D.Ill.))

7. The cost will likely be reduced both for the parties and the Court.

*Fisher Controls Co. Inc. v. Control Components Inc., 443 F.Supp. 581, 582, 196 U.S.P.Q. 817, 818-19 (S.D.Iowa 1977). [FN1]*

Moreover, in passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion: [FN2]

The bill does not provide for a stay of court proceedings. It is believed by the committee that *stay provisions are unnecessary in that such power already resides with the Court* to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a *useful and necessary alternative* for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

H.R Rep. No. 1307 Part I, 96th Cong , 2d Sess. 4, *reprinted in* [1980] U.S. Code Cong. & Ad. News 6460, 6463. (Emphasis added). *See also Ingro v. Tyco Industries, Inc., 227 U.S.P.Q. 69 (N.D.Ill.1985)* (this Court granted a request for a stay of patent litigation pending the outcome of reexamination based, in part, on the above-quoted legislative history); P. Rosenberg, *Patent Law Fundamentals* § 15 09[3] at 15-167 (2d ed. 1986) ("In cases which have not progressed beyond .. initial litigation stages, the reexamination procedure *should be utilized*") (Emphasis added).

Plaintiff objects to a stay of the proceedings on four grounds. The Court is not persuaded by any of the plaintiff's arguments. First, plaintiff contends that there exists no adequate legal remedy for the loss of jobs and the possible destruction of its defrost timer business, which losses will allegedly follow from the delay caused by a reexamination proceeding in this case. The Court notes that, notwithstanding plaintiff's argument that monetary damage will not compensate for its losses, this *is* a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court. Moreover, it is not altogether clear that an injunction would, in fact, save plaintiff's defrost timer business. Defendant has submitted evidence suggesting that General Electric, defendant's largest customer, terminated Emhart as a supplier of defrost timers for reasons completely unrelated to the present suit.

*3 Plaintiff's second argument is that defendant has delayed unnecessarily in filing its request for reexamination, and thus, its motion for stay should be denied. Plaintiff claims that the facts necessary to establish the defenses set forth in defendant's request for reexamination were known to defendant since November of 1985. In support of this assertion, plaintiff points out that on November 1, 1985, in response to plaintiff's Interrogatory 3(d), defendant indicated that:

All of the claims in the patent in suit are unenforceable because the patentees failed to draw to the attention of the Examiner of the application from which the subject issued the *closest prior art* known to the applicants, *including* the United States *Patents Nos. 3,350,606, 3,500,005 [Brown] and 3,553,720 [Brown]* The question of the unenforceability of the patent in suit is under a *continuing investigation*, and hence this response will be supplemented as necessary. (Emphasis added)

Defendant does not deny that it knew of the Brown patents in November of 1985, nor that it suspected that the patents constituted prior art. However, defendant contends that it did not at that time know, nor could it have known, whether the Brown patents antedated the Voland patent and thus were legally available as prior art. Defendant argues that it was only during the depositions of one of the alleged inventors of the Voland patent and of plaintiff's in-house patent counsel that it was established that the Brown patents actually constituted prior art. The record reflects that defendant promptly filed its request for reexamination after the conclusion of these depositions.

As the Court finds that the benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date. The Court notes that the plaintiff has *not* alleged, nor is there any evidence to support a finding, that the defendant's request was made solely for the *purpose* of delaying the litigation. Rather, if defendant is "guilty" of any "crime," it is of dragging its feet in filing its otherwise valid request for reexamination.

Third, plaintiff contends that defendant's motion for stay should not be granted because this case has "substantially progressed." Plaintiff cites to *Digital Magnetic Systems Inc v. Ansley,* where the court, while granting the requested stay, cautioned that the reexamination process should not be abused "by

© 2005 Thomson/West. No Claim to Orig. U S Govt. Works

1987 WL 6314                                                                                          Page 3
Not Reported in F.Supp., 1987 WL 6314 (N.D.Ill.), 3 U.S.P.Q.2d 1889
(Cite as: 1987 WL 6314 (N.D.Ill.))

applying for reexamination after protracted, expensive discovery or trial preparation." 213 U.S.P.Q. 200, 290 (W.D.Okla.1982). The Court recognizes that significant, costly discovery has already taken place. However, substantially no trial preparations have been carried out--there is no pretrial order in place and no trial schedule has been set.

