# EXHIBIT 6

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)
**(Cite as: 2003 WL 21640372 (D.Del.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
ALLOC, INC., a Delaware corporation, et al.,
Plaintiffs,
v.
UNILIN DECOR N.V., a Belgian company, et al.,
Defendants.
No. Civ.A. 03-253-GMS.

July 11, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

**\*1** On March 5, 2003, Alloc, Inc. ("Alloc"), Berry Finance N.V. ("Berry"), and Valinge Aluminum AB, ("Valinge") (collectively "the plaintiffs") filed a complaint against Unilin Decor, N.V. ("Unilin") and Quick-Step Flooring, Inc. ("Quick-Step") (collectively "the defendants") alleging infringement of U.S. Patent No. 6,516,579 ("the '579 patent"). The '579 patent is the latest in a series of continuation patents that include U.S. Patent Nos. 5,706,621 ("the '621 patent"), 5,860,267 ("the '267 patent"), 6,023,907 ("the '907 patent"), and 6,182,410 ("the '410 patent").

The '621 patent is currently undergoing reexamination in the United States Patent and Trademark Office ("PTO"). Additionally, the Federal Circuit is considering infringement issues with regard to the '267, '907, and '410 patents after the International Trade Commission ("ITC") rendered a non-infringement decision in favor of Unilin and against the plaintiffs.

Presently before the court is the defendant's motion to stay litigation of the '579 patent pending the completion of both the '621 reexamination proceedings and the Federal Circuit's decision on the '267, '907, and '410 patents. After consideration of

each of the factors involved, and for the reasons detailed below, the court will grant the motion to stay.

II. BACKGROUND

The parties involved in the present action have attempted to resolve their patent infringement issues in many different forums, both in the United States and in Europe. Specifically, in July 2000, Pergo Inc. ("Pergo"), Unilin's licensee, brought a declaratory action in the District of Columbia with regard to the '267, '907, and '621 patents in response to the plaintiffs' threats of infringement litigation. Pergo additionally filed a request for reexamination of the '621 patent in the PTO. This reexamination is currently ongoing. The plaintiffs subsequently filed a complaint in the Eastern District of Wisconsin asserting that Pergo and Unilin infringed the '267 and '907 patents. In response, Unilin filed its own declaratory judgment action in the District of Columbia, alleging that its product did not infringe the '267, '907, and '621 patents.

In December 2000, the plaintiffs initiated a proceeding in the ITC asserting that Unilin infringed the '267, '907, and '410 patents. Upon the filing of the ITC action, all of the district court actions between the two parties concerning the alleged infringement of the '267, '907, and '410 patents were stayed pursuant to 28 U.S.C. § 1659. In November 2001, an ITC Administrative Law Judge ("ALJ") issued a decision finding that Unilin did not infringe the '267, '907, or '410 patents. The ITC affirmed the ALJ's decision in April 2002. The plaintiffs then appealed to the Federal Circuit, which heard oral argument on that case in March 2003. No decision has yet issued.

In the present case, the '579 patent is the only patent in dispute. However, as the court noted above, it is the latest of the continuation patents that stem from the original '621 patent. The '579 patent has never been reviewed by the PTO, the ITC, or any other court.

III. DISCUSSION

**\*2** The decision to stay a case is firmly within the discretion of the court. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir.1985). This authority applies equally to patent cases in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)
**(Cite as: 2003 WL 21640372 (D.Del.))**

which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg.*, 3 U.S.P.Q .2d 1889, 1890 (N.D.Ill.1987) (recognizing that, "in passing legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp.*, 705 F .2d 1340, 1342 (Fed.Cir.1983) (citing legislative history of reexamination statute).

In determining whether a stay is appropriate, courts are directed to consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Comm Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citing cases); *cf United Sweetner USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212, 217 (D.Del.1991) (stating a similar test).

In opposition to the defendants' motion to stay, the plaintiffs first argue that, since the '579 patent itself is not at issue in the reexamination proceedings, or in the Federal Circuit appeal, there is no need to stay the case before this court. *See* D.I. 21 at 7. The court must disagree because the plaintiffs cannot credibly argue that the patents are not alike in subject matter, as well as in many of their claims. This is so because, in general, "a continuing application is one filed during the pendency of another application which contains at least part of the disclosure of the other application and names at least one inventor in common with that application." *Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed.Cir.1994). Thus, a continuation application "claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed." *Id.* Indeed, the plaintiffs themselves admit that the patents in question do have some terms in common. *See* D.I. 21 at 10. Therefore, even though the '579 patent does not contain precisely the same claims of the other patents that are under review or reexamination, there is a sufficient correlation among all of the patents for the court to conclude that a stay is appropriate.

Additionally, with regard to the issue of efficiency, it

is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation. To this end, the reexamination of the '621 patent will greatly serve the purpose of defining the issues in this case. For example, the court will gain the benefit of the PTO's particular expertise in evaluating the prior art. *See Pegasus Development Corp. v. DirecTV, Inc.*, 2003 WL 21105073, *2 (D.Del. May 14, 2003) (citations omitted). Likewise, the court will also benefit from the reexamination process in that (1) many discovery issues relating to prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; and (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court. *Id.* (citations omitted). Such a refinement of the issues will benefit both parties by reducing litigation costs. *See id.* This approach will also best conserve the court's scarce resources. *See id.* Similar benefits will likewise flow from the Federal Circuit's analysis of the '267, '907, and '410 patents.

*3 The plaintiffs alternatively contend that the motion is premature because the two proceedings that have a potential impact on this case may be decided well before this case reaches the claim interpretation stage. *See* D.I. 21 at 5. However, if the decisions of the PTO and Federal Circuit are imminent, as the plaintiffs suggest, a stay at this time would not unduly burden their case as the stay would then be of short duration.

Finally, the court notes that discovery in this case has not yet begun, nor has a discovery schedule been entered at this time. Likewise, the court has not yet set a trial date. Therefore, the stay will be entered before any party incurs substantial litigation-related expenses.

IV CONCLUSION

In light of the above considerations, the court concludes that a stay at this point in the case would not unduly prejudice the plaintiffs or create for them a clear tactical disadvantage. Indeed, a stay will allow the issues before the court to be further simplified and defined to the benefit of the parties, as well as the court.