Moreover, it is significant here that defendant contends that it could not have filed its request for reexamination before it took the depositions of Robert Meyer and Kurt Pauker, whereupon it discovered that the Brown patents actually constituted prior art. The depositions of Pauker and Meyer were originally set for January 28, 1986, and May 19, 1986, respectively, but were postponed, at plaintiff's request, until September 1986. Defendant claims that plaintiff purposely delayed to prohibit defendant from establishing whether or not the Brown patents were legally available as prior art references. Clearly, based on defendant's response to plaintiff's Interrogatory 3(d), plaintiff knew that defendant was investigating the existence of prior art. Whatever plaintiff's reasons were for postponing these depositions, plaintiff will not now be heard to object to defendant's motion for stay on the grounds that too much time has passed since the commencement of this litigation.

*4 Lastly, it should be noted that the same court that decided *Digital,* has subsequently granted a stay pending reexamination in a case that was much further advanced than the instant case. *See Loffland Brothers Co. v. Mid-Western Energy Corp.,* 225 U.S.P.Q. 886 (W.D.Okla.1985) (stay granted after significant discovery, pretrial conference and trial date set). *See also Gould v. Control Laser Corp.,* 705 F.2d 1340, 217 U.S.P.Q. 985 (Fed.Cir.1983), *cert. denied,* 104 S.Ct. 343 (1983) (stay granted five years after commencement of litigation and only 20 days before scheduled start of trial). In sum, the Court finds that granting a stay 18 months into this litigation, after admittedly significant discovery, but virtually no trial preparation, will not unduly prejudice the plaintiff, especially in light of the plaintiff's own delay. [FN3]

Fourth, and finally, plaintiff claims that reexamination proceedings will not "solve anything with finality" because the PTO's decision on the patent's validity is not binding. Mem. Opp. at 5-6. This is simply not so. "A reexamination proceeding may result in the final cancellation of claims from the patent." *Manual of Patent Examining Procedure* §

2271 (1985). Of course, the patent owner may appeal the PTO's decision to the Board of Appeals and then to the Court of Appeals for the Federal Circuit. 35 U.S.C. § 145. Clearly, however, the end result of the reexamination proceedings will be to simplify the issues and reduce the complexity of trial.

Moreover, if the patent does survive the reexamination proceedings, the defendant has assured the Court that it will not contest the issues decided by the PTO, assuming that the plaintiff has been forthcoming and has cooperated fully during the proceedings. Reply at 13. Thus, a reexamination proceeding in this case may very well resolve significant issues of this litigation with finality. Based on the foregoing, the Court finds that the benefits of granting defendant's motion to stay outweigh the burdens of delay caused by a reexamination proceeding in this case. [FN4] Accordingly, defendant's motion to stay all further activities in connection with this action, pending a final determination in the reexamination proceeding, is granted.

> FN1. This oft-quoted case was decided under the PTO's reissue proceeding then in effect, which was quite similar to the present reexamination proceeding except that institution of the proceeding could only be requested by the patentee. The advantages of shifting the validity issue to the PTO are the same though in both.

> FN2. Early versions of what became the reexamination statute expressly provided for a stay of court proceedings. S. 1679, 96th Cong., 1st Sess. § 310 (1979); H.R. 5075, 96th Cong., 1st Sess. § 310 (1979); S. 2446, 96th Cong., 2d Sess. § 310 (1980).

> FN3. Plaintiff's reliance on the decision in *Antonious, Kamata-Ri & Co., Ltd.,* 205 U.S.P.Q. 294 (D.Md.1979), for the assertion that this Court should not stay the proceedings in this case because it has been pending for over a year, is misplaced. *Antonious* may be distinguished from the instant case in that the court in *Antonious* had access to records of two other forums that had previously examined the validity of the patent in suit, making it less likely that the court would need the PTO's expert opinion. 205 U.S.P.Q. at 295. Moreover, the litigation in *Antonious* did not involve the issue of prior art. In fact, the court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 6314                                                                        Page 4
Not Reported in F.Supp., 1987 WL 6314 (N.D.Ill.), 3 U.S.P.Q.2d 1889
(Cite as: 1987 WL 6314 (N.D.Ill.))

noted that where the issue of prior art *was* involved, the PTO's opinion could be "invaluable." *Id.* at 296. Lastly, the court in *Antonious* was primarily concerned with whether or not it should order the owner to file for reissue, rather than whether a stay should be granted pending reissue examination.

FN4. The Court notes in addition that where litigation has been stayed pending reexamination proceedings, the PTO will attempt to expedite those proceedings. *Manual of Patent Examining Procedures* § 2286 (1985).