For the foregoing reasons, IT IS HEREBY ORDERED that:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)
**(Cite as: 2003 WL 21640372 (D.Del.))**

1. The Defendants' Motion to Stay Pending the
Reexamination by the U.S. Patent and Trademark
Office and Ruling by the United States Court of
Appeals for the Federal Circuit (D.I.15) is
GRANTED.
2. The parties shall advise the court of any decision
that results from the PTO's reexamination of the
'621 patent and any decision that results from the
Federal Circuit's consideration of the '267, '907,
and '410 patents within thirty (30) days of the date
of each decision.
3. The Plaintiffs' Motion to Strike Portions of the
Answer and Complaint (D.I.11) is DISMISSED,
without prejudice, and with leave to re-file should
it become necessary following the stay.

Not Reported in F.Supp.2d, 2003 WL 21640372
(D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• _____1:03CV00253_____(Docket)
(Mar. 05, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 7

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
**(Cite as: 2001 WL 125340 (D.Del.))**

Page 1

**C**

Only the Westlaw citation is currently available

United States District Court, D. Delaware.
GIOELLO ENTERPRISES LTD., Plaintiff,
v.
MATTEL, INC., Defendant.
**No. C.A. 99-375 GMS.**

Jan. 29, 2001.

Philip A. Rovner, Potter, Anderson & Corroon LLP,
Wilmington, DE, James G. Goggin, Verrill & Dana
LLP, Portland, Maine, for Plaintiff, of counsel.

Robert W. Whetzel, Chad M. Shandler, Richards,
Layton & Finger, Wilmington, DE, Peter E. Heuser,
David A. Fanning, Charles H. DeVoe, Kolisch,
Hartwell, Dickinson, McCormick, & Heuser,
Portland, Oregon, for Defendants, of counsel.

*ORDER*

SLEET, J.

*1 On June 11, 1999, the plaintiff, Gioello
Enterprises Ltd. ("Gioello"), filed a complaint against
Mattel, Inc. ("Mattel") claiming infringement of U.S.
Patent 4,546,434 (the " '434 patent"). Mattel
answered and filed a counterclaim which Gioello, in
turn, answered. Both parties filed motions which are
currently pending. Mattel filed a request with the
U.S. Patent and Trademark Office (the "PTO") on
November 9, 2000 for an reexamination of claims 1-3
of the '434 patent. The PTO granted Mattel's request
on December 21, 2000, and issued a schedule for
statements from the parties (D.I.104). Currently
before the court is Mattel's motion to stay
proceedings pending reexamination (D.I.84). [FN1]
Upon consideration of the parties' submissions, the
court will grant Mattel's motion and stay the
proceedings until further notice.

> FN1. Although Mattel filed its motion
> before the PTO granted its request, the court
> will consider the PTO's actions.

In deciding whether to stay the proceedings, the
court's discretion is guided by the following factors:
(1) whether a stay would unduly prejudice Gioello or
present a clear tactical advantage for Mattel, (2)

whether a stay will simplify the issues, and (3)
whether discovery is complete and whether a trial
date has been set. *See Xerox Corp v. 3Comm Corp.,*
69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citing
cases); *cf United Sweetner USA, Inc. v. Nutrasweet
Co.,* 766 F.Supp. 212, 217 (D.Del.1991) (stating a
similar test).

The PTO's recent decision to reexamine the '434
patent will simplify the issues in this case and focus
the litigation. Numerous courts have cited a number
of advantages of granting a stay pending PTO
reexamination: (1) all prior art presented to the court
at trial will have been first considered by the PTO
with its particular expertise, (2) many discovery
problems relating to the prior art can be alleviated,
(3) if patent is declared invalid, the suit will likely be
dismissed, (4) the outcome of the reexamination may
encourage a settlement without further involvement
of the court, (5) the record of the reexamination
would probably be entered at trial, reducing the
complexity and the length of the litigation, (6) issues,
defenses, and evidence will be more easily limited in
pre-trial conferences and (7) the cost will likely be
reduced both for the parties and the court. *See, e.g.,
Braintree Laboratories, Inc.,* Civ. A. No. 96-2459-
JWL, 1997 WL 94237, at *9 (D Kan. Feb. 26, 1997);
*Hamilton Indus. v. Midwest Folding Products Mfg.,*
Civ. A. No. 89-C-8689, 1990 WL 37642, at *1- *2
(N D Ill. March 20, 1990) (citing cases). All of these
potential advantages are present, to some degree, if
the court imposes a stay of the proceedings pending
the outcome of the PTO's reexamination.

Not staying the proceedings runs the risk of
inconsistent adjudications or issuance of advisory
opinions. Presently, this case is scheduled for trial on
April 13, 2001. According to the PTO's order
granting the request for reexamination, it is possible
that submission of statements will not be complete
until April 12, 2001. [FN2] Additionally, the
outstanding motions for summary judgment by
Mattel claim invalidity and non-infringement--two
issues the PTO's decision could render moot. Since
the court must decide the summary judgment motions
well in advance of trial, it would have to address the
arguments raised before the PTO. Such a situation
raises resource questions. As one court noted:

> FN2. The PTO's order of December 21,
> 2000 states that Gioello has up to two

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
(Cite as: 2001 WL 125340 (D.Del.))

months to submit an optional response. If Gioello submits a response, Mattel has up to two months to submit a reply. Since no extensions will be granted, the court believes April 12, 2001--16 weeks from the date of the order is the maximum time allowable for written submissions to the PTO.

**\*2** ... if the parties continue to litigate the validity of the claims in this Court [sic], and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court [sic] will have wasted time and the parties will have spend additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court [sic] nor the parties expend their assets addressing invalid claims. *Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc.,* No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471, at \*3 (S.D.N.Y. Aug. 10, 2000). Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict. *See Hamilton,* 1990 WL 37642, at \*2 (citing *Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed.Cir.1988).

The court finds the prejudice to Gioello is slight, if any. Gioello claims it is prejudiced both by Mattel's dilatory tactics in not requesting an examination earlier and by it spending money on discovery that is nearly complete. Leaving aside timing arguments, the court finds no merit in this position. First, Gioello is not selling or actively licensing goods or services related to the '434 patent; money damages is an adequate remedy for any delay in redress. Second, both Mattel and Gioello have spent money on discovery. Third, Mattel is entitled by law to request a reexamination. *See* 35 U.S.C. § § 302-307; 37 C.F.R. § 1.525. The fact that the request was granted means the PTO deems the '434 patent worthy of reexamination. It is not for the court to second guess the PTO's decision to reassess the prior art.