Not Reported in F.Supp., 1987 WL 6314 (N.D.Ill.), 3 U.S.P.Q.2d 1889

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368283 (D.Del.)
**(Cite as: 2001 WL 34368283 (D.Del.))**

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
COGNEX CORPORATION, Plaintiff,
v.
NATIONAL INSTRUMENTS CORPORATION,
Defendant.
**No. Civ.A. 00-442-JJF.**

June 29, 2001.

Neal C. Belgam, and Dale R. Dube, of Blank Rome
Comisky & McCauley LLP, Wilmington, Delaware,
George M. Sirilla, G. Paul Edgell, and William P.
Atkins, of Pillsbury Winthrop LLP, Washington,
D.C., for Plaintiff, of counsel.

William J. Marsden, Jr., and John T. Meli, Jr., of
Fish & Richardson P.C., Wilmington, Delaware,
Frank E. Scherkenbach, David M. Barkan, and John
V. Picone III, of Fish & Richardson P.C., Menlo
Park, California, for Defendant, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Pending before the Court in this **patent**
infringement action is Cognex Corporation's **Motion**
To **Stay** Or, In The Alternative, For An Extension Of
The Deadlines In This Case (D.I.84). By its **Motion**,
Plaintiff, Cognex Corporation ("Cognex"), requests a
**stay** or, in the alternative, a three month delay in the
proceedings in this case, because it has requested a
**reexamination** of the **patent** in suit by the United
States **Patent** and Trademark Office ("PTO"). By
letter dated May 29, 2001, Cognex advised the Court
that the PTO granted Cognex's request for
**reexamination** of United States **Patent** No.
5,481,712 (the " '712 **Patent**"). Cognex contends that
**reexamination** of the '712 **Patent** will narrow and/or
resolve the issues in this case. Specifically, Cognex
contends that if the '712 **Patent** is declared
unpatentable, it is likely that the **patent** litigation will
be dismissed. On the other hand, if the PTO finds the
'712 **Patent** patentable over the prior art, Cognex

contends that the PTO decision might encourage the
parties to settle this action.

Defendant, National Instruments Corporation
("National Instruments"), opposes any stay in this
case. Specifically, National Instruments contends that
a **stay** would cause National Instruments severe
prejudice because: (1) the litigation schedule and trial
date would be delayed causing National Instruments
additional expense; (2) Cognex would be able to
continue to hold the specter of litigation over
National Instruments and its customers; and (3)
Cognex has already forced National Instruments to
spend over a million dollars defending itself in this
action before requesting the stay, despite the fact that
Cognex had the materials necessary to seek
**reexamination** earlier.

After reviewing the parties' positions with respect to
the instant **motion** and the applicable law, the Court
concludes that a **stay** and/or extension is not
warranted in this case. Accordingly, for the reasons
discussed, the Court will deny Cognex's **Motion** To
**Stay** Or, In The Alternative, For An Extension Of
The Deadlines In This Case.

DISCUSSION

The decision to grant or deny a stay is within the
court's broad range of discretionary powers. *Dentsply
International, Inc. v. Kerr Manufacturing Co., 734
F.Supp. 656, 658 (D.Del.1990)* (citations omitted). In
determining whether a stay is appropriate, the court
should "weigh the competing interests of the parties
and attempt to maintain an even balance." *Id.* In
weighing the interests involved, courts are generally
guided by such factors as (1) whether a stay would
unduly prejudice or present a clear tactical advantage
to the non-movant; (2) whether a stay will simplify
the issues raised by the parties; and (3) whether
discovery is complete and a trial date has been set.
*Gioello Enterprises Ltd. v. Mattel, Inc., 2001 WL
125340 (D.Del. Jan.29, 2001); United Sweetener
USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217
(D.Del.1991).* In balancing these factors, courts must
be particularly mindful of the consequences of the
stay on other parties. *Dentsply International, 734
F.Supp. at 658* (recognizing that Court must consider
whether "there is 'even a fair possibility' that the stay
would work damage on another party") (citations
omitted). Where a stay will forestall the trial date
agreed upon by the parties, this Court has required

Not Reported in F Supp 2d
Not Reported in F.Supp.2d, 2001 WL 34368283 (D Del )
**(Cite as: 2001 WL 34368283 (D.Del.))**

the party requesting the stay to "make a showing of 'a clear case of hardship or inequity' before the Court can enter a stay order " *Id.* (citing *Gold v. Johns-Manville Sales Corp., 723 F.2d 1068. 1076 (3d Cir.1983))*

*\*2* In this case, discovery was scheduled to close on May 4, 2001, less than three weeks before Cognex filed the instant **Motion** To **Stay,** and trial is scheduled for October 23, 2001 [FN1] Accordingly, Cognex must demonstrate a clear case of hardship or inequity before the Court will enter an order staying this action

> FN1. Although discovery has since been extended until July 2001 by stipulation between the parties (D I 106), the trial date in this case has not been changed.