Given the possibility that the PTO's reexamination could materially affect the issues in this case, the court will deny Mattel's motions for summary judgment and Gioello's motion to strike without prejudice. [FN3] Although the could will hold a status conference in late April or early May, 2001, the parties should advise the court of any earlier developments in the PTO's reexamination.

FN3. Upon the entry of a new scheduling order, the parties are free to re-file their motions.

Therefore, IT IS HEREBY ORDERED that:
1. Mattel's motion to stay the proceeding pending reexamination (D.I.84) is GRANTED. The proceedings are stayed from the date of this order until further notice
2. Mattel's motion for summary judgment on invalidity (D.I.87) is DENIED without prejudice.
3. Mattel's motion for summary judgement on noninfringement (D.I.89) is DENIED without prejudice.
4. Gioello's motion to strike (D.I.91) is DENIED without prejudice.
5. The parties shall advise the court of any decision that results from the PTO's reexamination of the '434 patent.

Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 8

Westlaw

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2004 WL 953088 (E.D.Pa.)
**(Cite as: 2004 WL 953088 (E.D.Pa.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
LUTRON ELECTRONICS CO., INC., Plaintiff
v.
GENLYTE THOMAS GROUP, L.L.C., Defendant
No. Civ.A.03-CV-02702.

April 30, 2004.
Amy B. Miner, Michael F. Snyder, David J. Kessler,
Drinker Biddle & Reath LLP, Philadelphia, PA,
Joseph R. Delmaster, Jr., Drinker Biddle & Reath
LLP, Washington, DC, for Plaintiff.

David R. Beto, George P. McAndrews, Heather A.
Bjella, James P. Murphy, Sara J. Bartos, McAndrews
Held & Malloy, Ltd., Chicago, IL, Wayne C.
Stansfield, Reed Smith LLP, Philadelphia, PA, for
Defendant.

*ORDER*

GARDNER, J.

**\*1** NOW, this 30th day of April, 2004, upon
consideration of Defendant Genlyte Thomas'
Renewed Motion to Stay This Action Pending
Resolution of the Reexamination of U.S. Patent No.
4,797,599, Which Has Now Been Allowed by the
Patent Office and Memorandum of Law in Support,
which motion and memorandum of law were filed
March 2, 2004; upon consideration of Plaintiff
Lutron Electronics Co., Inc.'s Memorandum in
Opposition to Defendant Genlyte Thomas Group,
LLC's Renewed Motion to Stay filed March 19,
2004; upon consideration of Genlyte Thomas' Motion
for Leave to File a Reply Memorandum in
Opposition to Genlyte Thomas' Renewed Motion for
Stay, which motion was filed March 23, 2004; upon
consideration of the Reply to Lutron's Memorandum
in Opposition to Genlyte Thomas' Renewed Motion
to Stay, which reply is attached to defendant's motion
for leave to file a reply memorandum filed March 23,
2004; upon consideration of Plaintiff Lutron
Electronics Co., Inc.'s Motion for Leave to File a Sur-
Reply Memorandum in Opposition to Genlyte

Thomas' Renewed Motion to Stay, which motion was
filed March 23, 2004; upon consideration of Plaintiff
Lutron Electronics Co., Inc.'s Sur-Reply
Memorandum in Opposition to Genlyte Thomas'
Renewed Motion to Stay, which sur-reply is attached
to plaintiff's motion for leave to file the sur-reply
filed March 24, 2004; it appearing that by Order of
the undersigned dated December 24, 2004 we denied
defendant's original request to stay this action
pending defendant's application for re-examination of
the patent at issue in this matter; it further appearing
that by Order and Decision dated February 10, 2004
the United States Patent and Trademark Office
granted Genlyte Thomas' request for re-examination;
it further appearing that the Patent and Trademark
Office will re-examine the patentability of claims 1
through 58 of plaintiff's "599" patent; it appearing
that this matter is scheduled for a *Markman* [FN1]
hearing before the undersigned on May 20 and 21,
2004; it further appearing that the re-examination by
the Patent and Trademark Office may result in the
invalidation of a portion or all of the "599" patent,

> FN1. *Markman v. Westview Instruments,
> Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134
> L.Ed.2d 577 (1996).

*IT IS ORDERED* that defendant's motion for leave to
file a reply brief is granted.

*IT IS FURTHER ORDERED* that the Clerk of Court
shall file the Reply to Lutron's Memorandum in
Opposition to Genlyte Thomas' Renewed Motion to
Stay, which reply is attached to defendant's motion
for leave to file a reply memorandum filed March 23,
2004.

*IT IS FURTHER ORDERED* that plaintiff's motion
to file a sur-reply brief is granted.

*IT IS FURTHER ORDERED* that the Clerk of Court
shall file Plaintiff Lutron Electronics Co., Inc.'s Sur-
reply Memorandum in Opposition to Genlyte
Thomas' Renewed Motion to Stay, which sur-reply is
attached to plaintiff's motion for leave to file the sur-
reply filed March 24, 2004.

*IT IS FURTHER ORDERED* that defendant's motion
for stay is granted. [FN2]

> FN2. A motion to stay an action pending

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 953088 (E.D.Pa.)
(Cite as: 2004 WL 953088 (E.D.Pa.))

resolution of a request for re-examination is directed to the sound discretion of the court. *Xerox Corp., v. 3Com Corporation,* 69 F. Supp.2d. 404, 406 (W.D.N.Y.1999). For the following reasons, and in the exercise of our discretion, we grant defendant's motion for stay

In our December 24, 2003 Order, we concluded that defendant waited too long to file its request for re-examination with the Patent and Trademark Office to stay the within proceedings at that time. However, on February 10, 2004 the United States Patent and Trademark Office issued its Order and Decision (See Exhibit 1 to defendant's renewed motion for stay) granting re-examination of plaintiff's "599" patent. Moreover, the Order and Decision questions the patentability of claims 1 through 58 of plaintiff's "599" patent.

Since our December 24, 2003 Order, both parties have filed numerous motions, including among others: plaintiff's motion to supplement the claim terms in dispute; defendant's motion in limine to exclude other claim terms; and defendant's motion to amend its answer and counterclaims. In addition, we are aware that there are discovery disputes between the parties currently pending before United States Magistrate Judge Arnold C. Rapoport Moreover, the *Markman* hearing originally scheduled for March 8 and 9, 2004 was rescheduled to May 20 and 21, 2004.