After reviewing the parties' arguments, the Court concludes that Cognex cannot demonstrate a clear case of hardship or inequity, and that National Instruments would be prejudiced if the Court were to grant a stay in this case. Cognex primarily contends that **reexamination** will simplify the issues in this case such that the litigation may be settled or dismissed and the parties' expenses significantly reduced. However, as National Instruments points out, Cognex's complaint alleges a variety of claims which are not linked to the **patent** infringement claim, including claims of copyright and trademark infringement and unfair competition, all of which will require a trial.

In addition, Cognex contends that the **reexamination** may result in changed claims, which would cause this action to be litigated twice, wasting the Court's and the parties' resources. However, the Court is unpersuaded by Cognex's contention. The trial in this case is scheduled for October 2001, and the PTO granted Cognex's request for **reexamination** in May 2001. Although Cognex disputes the figures provided by National Instruments concerning the pendency of applications in the PTO because National Instruments relies on original applications rather than **reexamination** applications, even Cognex's figures suggest that the median **reexamination** time is 16 months. Thus, given the current time tables for action in the PTO, the Court believes that the trial in this case will likely be completed prior to any action by the PTO. (D I 87 at Exh. G; D I 94, Exh D).

Further, any hardship incurred by Cognex as a result of its request for **reexamination** is, in part, a result of

Cognex's own making. National Instruments contends and Cognex has not disputed, that Cognex has had at least some of the documents it presented to the PTO in its request for **reexamination** for quite some time National Instruments identified specific prior art references in its Answer to the Complaint in June 2000, yet Cognex waited until six months before the scheduled trial date in this case to seek **reexamination** of the '712 **Patent.** [FN2] Accordingly, the Court cannot conclude that Cognex has demonstrated a clear case of hardship or inequity justifying a stay in this case. *Dentsply,* 734 F.Supp. at 659 ("The Court will not elevate [a party's] failure to address its concerns in a timely fashion to an example of hardship warranting a stay."); *see also Remington Arms Company, Inc. v. Modern Muzzleloading, Inc., 1998 WL 1037920 (D.N.C. Dec.17, 1998)* (denying stay where trial date set and defendant's delay in requesting **reexamination** with PTO was unjustified given that defendant knew of the prior art forming its request for **reexamination** well prior to its **reexamination** request).

> FN2. Although Cognex contends that National Instruments did not produce many of these documents until much later, National Instruments also contends and Cognex has not disputed, that some of the documents Cognex presented to the PTO were in Cognex's possession as early as 1990, well before the inception of this litigation. Thus, it appears to the Court that Cognex still could have filed its request for **reexamination** at an earlier date

*\*3* Moreover, given the late stage of Cognex's request, the Court finds that any delay in the trial date scheduled for this case would severely prejudice National Instruments. The parties have conducted extensive discovery in Delaware, California, Texas, Washington, D.C. and Massachusetts based on a schedule coinciding with the October 23 trial date National Instruments has scheduled its experts and made trial support accommodations in Delaware based upon the October 23 trial date. Any deviation from the October trial date at this late stage in the litigation would necessarily prejudice National Instruments. *See Wayne Automation Corp. v. R.A. Pearson Co., 782 F.Supp. 516 (E.D.Wash.1991)* (denying plaintiff's **motion** for **stay** where parties conducted extensive discovery and trial date was set). Accordingly, the Court will deny Cognex's request for a **stay**.

As for Cognex's request for alternative relief in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 34368283 (D.Del.)
**(Cite as: 2001 WL 34368283 (D.Del.))**

form of a three month extension, the Court notes that
the discovery deadlines in this case have been
extended by stipulation of the parties. This
scheduling extension should address Cognex's time
concerns without necessitating a change in the
October 2001 trial date. Accordingly, at this time, the
Court will deny Cognex's request for a three month
extension.

CONCLUSION

For the reasons discussed, Cognex Corporation's
**Motion** To **Stay** Or, In The Alternative, For An
Extension Of The Deadlines In This Case will be
denied.

An appropriate Order will be entered.

Not Reported in F.Supp.2d, 2001 WL 34368283
(D.Del.)

**Motions, Pleadings and Filings (Back to top)**

•          1:00CV00442                (Docket)
(May. 02, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.