There are numerous other deadlines that are fast approaching and there is uncertainty regarding the viability of plaintiff's "599" patent. While this court certainly has the authority to dispose of the parties' dispute, we conclude that the United States Patent and Trademark Office is better suited to determine the overall viability of the "599" patent based upon the re-examination already underway. The reexamination process may significantly narrow the issues before this court and any additional delay does not outweigh the benefit of having the Patent and Trademark Office make its experienced decision on the validity of the patent and the scope of the claims. *See Vitronics Corporation v. Conceptronic, Inc.,* 36 F.Supp.2d 440, 442 (D.N.H.1997).

Accordingly, we grant defendant's motion for stay of the proceedings. In addition, we deny, without prejudice, all the outstanding motions, including the interpretation of the disputed claim terms, until reexamination of the "599" patent is complete

*IT IS FURTHER ORDERED* that this matter is stayed until such time as the United States Patent and Trademark Office completes its re-examination of plaintiff's "599" patent. [FN3]

> FN3. It is the sense of this Order that every 60 days plaintiffs shall advise the undersigned regarding the status of the re-examination of the "599" patent.

**\*2** *IT IS FURTHER ORDERED* that the Clerk of Court shall place this matter into civil suspense and mark it closed for statistical purposes.

*IT IS FURTHER ORDERED* that all outstanding motions in this matter are denied without prejudice to re-present them, if necessary, after re-examination of the "599" patent is completed.

Not Reported in F.Supp.2d, 2004 WL 953088 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

•          2:03cv02702_____(Docket) (Apr. 30, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 9

Westlaw.

Not Reported in F. Supp.                                                                    Page 1
Not Reported in F. Supp., 1992 WL 142018 (E.D.Pa.), 24 U.S.P.Q.2d 1857
**(Cite as: 1992 WL 142018 (E.D.Pa.))**

H

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
PUROLITE INTERNATIONAL, LTD.
v.
ROHM AND HAAS COMPANY, et al.
**Civ. A. No. 91-2740.**

June 15, 1992.
Niels Korup, Spector, Gadon and Rosen, P.C.,
Richard E. Miller, Philadelphia, Pa., for plaintiffs.

Mari M. Shaw, Anthony J. Tamburro, Dechert, Price
& Rhoads, Philadelphia, Pa., Rudolf E. Hutz, Jeffrey
B. Bove, N. Richard Powers, Connolly, Bove, Lodge
& Hutz, Wilmington, Del., for defendants.

*MEMORANDUM AND ORDER*

HUTTON, District Judge.

*1 Presently before the Court is the Motion of All
Defendants to Dismiss the Complaint or, in the
alternative, to Stay this Action, the plaintiff's
response, the defendants' Reply, the plaintiff's Sur-
Reply, the defendants' Supplemental Memorandum,
the plaintiff's Reply to Defendants' Supplemental
Memorandum, the defendants' Second Supplemental
Memorandum and the plaintiff's Response. For the
following reasons, the Motion to Dismiss is DENIED
without prejudice, and the Motion for a Stay is
GRANTED. This matter is stayed pending the
outcome of the Patent and Trademark Office
reexamination of United States Patent No. 4,224,415.

*FACTUAL BACKGROUND*

This case starts not with the filing of this complaint
in this district but with the filing of a different
complaint in the District of Delaware. Therefore, a
brief background of the parties, the patents and the
pending litigation is necessary. Rohm and Haas
Company ("R & H") filed suit on March 1, 1990
against the Brotech Corporation ("Brotech") for
patent infringement regarding four United States
patents. This suit was commenced in the District of
Delaware. On April 29, 1991, Brotech and Purolite
International, Ltd. ("Purolite") filed suit in this Court
against R & H with a six count complaint alleging

violations of the antitrust statute, RICO statute and
common law fraud. Purolite is owned jointly by
Brotech and the individual owners of Brotech.
Purolite manufactures in Wales the products which
Brotech sells in the United States and elsewhere and
which R & H claims infringe upon its patents. The
named defendants in the Pennsylvania litigation are R
& H, the Delaware plaintiff, several individual
current and former employees and a subsidiary of R
& H. The patents at issue in the Pennsylvania
litigation concern the four patents in the Delaware
litigation plus several more. Soon after filing the
complaint, R & H moved for an injunction to force
Brotech to assert the claims in the Pennsylvania
litigation as counterclaims in the Delaware litigation.
This Court placed the matter in suspense pending the
Delaware court's ruling. On August 9, 1991, the
district court in Delaware granted the injunction as to
Brotech, but, for reasons discussed *infra,* declined to
enjoin Purolite from proceeding with the
Pennsylvania litigation. This Court, upon motion
from the plaintiff, removed the case from suspense
and placed it on the active trial calendar. Brotech
complied with the Delaware order and dismissed
itself from the litigation. Soon thereafter, R & H
moved for a dismissal of the complaint as well as for
a stay of discovery. The Court denied the stay of
discovery. The parties submitted an extended
briefing schedule to the Court and after its
completion have submitted further briefs regarding a
stay which was issued in the Delaware action and a
recent decision of the United States Supreme Court.
The Delaware litigation has been stayed pending a
reexamination of one of the patents involved in this
case which affects two other patents at issue in this
case. Over 300 pages of legal argument have been
submitted by the parties on this motion alone, and the
exhibits attached to the briefs number at least three
times that amount. The motion is now ripe for
disposition barring further supplemental filings by
the parties.

*COMPLAINT*

*2 The Complaint contains six counts. Count I
alleges violations of the Antitrust statutes. Counts II,
III, IV, and V allege violations of the RICO statute.
Count VI raises a claim for common law fraud.
Jurisdiction on Counts I through V is based upon
federal question jurisdiction and the specific
jurisdictional provisions of RICO and antitrust law.
Jurisdiction for the common law fraud claim is based

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp                                                                                           Page 2
Not Reported in F Supp , 1992 WL 142018 (E D Pa ), 24 U S P Q 2d 1857
(Cite as: 1992 WL 142018 (E.D.Pa.))

upon pendent jurisdiction

The essential allegations of the complaint accuse R & H of attempted monopolization of macroporous ion exchange technology through patents obtained and enforced fraudulently. The market area allegedly monopolized is the United States market. The patents at issue in this litigation are the following: United States Patent Nos. 4,221,871; 4,224,815; 4,256,840; 4,297,220; 4,382,124; 4,486,313; 4,501,826; 4,002,564; and 4,818,773 Paragraph 31 of the plaintiff's complaint states that one of the purposes of this action is to invalidate all of the above patents as well as to expose the racketeering and antitrust activities of the defendants.

### MOTION FOR STAY
The defendants in this action have moved for a stay of this litigation for several reasons. This Court has addressed this issue twice before. The arguments raised by the defendants were raised originally when the plaintiff sought to remove the case from civil suspense and again when the defendants sought to stay discovery. The Court determined at that time that a stay was not warranted and ordered that the litigation proceed. Since that time, however, the Court has been advised of two relevant developments of which it was not aware previously First, the Patent and Trademark Office ("PTO") has decided to reexamine United States Patent No. 4,224,415. This patent is related to United States Patent Nos. 4,256,840 and 4,382,124, and a decision affecting 4,224,415 will affect the other two patents. These three of these patents are at issue in this litigation. Second, based upon this reexamination proceeding, the district court in Delaware upon motion by Brotech, the defendant in Delaware and an owner of the plaintiff in this matter, has stayed the Delaware litigation pending the outcome of the reexamination proceeding

The validity of the three patents being reexamined will be relevant to the outcome of this litigation. The counterclaims which Brotech has asserted defensively in Delaware have been asserted offensively in this Court. Although issues of fraud and antitrust form the legal basis of the claims in this matter, the litigation revolves around the patents for macroporous ion exchange technology. Brotech has argued to the Delaware court that the three patents are related to one another. The Delaware court addressed substantially all of the issues regarding a stay of proceedings in its opinion of March 11, 1992 Rohm and Haas Co v Brotech Corp., slip op., Robinson, J (D Del, March 11, 1992) This Court

need not readdress those issues and restate the analysis of Judge Robinson, and incorporates the opinion of Judge Robinson as support.

*3 This Court has the inherent power and discretion to stay an action pending the reexamination of a patent by the PTO. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 215-18 (D. Del.1991) This case is presently in the pretrial stage with discovery only having commenced several months ago. No trial date has been set or even contemplated nor has a scheduling order been issued. This case is not as far advanced as the Delaware litigation which was quickly approaching trial when it was stayed. The prejudice that inures to Brotech as a result of the stay in Delaware as to its counterclaim is the same as that which will inure to Purolite as a result of the stay of this litigation. The court in Delaware has already addressed that issue and found that the benefit of the stay would exceed the prejudice Indeed, Brotech requested the stay.

Purolite argues that a stay is not warranted in this case because the two cases present different issues and that reexamination will not affect this case. Although the reexamination may be more relevant in an infringement action such as the Delaware action, a decision by the PTO affirming the patents will surely strengthen the defendants' case considerably while a cancellation will severely damage the defendants' case. Although not dispositive, the effect of the reexamination will be substantial. Therefore, based upon the decision of the Honorable Sue L. Robinson and the additional reasons stated above, this Court stays this action pending the outcome of the PTO reexamination. This Court recognizes that a stay of an inordinate amount of time can at some point prejudice the parties sufficiently so as to be unjust Gould v. Contol Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir.1983) R & H will keep the parties and the Court informed of the progress of the reexamination, and should the reexamination take so long as to unduly prejudice the parties, the Court may revisit the matter. R & H shall also inform the Court of the outcome of the reexamination, and the stay shall automatically dissolve ten days after the decision of the PTO

Because the Court is staying the matter pending PTO reexamination, the motion to dismiss is not ripe for disposition. The motion to dismiss will be denied without prejudice and with leave to renew upon the dissolution of the stay. The parties need not submit new briefs on the motion to dismiss which has already been extensively briefed, but may simply

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 142018 (E.D.Pa.), 24 U.S.P.Q.2d 1857
**(Cite as: 1992 WL 142018 (E.D.Pa.))**

Page 3

renew the motion and responses by praecipe. The parties may supplement the briefs already submitted in whatever manner they consider the decision of the PTO warrants. An appropriate Order follows.

### ORDER

AND NOW, this 12th day of June, 1992, upon consideration of the Motion of All Defendants to Dismiss the Complaint or, in the alternative, to Stay this Action, the Plaintiff's Response, the Defendants' Reply, the Plaintiff's Sur-Reply, the Defendants' Supplemental Memorandum, the Plaintiff's Reply to Defendants' Supplemental Memorandum, the Defendants' Second Supplemental Memorandum, and the Plaintiff's Response, IT IS HEREBY ORDERED that:

*4 1. The Motion of All Defendants to Dismiss the Complaint is DENIED without prejudice and with leave to renew;

2. The Motion of All Defendants to Stay the Action is GRANTED; and

3. This matter is stayed pending a reexamination by the Patent and Trademark Office of United States Patent No. 4,224,415. Defendant Rohm & Haas shall inform the Court on a regular basis of the status of the reexamination proceedings. This stay shall dissolve automatically after the Patent and Trademark Office issues its reexamination decision or upon further order of this Court.

Not Reported in F.Supp., 1992 WL 142018 (E.D.Pa.), 24 U.S.P.Q.2d 1857

**Motions, Pleadings and Filings (Back to top)**

• 2:91cv02740 (Docket)
(Apr. 29, 1991)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 10

Westlaw.

Not Reported in F Supp 2d                                                                    Page 1
Not Reported in F Supp 2d, 1998 WL 1037920 (M D N C )
**(Cite as: 1998 WL 1037920 (M.D.N.C.))**

ᵽ⁻

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, M D North Carolina.
REMINGTON ARMS COMPANY, INC , Plaintiff,
v.
MODERN MUZZLELOADING, INC , Defendant.
**No. 2:97CV00660.**

Dec. 17, 1998.
Christopher G. Daniel, Womble Carlyle Sandridge &
Rice POD 84, Michael E. Ray, Womble Carlyle
Sandridge & Rice POD 84, Winston-Salem, for
Remington Arms Company, Inc , plaintiffs.

Daniel Alan M. Ruley, Bell, Davis & Pitt, P.A.,
James R. Fox, Bell, Davis & Pitt, P.A., William
Kearns Davis, Bell, Davis & Pitt, P.A., Winston-
Salem, Thad G. Long, Bradley, Arant, Rose & White,
L L. P., Birmingham, AL, Donald H. Zarley, Zarley
McKee Thomte Voorhees & Sease, P L.C., Des
Moines, IA, Timothy J. Zarley, Daniel J. Cosgrove,
Zarley McKee Thomte Voorhees & Sease, P L.C.,
Des Moines, IA, Dennis L. Thomte, Zarley McKee
Thomte Voorhees & Sease, P L.C., Omaha, NE, for
Modern Muzzleloading, Inc , defendants.

ORDER

OSTEEN, District J.

**\*1** For the reasons set forth in the memorandum
opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that
Defendant's Motion To Stay District Court
Proceedings Pending Reexamination [89] is denied.

MEMORANDUM OPINION
This matter comes before the court on Defendant's
Motion to Stay District Court Proceedings Pending
Reexamination.

For the reasons discussed herein, the court will deny
Defendant's Motion to Stay District Court
Proceedings Pending Reexamination.

I. FACTUAL AND PROCEDURAL
BACKGROUND

On June 18, 1997, Plaintiff Remington Arms
Company, Inc. (Remington), filed this lawsuit against
Modern Muzzleloading, Inc. (Modern), alleging
willful infringement of Plaintiff's U.S. Patent No.
5.606.817 entitled Muzzle-loading Firearm ('817
patent). (Pl's Resp. Mot. Stay at 1.) Modern timely
filed an answer and counterclaim denying
infringement and alleging invalidity of the patent.
(Def 's Answer and Countercl.)

In the fall of 1997, Defendant submitted its first
request for reexamination to the Patent and
Trademark Office (PTO) on the grounds that the
claims of the '817 patent were obvious. The PTO
denied Defendant's request for reexamination. (Pl.'s
Resp. Mot. Stay at 1-2.) During the next few months,
the parties engaged in extensive discovery which
closed on July 30, 1998 Id. A trial date has been set
for February 16, 1999. A Markman Hearing was
scheduled for November 5, 1998, and was postponed
pending the outcome of Defendant's Motion to Stay.
Id. Several dispositive motions are also pending
before this court. Id.

Although there is evidence in the record indicating
that Defendant was aware of the prior art as early as
May 5, 1998, [FN1] Defendant chose not to request a
second reexamination of Plaintiff's patent until
August 13, 1998, after dispositive motions by both
parties were briefed and filed, a trial date was set, and
two weeks after discovery had closed On October
15, 1998, the PTO granted Defendant's second
request for reexamination of the '817 patent. Id. at 3.
Modern has now moved this court to stay this
litigation pending the outcome of the reexamination
proceeding and Plaintiff has filed a response to
Modern's motion to stay.

> FN1. There is also evidence which suggests
> that Defendant was aware of the prior art
> which forms the basis for its second request
> for reexamination as early as March 1998
> when the Defendant received notice of a
> second lawsuit filed by Remington, for
> patent infringement, which disclosed some
> of the same prior art at issue in the present
> action. (Pl.'s Resp Mot. Stay, Ex. 4 and Ex

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 1037920 (M.D.N.C.)
**(Cite as: 1998 WL 1037920 (M.D.N.C.))**

Page 2

4A.)

II. DISCUSSION

A. Motion to Stay District Court Proceedings Pending Reexamination

It is well settled that the decision to stay district court proceedings pending the outcome of a PTO reexamination proceeding "resides in the [sound] discretion of the district court." *Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co.,* 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987). In determining whether to grant or deny a stay, "courts consider whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party, whether a stay will simplify the issues in question and trial of the case, whether discovery is completed and whether a trial date has been set." *See Target Therapeutics Inc. v. SciMed Life Sys. Inc.,* 33 U.S.P.Q.2d 2022, 2023 (N.D.Cal.1995). While this court is cognizant of the advantages of granting the stay, this court finds that the many burdens associated with a stay outweigh the benefits.

1. Motion to Stay Would Not Be Judicially Efficient.

**\*2** The court agrees with Plaintiff that under the circumstances, granting the motion to stay would not be judicially efficient. Discovery has closed, a trial date has been set, and both parties have submitted dispositive motions which are presently pending before the court. (Pl.'s Resp. Mot. Stay at 2.) Finally, the Markman Hearing, originally scheduled for November 5, 1998, has already been postponed pending the outcome of Defendant's Motion to Stay. *Id.* Because a reading of the record suggests to the court that considerable monies have already been expended, staying the proceedings would only result in a waste of time and judicial resources, especially at this late stage of the litigation. *See Ascii Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378, 1380 (N.D.Cal.1994) (Evidence that "substantial expense and time had been invested in the litigation [ ] would militate against granting the motion.")

In addition, other federal courts have declined to stay district court proceedings where discovery has been completed and a trial date has been set. *See Wayne Automation Corp. v. R.A. Pearson Co.,* 782 F.Supp. 516, 519 (E.D.Wash.1991) (denying plaintiff's motion to stay litigation where the parties had conducted extensive discovery and the case was set for trial); *Enprotech Corp. v. Autotech Corp.,* 15 U.S.P.Q.2d 1319, 1320 (N.D.Ill.1990) (finding that

"[w]e are too far along the road to justify halting the journey while the defendant explores an alternate route"); *Accent Designs Inc. v. Jan Jewelry Designs Inc.,* 32 U.S.P.Q.2d 1036, 1039-40 (S.D.N.Y.1994); *Digital Magnetic Sys., Inc. v. Ansley,* 213 U.S.P.Q. 290 (W.D.Okla.1982) ("Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation.") [FN2]

> FN2. The court also finds that a stay would be inappropriate because the average duration of a PTO reexamination proceeding is 19 months. (Pl.'s Resp. Mot. Stay, Ex. 2, PTO Data, at 3.)

Although Defendant contends, and the court does not disagree, that stays are to be liberally granted, the cases which have granted stays pending reexamination are easily distinguishable from the present action. Generally, courts grant stays where the case is in the early stages of litigation. *See Target Therapeutics,* 33 U.S.P.Q. at 2023 (Stay of proceedings is warranted where the action is in its early stages and the parties have not yet engaged in extensive discovery.); *accord Ascii,* 844 F.Supp. at 1381. Because this court finds the cases granting stays to be inapposite to the present matter, Defendant's reliance on these authorities is misplaced.

2. Stay of the Proceedings Would Be Unfairly Prejudicial to Plaintiff.

In ruling on a motion to stay proceedings, a court should consider whether a stay would unduly prejudice the non-moving party. *See United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991); *Wayne,* 782 F.Supp. at 519. In the present case, it is clear that Plaintiff will be prejudiced by staying the proceeding. Discovery has closed and a trial date has been set. In addition, the court is persuaded by Plaintiff's argument that since "a stay for reexamination could last for years ... [a]fter such a passage of time, Remington's prayer for relief to enjoin Modern from further infringement may no longer have value as technology or market conditions change." (Pl.'s Resp. Mot. Stay at 7.)

**\*3** The most compelling reason for denying the stay, however, is Defendant's unjustified delay in requesting a second reexamination with the PTO. Although Defendant maintains that the newly found prior art, which forms the basis for its second reexamination petition, was just recently discovered,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 1037920 (M.D.N.C.)
**(Cite as: 1998 WL 1037920 (M.D.N.C.))**

Page 3

this court finds evidence to the contrary. The record indicates that Defendant was aware of the prior art as early as May 5, 1998, if not sooner, when Defendant deposed the inventor of the patent. (Pl.'s Resp. Mot. Stay at 2; Resp. Def.'s Mot. Leave Am. Answer & Countercl. at 4.) [FN3]

> FN3. It is arguable that Defendant had knowledge of this prior art as early as March 1998, when Plaintiff filed a second but related patent infringement lawsuit against Modern. In the second action, Plaintiff attached a copy of the '073 patent to the complaint, which included some of the prior art (i.e., Rodney patent) that Defendant now alleges Plaintiff should have disclosed to the PTO in its '817 patent application. Thus, Defendant was put on notice that the Rodney patent was relevant prior art in March 1998. (Pl.'s Resp. Mot. Stay at 2, Ex. 4 and Ex. 4A.)
>
> Finally, Defendant has failed to convince the court that it was not fully aware of the existence of this material prior to deposing patent attorney Donald Huntley on July 6, 1997. On July 1, 1998, in the second but related patent action, Defendant filed a motion to amend the answer and counterclaim to add the affirmative defense of inequitable conduct based upon Plaintiff's failure to disclose material prior art, despite the fact that it had not yet deposed Mr. Huntley. (Resp. Def.'s Mot. Leave Am. Answer & Countercl. at 4.) This strongly suggests that Mr. Huntley's testimony was not critical to Defendant's discovering the existence of this undisclosed prior art.

Generally, courts are reluctant to stay proceedings where a party is using the reexamination process merely as a dilatory tactic. *See Freeman v. Minnesota Mining and Mfg. Co.,* 661 F.Supp. 886, 887 (D.Del.1987) (denying a stay where defendant knew of the prior art for eight months yet delayed in filing its request for reexamination). Therefore, Defendant's unjustified delay in filing its reexamination petition weighs in favor of denying the stay.

The PTO may ultimately conclude that in light of the undisclosed prior art, Plaintiff's patent is invalid. Even if this court, however, were to uphold the validity of the patent, it is well settled that "the two forums can quite correctly come to different conclusions regarding validity." *Whistler Corp. v. Dynascan Corp.,* 29 U.S.P.Q.2d 1866, 1872

(N.D.Ill.1993); *Output Tech. Corp. v. Dataproducts Corp.,* 22 U.S.P.Q.2d 1073-1074 (W.D.Wash.1991) ("[T]he Court and PTO have different functions and they are 'concepts not in conflict.' ")

While the court would surely benefit from the expert opinion of the PTO, [FN4] and while awaiting the outcome of the reexamination process could possibly eliminate the need for trial if the claims are canceled, prejudice to Plaintiff counsels strongly against granting the stay. Therefore, in its discretion, this court will deny Defendant's Motion To Stay pending reexamination.

> FN4. *See Bausch & Lomb Inc. v. Alcon Lab., Inc.,* 914 F.Supp. 951, 953 (W.D.N.Y.1996); *Wayne Automation Corp. v. R.A. Pearson Co.,* 782 F.Supp. 516, 518 (E.D.Wash.1991); *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991) (finding that the PTO's expertise in construing the validity of a patent is a factor which weighs heavily in favor of granting a stay pending reexamination).

### III. CONCLUSION

For the reasons stated above, the court will deny Defendant's Motion To Stay District Court Proceedings Pending Reexamination.

An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.

Not Reported in F.Supp.2d, 1998 WL 1037920 (M.D.N.C.)

**Motions, Pleadings and Filings (Back to top)**

•           2:97cv00660             (Docket)
(Jun. 18, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 11

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2001 WL 32852 (N.D.Ill.), 57 U.S.P.Q.2d 1662
**(Cite as: 2001 WL 32852 (N.D.Ill.))**

C

**Motions, Pleadings and Filings**

United States District Court, N.D. Illinois, Eastern
Division.
WIRELESS SPECTRUM TECHNOLOGIES, INC.,
Plaintiff,
v.
MOTOROLA CORPORATION, Defendant.
No. 00 C 0905.

Jan. 12, 2001.

*MEMORANDUM OPINION AND ORDER*

KENNELLY, J.

**\*1** This is a patent infringement action filed
February 14, 2000 by plaintiff Wireless Spectrum
Technologies against defendant Motorola
Corporation. Wireless holds Patent No. 4,736,453
("the '453 Patent"), which is entitled "Method for
Making Frequency Channel Assignment in a Cellular
or Non-Cellular Radiotelephone Communications
System." Wireless claims that Motorola has infringed
on the '453 Patent by marketing its iDEN products
and other cellular communications systems, and it
seeks a permanent injunction and damages resulting
from the alleged infringement. Motorola filed its
answer in April and counterclaimed for a declaration
of noninfringement and invalidity.

After this lawsuit was filed, Motorola asked the
Patent Trademark Office ("PTO") to declare an
interference and adjudicate the priority of invention
between the '453 Patent and a pending Motorola
patent application (the "Thro Patent") that claims the
same subject matter as the '453 Patent. Both parties
agreed to delay the progress of this action until the
PTO decided whether to institute an interference. The
PTO declared Interference No. 104,502 ("the
Interference") on August 11, 2000. This case is
presently before the Court on Motorola's motion to
stay pending the final outcome of the Interference.

Both parties agree that the grant of a stay is within
the sound discretion of the Court based on the Court's
inherent power to control its docket. *See Research
Corp. v. Radio Corp. of America,* 181 F.Supp. 709,

710 (D.Del.1960) (*citing Landis v. North American
Corp.,* 299 U.S. 248, 254 (1936)). In deciding
whether to grant a stay, the Court must consider the
"possible damage, hardship and inequities to the
parties to the lawsuit and the relationship of the stay
to the fulfillment of judicial objectives of
simplification of the issues in question and trial of the
case." *United Sweetener USA, Inc. v. Nutrasweet Co.,*
766 F.Supp. 212, 217 (D.Del.1991).

Motorola argues that a stay is appropriate in this case
because it would eliminate the risk that the Court and
the PTO will reach inconsistent results. Motorola is
concerned that because a presumption of the validity
of the '453 Patent exists in this lawsuit but does not
exist in the Interference proceedings, *see Okada v.
Hitotsumachi,* 16 U.S.P.Q.2d 1789, 1790 (Bd.
Pat.App. & Int.1990), it could suffer undue hardship
resulting from a finding of validity in this Court and a
finding of invalidity in the PTO. *See Research Corp.,*
181 F.Supp. at 711 (noting the effect of differing
burdens in federal district court proceedings versus
interference proceedings before the PTO). Motorola
also argues that a stay would conserve the Court's and
the parties' resources, because the PTO's
determination could render this action moot. At the
very least, Motorola claims, the Interference could
simplify the issues before the Court by permitting the
PTO to exercise its expertise in the matters of priority
and patentability. Finally, Motorola argues that a stay
will not unfairly prejudice Wireless because, by the
parties' agreement, this case has not progressed
beyond the pleadings stage.

**\*2** Wireless asserts that the equities militate against a
stay of this action. Wireless is primarily concerned
that the '453 Patent will expire before the PTO
adjudicates the Interference, [FN1] which will
prejudice Wireless by eliminating the possibility of
obtaining a permanent injunction. Although Wireless
admits that simultaneous litigation of the Interference
and this action will strain its resources, it claims that
this scenario is preferable to losing its right to a
permanent injunction. Wireless also claims that a stay
will not further the interests of judicial economy
because the Interference primarily involves a single
piece of prior art to the '453 claims, the Thro Patent,
whereas this action will conceivably involve a
broader range of issues. Finally, Wireless argues that
the risk of inconsistent judgments is extremely low
and in any event was precipitated by Motorola itself,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 32852 (N.D.Ill.), 57 U.S.P.Q.2d 1662
**(Cite as: 2001 WL 32852 (N.D.Ill.))**

which provoked the Interference after the instigation of this lawsuit.

> FN1. The '453 Patent is scheduled to expire in April 2005.

The Court finds that the equities favor a stay. The Court agrees with Motorola that a stay will further the interests of judicial economy and the conservation of the parties' resources. The Interference involves the validity of the '453 Patent, the same issue currently before this Court. If the PTO with its unique expertise determines that all or some of the '453 Patent's claims are invalid, that determination will either dispose of this case entirely or at least aid the Court in adjudicating this case. *See American Telephone & Telegraph Co. v. Milgo Electronic Corp.,* 416 F.Supp. 951, 953 (S.D.N.Y.1976) (staying infringement action becausethe PTO's adjudication of the priority issue "can only aid the court in its determination of this lawsuit"); *Childers Foods, Inc. v. Rockingham Poultry Marketing Co-op, Inc.,* 203 F.Supp. 794, 797 (W.D.Va.1962) (staying infringement pending interference because PTO's determination of priority of invention would be "most helpful" to court); *Bayer v. Novartis Crop Protection Inc.,* 55 U.S.P.Q.2d 1509,1511-12 (M.D.La.2000) (staying infringement action pending interference because PTO's expertise would aid court in deciding case on the merits). Under these circumstances, there is no need for either party to spend time and money litigating both here and in front of the PTO at the same time. *See Childers,* 203 F.Supp. at 796 (noting that simultaneous proceedings in federal district court and the PTO are "wasteful and extravagant" where issues to be decided are very similar); *Bayer,* 55 U.S.P.Q.2d at 1511-12 (holding that simultaneous litigation of patent issues "would create an economic hardship on the parties and also result in the ineffective administration of justice").

Although the Court is sensitive to Wireless's concern that the Interference may impact its ability to obtain a permanent injunction, Wireless has failed to show either that the Interference is likely to outlast the '453 Patent [FN2] or that damages will not adequately remedy Motorola's alleged infringement in the event an injunction is unavailable. Further, Wireless agreed to suspend the onset of discovery in this action until the PTO determined whether it would declare an Interference. [FN3] Accordingly, this case has not progressed beyond the initial pleadings stage, and there is no indication that a stay would create any tactical advantage or undue hardship for the parties. *See Bayer,* 55 U.S.P.Q.2d at 1512 (granting stay

where lawsuit sat dormant for several months before PTO declared interference and stay would not confer tactical advantage on defendant). *Compare Amersham International v. Corning Glass Works,* 108 F.R.D. 71, 72 (D.Mass.1985) (denying stay where PTO declared interference 1 1/2 years after infringement suit and extensive discovery); *General Foods Corp. v. Struthers Scientific and International Corp.,* 309 F.Supp. 161, 162 (D.Del.1970) (denying stay where interference proceedings declared one year after lawsuit filed and extensive discovery had already taken place). For this reason and the reasons stated above, the Court stays this lawsuit pending the final outcome of the Interference.

> FN2. The Court has not found and neither party has cited any credible authority as to the likely duration of the Interference.

> FN3. Given Wireless's acquiescence in the suspension of discovery, the Court finds that Motorola's invocation of the Interference following the filing of the lawsuit has not occurred so late in the proceedings to compel the conclusion that Motorola acted solely for the purposes of delay. *Cf. Hamilton Industries, Inc. v. Midwest Folding Products Mfg. Corp.,* No. 89 C 8696, 1990 WL 37642,*1 (N.D.Ill. March 20, 1990) (granting stay pending patent reexamination)

**3 Motorola's motion for a stay [Item 9-1] is granted.

Not Reported in F.Supp.2d, 2001 WL 32852 (N.D.Ill.), 57 U.S.P.Q.2d 1662

**Motions, Pleadings and Filings (Back to top)**

•        1:00CV00905                (Docket) (Feb. 14, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.