# EXHIBIT 17

Westlaw.

Not Reported in F Supp 2d                                                                 Page 1
Not Reported in F Supp 2d, 2000 WL 1134471 (S.D.N.Y.), 56 U.S.P.Q 2d 1633
**(Cite as: 2000 WL 1134471 (S.D.N.Y.))**

H

**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
**SOFTVIEW** COMPUTER PRODUCTS CORP. and
ERGO VIEW TECHNOLOGIES CORP., Plaintiffs,
v.
**HAWORTH, INC., Defendant.**
**No. 97 CIV. 8815 KMW HBP.**

Aug. 10, 2000.
Philippe Bennett, Esq., Coudert Brothers, New York.

Stuart I. Friedman, Esq., Friedman, Wittenstein &
Hochman, New York.

George M. Sirilla, Esq., Pillsbury, Madison & Sutro,
LLP, Washington, D.C.

MEMORANDUM OPINION AND ORDER

PITMAN, Magistrate J.

I. *Introduction*

**\*1** This matter has been referred to me for general
pre-trial supervision and to report and recommend
with respect to dispositive motions. By letters dated
July 5 and July 24, 2000 plaintiffs seek to stay this
action pending the outcome of a re-examination
proceeding that is now pending before the United
States Patent and Trademark Office ("PTO"). For the
reasons stated below, the motion is granted and the
matter is stayed pending the resolution of the re-
examination proceeding.

II. *Facts*

In principal part, this is a patent infringement action.
[FN1] Plaintiffs allege that defendant's patent, United
States Patent No. 4,616,798 [FN2] (the " '798
Patent"), is invalid and unenforceable and seek a
declaratory judgment to that effect. Defendant denies
the material allegations of the complaint and has
asserted a counterclaim alleging that several of
plaintiffs' products infringe the '798 Patent. Five
claims of the '798 Patent are alleged to be infringed,
namely Claims 31, 32, 33, 34 and 36. [FN3]
Defendant has never sought injunctive relief against

plaintiffs' alleged infringement.

FN1. Plaintiffs have also asserted non-patent
claims in which they allege that defendant is
improperly attempting to enforce a patent
that it knows is invalid. *See generally
Walker Process Equip., Inc. v. Food Mach.
& Chem. Corp., 382 U.S. 172, 174 (1965).*
Because this aspect of the case is dependent
on the outcome of patent validity and
infringement issues, I have bifurcated these
claims and stayed discovery concerning
them until the patent infringement and
validity issues are resolved (*see* Docket Item
No. 54).

FN2. The '798 Patent's subject matter is an
adjustable support mechanism for computer
keyboard shelves.

FN3. In a Memorandum Opinion and Order
dated December 10, 1999, I denied
Haworth's application to assert that plaintiffs
infringed twelve (12) additional claims.
Haworth has appealed this decision to the
Honorable Kimba M. Wood, United States
District Judge, to whom this matter is
assigned. That appeal is currently pending.

At some unspecified date in the first half of this year,
Softview requested that the PTO commence a
reexamination proceeding with respect to certain
claims of the '798 Patent. The PTO granted the
request on or about June 23, 2000, finding that there
are "substantial new questions of the patentability of
claims 1, 23, 24, 25, 26, 31, 32, 36, 37 and 38 ..."
(Exhibit F to the Letter of Philippe Bennett, Esq.,
dated July 24, 2000).

III. *Analysis*
A reexamination proceeding is an administrative
proceeding conducted by PTO for the purpose of
determining the validity of an existing patent. *See*
35 U.S.C. § 301, *et seq.* A reexamination can be
requested by any person at any time upon showing
the existence of "prior art," "consisting of patents
or printed publications which that person believes
to have a bearing on the patentability of any claim
of a particular patent." 35 U.S.C. § § 301, 302.
*Bausch & Lomb Inc. v. Alcon Lab., Inc., 914*
F.Supp. 951, 952 (W.D.N.Y.1996).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp 2d                                                                                          Page 2
Not Reported in F Supp 2d, 2000 WL 1134471 (S.D.N.Y.), 56 U.S.P.Q 2d 1633
(Cite as: 2000 WL 1134471 (S.D.N.Y.))

One purpose of the reexamination procedure is to eliminate trial of the issue of patent claim validity (when the claim is canceled by the [PTO] ), or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding), *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.), *cert. denied,* 464 U.S. 935 (1983); *Ingo v. Tyco Industries, Inc.,* 1985 WL 1649 at *1, 227 U.S.P.Q. (BNA) 69, 71 (N.D.Ill.1985). The procedure was intended "to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts ...," especially where the infringement litigation is in the early stages *Digital Magnetic Systems, Inc. v. Ansley,* 1982 WL 52160, at *1, 213 U.S.P.Q. (BNA) 290 (W.D.Okla.1982) As stated in the *Digital Magnetic Systems* case:
*2 Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation. Yet, in cases ... which have not progressed beyond the initial litigation stages and in which the plaintiff has an adequate legal remedy, the reexamination procedure should be utilized
*Id*
*Snyder Seed Corp. v. Scrypton Sys., Inc.,* 52 U.S.P.Q.2d 1221, 1223 (W.D.N.Y.1999)

Although the reexamination procedure does not provide for an automatic stay of pending district court proceedings involving the same claims, *see* H.R.Rep. No. 1307 Part 1, 96th Cong , 2nd Sess. 4, *reprinted in* 1980 U.S.C.C.A.N 6460, 6463, there is no question that a district court in which an infringement action has been filed has the discretion to stay the infringement action pending the outcome of the reexamination proceeding. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) The following advantages have been found to result from a stay of district proceedings pending completion of reexamination proceedings:
1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
2. Many discovery problems relating to prior art can be alleviated by the PTO examination
3 In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed
4. The outcome of the reexamination may encourage a settlement without further use of the Court.
5 The record of the reexamination would likely be entered at trial, thereby reducing the complexity

and length of the litigation.
6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
7. The cost will likely be reduced both for the parties and the Court.
*Emhart Indus. v. Sankyo Seiki Mfg.,* 3 U.S.P.Q.2d 1889, 1890 (N .D. Ill.1982), *citing Fisher Controls Co. v. Control Components Inc.,* 443 F.Supp. 581, 582 (S.D.Iowa 1977). *Accord Snyder Seed Corp. v. Scrypton Sys., Inc., supra,* 52 U.S.P.Q.2d at 1223. Courts have routinely stayed infringement actions pending the outcome of reexamination proceedings. *E.g, Snyder Seed Corp. v. Scrypton Sys., Inc., supra,* 52 U.S.P.Q.2d 1221; *Bausch & Lomb Inc. v. Alcon Lab., Inc., supra,* 914 F.Supp. 951; *Sulzer, Inc v Black Clawson Co.,* 93 Civ 8721(JGK), 1995 WL 363440 (S.D.N.Y. June 14, 1995); *Brown v. Shimano American,* 18 U.S.P.Q.2d 1496 (C.D.Cal.1991); *Grayling Indus. v. GPAC, Inc.,* 19 U.S.P.Q.2d 1872 (N.D.Ga.1991); *Emhart Indus. v. Sankyo Seiki Mfg., supra,* 3 U.S.P.Q.2d 1889; *Thomas & Betts Corp. v. Tishman Research Corp.,* 86 Civ.1926(MJL), 1986 WL 13455 (S.D.N.Y. Nov. 17, 1986)

In determining whether to grant a stay, courts have considered the following factors:
(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.
*3 *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citations omitted). *See also Note, Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination,* 66 Geo. Washington L.Rev 172, 178 (1997).

Although I believe that this is a close case, on balance, I believe that the equities weigh in favor of a stay.

First, it does not appear that a stay would unduly prejudice the patentee. Although Haworth correctly notes that plaintiffs have not acted with dispatch in seeking reexamination and that plaintiffs have pursued an extremely burdensome discovery program, the cost to Haworth of the litigation to date will not be affected by the grant or denial of a stay; denying the stay will not, without more, entitle Haworth to recover fees it has already spent litigating this case. In addition, if the parties continue to litigate the validity of the claims in this Court, and the PTO

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1134471 (S.D.N.Y.), 56 U.S.P.Q.2d 1633
**(Cite as: 2000 WL 1134471 (S.D.N.Y.))**

subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.

Second, although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served, the *Markman* [FN4] hearing has not yet been held and the Pretrial Order has not yet been prepared. In would be a serious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.

> FN4. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

Third, a stay will necessarily simplify the issues. If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims. *See* Note, *Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination, supra*, 66 Geo. Washington L.Rev. at 180-81 & nn. 82-83.

Haworth claims that a stay would prejudice it because, until the action is resolved, plaintiffs will unfairly gain market share. Haworth explains that because plaintiffs are not paying it royalties, plaintiffs can unfairly price their products below Haworth's licensees and thereby gain market share at the expense of Haworth's licensees. This argument does not, however, establish harm to Haworth. If the patent is ultimately found to be valid and infringed, plaintiffs will be responsible to Haworth for damages--perhaps treble damages, 35 U.S.C. § 284-- for *all* the infringing mechanisms that it has sold. Thus, it does not appear that staying the action will result in an financial damage to Haworth. In addition, if found to be infringing, plaintiffs will be subject to injunctive relief, 35 U.S.C. § 283, which would entirely eradicate their market share with respect to infringing products. Thus, Haworth's prejudice

argument is unpersuasive.

IV. *Conclusion*

*4 Accordingly, for all the foregoing reasons, plaintiffs' application to stay this matter pending the outcome of the PTO's reexamination proceeding is granted. The Clerk of the Court is directed to remove this matter from the active docket of the Court until the conclusion of the PTO's reexamination proceeding. Defendant is to advise my chambers promptly of the conclusion of the reexamination proceedings.

SO ORDERED.

Not Reported in F.Supp.2d, 2000 WL 1134471 (S.D.N.Y.), 56 U.S.P.Q.2d 1633

**Motions, Pleadings and Filings (Back to top)**

• 2000 WL 34403440 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Haworth, Inc.'s Motion, Pursuant to Local Civil Rule 6.3, for Partial Reconsideration of the Court's March 31, 2000 Opinion and Order (May 05, 2000)

• 2000 WL 34403436 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Defendant Haworth Inc.'s Appeal of and Objection to the Magistrate Judge's Memorandum Opinion and Order Dated December 10, 1999 (Jan. 11, 2000)

• 1999 WL 33885603 (Trial Motion, Memorandum and Affidavit) Haworth, Inc.'s Reply Memorandum of Law in Further Support of its Motion to Compel Discovery, Pursuant to Federal Rule of Civil Procedure 37 (Sep. 29, 1999)

• 1999 WL 33885601 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendant's Counterstatement in Response to Plaintiffs' Statement of Material Facts not in Dispute Pursuant to Local Rule 56.1 with Respect to Plaintiffs' Motion for Partial Summary Judgment on Grounds of Lack of Written Descript ion (Sep. 21, 1999)

• 1999 WL 33885600 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Plaintiffs' Motion to Compel Production of Documents Scheduled on Haworth's Privilege Log (Aug. 02, 1999)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1134471 (S.D.N.Y.), 56 U.S.P.Q.2d 1633
(Cite as: 2000 WL 1134471 (S.D.N.Y.))

• 1999 WL 33885602 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Haworth, Inc.'s Motion to Compel Discovery, Pursuant to Federal Rule of Civil Procedure 37 (Jul. 14, 1999)

• 1999 WL 33885599 (Trial Motion, Memorandum and Affidavit) Defendant Haworth, Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion Pursuant to Rule 37 of the Federal Rules of Civil Procedure to Compel Defendant to Respond to Plaintiff's Discovery Requests (Jun. 21, 1999)

• 1999 WL 33885597 (Trial Motion, Memorandum and Affidavit) Defendant Haworth, Inc.'s Memorandum of Law in Support of Its Motion to Bifurcate and Stay Plaintiff's Antitrust and Patent Misuse Caims (Mar. 19, 1999)

• 1999 WL 33885598 (Trial Motion, Memorandum and Affidavit) Haworth, Inc.'s Reply Memorandum of Law in Further Support of Its Motion to Bifurcate and Stay Plaintiff's Antitrust and Patent Misuse Claims (Mar. 19, 1999)

• 1999 WL 33885594 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply to Defendant's Amended Counterclaims (Mar. 02, 1999)

• 1999 WL 33885595 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant's Motion to Bifurcate and Stay Plaintiffs' Antitrust and Patent Misuse Claims (Mar. 02, 1999)

• 1999 WL 33885596 (Trial Motion, Memorandum and Affidavit) Ergoview Technology Corporation's Reply to Haworth Inc.'s Amended Counterclaims; and Counterclaims (Mar. 02, 1999)

•     1:97cv08815    (Docket) (Nov. 26, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 18

Westlaw.

1989 WL 117976                                                    Page 1
Not Reported in F.Supp., 1989 WL 117976 (N.D.Ill.)
**(Cite as: 1989 WL 117976 (N.D.Ill.))**


H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.


United States District Court, N.D. Illinois, Eastern
Division.
**SUN-FLEX** COMPANY INCORPORATED, a
California corporation, and DACA International
B.V., a Netherlands corporation, Plaintiffs,
v.
**SOFTVIEW COMPUTER** PRODUCTS CORP., a
New York corporation, and Robert King, an
individual, Defendants.
**No. 89 C 296.**


Sept. 27, 1989.


*Memorandum and Ruling on Defendants' Motion for
Stay*

BERNARD WEISBERG, United States Magistrate.

*1 Having reviewed the briefs and exhibits
submitted in connection with this motion, and letters
from counsel dated April 5, June 9, June 12 and
September 1, 1989, we conclude that defendants'
motion should be granted.

In *Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co.,
Ltd., 3 U.S.P.Q.2d 1889 (N.D.Ill.1987)*, Judge
Kocoras listed several benefits of staying federal
court patent litigation pending the outcome of
reexamination proceedings before the Patent and
Trademark Office (PTO). They include the
following. The court will have the benefit of expert
review by the PTO of all prior art presented to the
court, discovery problems relating to prior art can be
alleviated, the suit will probably be dismissed if the
patent is invalidated, reexamination may encourage a
settlement, the complexity, length and cost of the
litigation will probably be reduced and defenses in
evidence will be more easily limited. Each of those
benefits is present here. This case is at an early
stage. The complaint was filed on January 13, 1989.
No pretrial discovery has yet been taken although
plaintiffs served deposition notices with document
requests on March 28, 1989. There is nothing to
indicate that this stay is sought for the sake of delay.

Indeed plaintiffs themselves delayed in filing this suit
for almost six years after they first threatened suit
against defendants. A stay here would serve the
purposes of the reexamination statute, 35 U.S.C. §
305, and will facilitate the reexamination process
itself. *See Manual of Patent Examining Procedure* ¶
2263, Item 2 in Appendix to Defendants' Response to
Plaintiffs' Opposition to Defendants' Motion to Stay.

Plaintiffs' arguments against the stay are not
persuasive. The statute requires reexamination
proceedings to be completed with "special dispatch".
Even if issues remain to be litigated after the
reexaminations are completed, the cost and scope of
the remaining litigation are likely to be substantially
reduced. While we agree with plaintiffs that
Congress did not intend PTO reexamination to lead
to a stay in every case, we are satisfied that a stay in
the circumstances of this lawsuit fully serves the
purposes of the reexamination statute. *See Patlex
Corp. v. Mossinghoff, 758 F.2d 594, 601- 02 (Fed.
Cir.1985); Gould v. Control Laser Corp., 705 F.2d
1340 (Fed. Cir.1983).*

Not Reported in F.Supp., 1989 WL 117976
(N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

•                1:89cv00296                (Docket)
(Jan. 13, 1989)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 19

Westlaw.

Slip Copy
Slip Copy, 2005 WL 2175436 (W.D.Tenn.)
**(Cite as: 2005 WL 2175436 (W.D.Tenn.))**

Page 1

H
Only the Westlaw citation is currently available.

United States District Court,
W.D. Tennessee, Western Division
LECTROLARM CUSTOM SERVICES, INC.,
Plaintiff,
v.
VICON INDUSTRIES, INC., et al., Defendants.
**No. 03-2330 MA/A.**

Sept. 1, 2005.

Gianni Minutoli, Deanna Allen, Dipu A. Doshi, Gary M. Hoffman, John C. Snodgrass, Dickstein Shapiro Morin & Oshinsky, Kenneth Brothers, Laurence E. Fisher, Rachael Lea Leventhal, Washington, DC, Kemper B. Durand, Thomason Hendrix Harvey Johnson & Mitchell, Memphis, TN, for Plaintiff.

James Edward Hanft, Lee A. Goldberg, Michael J. Sweedler, Darby & Darby, Mark I. Koffsky, David W. Whealan, Goodwin Procter LLP, New York, NY, John J. Mulrooney, Crone & Mason, PLC, Earle J. Schwarz, Glankler Brown, PLLC, Douglas F. Halijan, Burch Porter & Johnson, Robert E. Craddock, Jr., Wyatt Tarrant & Combs, Memphis, TN, Douglas C. Doskocil, J. Anthony Downs, John C. Englander, Paul F. Ware, Jr., Goodwin Procter LLP, Boston, MA, Rebecca W. Bacon, Sean W. Gallagher, Steven J. Nachtwey, Alan E. Littmann, Bartlit Beck Herman Palenchar & Scott, Chicago, IL, Albert L. Underhill, Erik G. Swenson, Rachel C. Hughey, Merchant & Gould PC, Minneapolis, MN, for Defendants.

ORDER DENYING DEFENDANT VICON
INDUSTRIES, INC.'S **MOTION TO STAY**

MAYS, J.

*1 Before the court is defendant Vicon Industries, Inc.'s ("Vicon") **"Motion to Stay** Action Pending **Patent Reexamination,"** filed on behalf of all defendants (the "Defendants") on March 4, 2005. Plaintiff Lectrolarm Custom Systems, Inc. ("Lectrolarm") filed a response on March 22, 2005. Vicon filed a reply brief on April 18, 2005, in which it also requested an oral hearing on the **motion**. For the following reasons, Vicon's **motion** to **Stay** is

DENIED and its request for an oral hearing is DENIED.

I. Factual Background

On November 27, 1990, the United States **Patent** and Trademark Office ("PTO") issued U.S. **Patent** No. 4,974,088 (the " '088 **Patent"**), entitled Remote Control Apparatus for a Rotating Television Camera Base, to inventor Takeshi Sasaki. The technology at issue is an apparatus that uses computer memory and digital communication to permit remote control "rotation of a monitoring television camera in the horizontal and vertical directions." U.S. **Patent** No. 4,974,088, Column 1:6-8. The **patent** was originally assigned to Maruwa Electronic & Chemical Company ("Maruwa"). Maruwa assigned the **patent** to Lectrolarm. Lectrolarm alleges that the defendants have infringed the '088 **patent**. [FN1]

> FN1. Originally there were fourteen defendants; four remain.

On January 28, 2005, Vicon filed in the United States **Patent** and Trademark Office (the "PTO") a request for **reexamination** of the '088 **Patent**. (Def.'s Mem. at 1.) The request for **reexamination** is based on prior art consisting of printed publications for two products: the VPS1200 system made by Vicon and the SensorVision product made by Sensormatic Electronics Corporation ("Sensormatic"). (Id. at 1.) This prior art was not considered by the PTO when it granted the '088 **Patent**, although both products, and presumably the publications describing them, have been available for over 15 years. (Pl.'s Resp. at 3.) The prior art products described in these publications are also the subject of two summary judgment motions for invalidity that were filed in this case on September 24, 2004, and November 19, 2004. Both Vicon and Sensormatic contended in letters to Lectrolarm in 2000 that these publications are invalidating prior art. (Id. at 4 (citing letters between the parties' attorneys).)

The PTO granted Vicon's request for **reexamination** of the '088 **Patent**. (Def.'s Reply Brief.) The PTO found "a substantial likelihood that a reasonable examiner would consider the teachings of the newly cited prior art important in deciding whether or not the claims are patentable." (Laurenzi Dec., Ex. A at 2.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2175436 (W.D. Tenn.)
(Cite as: 2005 WL 2175436 (W.D.Tenn.))

Page 2

The complaint in this case was filed on May 8, 2003. A trial date of September 19, 2005, was set on November 30, 2004. Discovery concerning expert witnesses closed on May 6, 2005, and fact discovery closed on January 17, 2005. Lectrolarm estimates that over $10 million has been spent by the defendants litigating this suit so far. (Pl.'s Resp. at 5.)

II. **Patent Reexamination** Background

"Any person at any time may file a request for **reexamination** by the [Patent] Office of any claim of a **patent**...." 35 U.S.C. § 302. A **reexamination** request may only be based on "prior art consisting of **patents** or printed publications." 35 U.S.C. § 301. "Within three months following the filing of a request for **reexamination**... the Director will determine whether a substantial new question of patentability affecting any claim of the **patent** concerned is raised by the request." 35 U.S.C. § 303(a). "If... a substantial new question of patentability affecting any claim of a **patent** is raised, the determination will include an order for **reexamination** of the **patent**... The **patent** owner will be given... not less than two months... within which he may file a statement on such question.... [The person who requested **reexamination** then has two months to] file and have considered in the **reexamination** a reply to any statement filed by the **patent** owner." 35 U.S.C. § 304

**\*2** If, however, litigation has been stayed for the filing of a **reexamination** request, the examination following the statement by the **patent** owner and the reply by the requester "will be expedited to the extent possible." [FN2] M.P.E.P. § 2286. Office actions in these **reexamination** proceedings will normally set a shorter one-month statutory period for response rather than the two months usually set in **reexamination** proceedings. *Id.*

> FN2. The M.P.E.P. regulations actually state that the **reexamination** proceedings will be expedited if the request for **reexamination** indicates that litigation has been stayed. The court assumes that if the PTO is informed that litigation has been stayed after the request for **reexamination** was filed the examiner will adopt the expedited time table.

"After the times for filing the statement and reply... have expired, **reexamination** will be conducted according to the procedures established for initial examination...." 35 U.S.C.A. § 305. The **patent** owner may appeal... and may seek court review... [of] any decision adverse to the patentability of any original or proposed amended or new claim of the **patent** [as provided by the **patent** statute for appeal and court review of initial **patent** examination proceedings]." 35 U.S.C. § 306. "All **reexamination** proceedings... including any appeal to the Board of **Patent** Appeals and Interferences, will be conducted with special dispatch within the Office." 35 U.S.C. § 305. "[W]hen the time for appeal has expired or any appeal proceeding has terminated, the Director will issue and publish a certificate canceling any claim of the **patent** finally determined to be unpatentable, confirming any claim of the **patent** determined to be patentable, and incorporating in the **patent** any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307(a)

"Congress intended the **reexamination** process to provide an efficient and relatively inexpensive procedure for reviewing the validity of **patents** which would employ the PTO's expertise." *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426 (Fed.Cir.1988).* **Reexamination** permits "efficient resolution of questions about the validity of issued **patents** without recourse to expensive and lengthy infringement litigation" and allows the validity of a **patent** to be "tested in the **Patent** office where the most expert opinions exist." H.Rep. 1307(I), 96th Cong., 2d Sess. 4, reprinted in 1980 U.S.Code Cong. & Admin. News 6460, 6463.

III. Analysis

The decision to stay a case pending the conclusion of a **patent reexamination** is at the discretion of the trial court. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed.Cir.1988)* (citing *Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).* Courts have found that issuing a stay pending the outcome of a **reexamination** has many advantages, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
3. In those cases resulting in effective invalidity of the **patent**, the suit will likely be dismissed.
4. The outcome of the **reexamination** may encourage a settlement without the further use of the Court.
5. The record of **reexamination** would likely be entered at trial, thereby reducing the complexity

Slip Copy
Slip Copy, 2005 WL 2175436 (W.D.Tenn.)
**(Cite as: 2005 WL 2175436 (W.D.Tenn.))**

Page 3

and length of the litigation.

**\*3** 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a **reexamination.**

7. The cost will likely be reduced both for the parties and the Court.

*See, e.g., Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine Inc.,* 68 U.S.P.Q.2d 1755, 1757 (E.D.Mich.2003). Thus, **reexamination** by the **Patent** Office, "if available and practical, should be deferred to by the courts, especially where the infringement litigation is in the early stages." *Gonnocci,* 68 U.S.P.Q.2d at 1757; *see also Softview Computer Prods., Corp. v. Haworth, Inc.,* 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y.2000). But, "[p]arties should not be permitted to abuse the process by applying for **reexamination** after protracted, expensive discovery or trial preparation." *Softview,* 56 U.S.P.Q.2d at 1635.

"In determining whether to stay litigation pending **reexamination** by the PTO, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; [FN3] (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406-07 (W.D.N.Y.1999); *see also Target Therapeutics, Inc. v. SciMed Life Systems, Inc.,* 1995 WL 20470 (N.D.Cal.1995); *GPAC, Inc. v. DWW Enterprises, Inc.,* 144 F.R.D. 60, 66 (D.N.J.1992); *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991).

> FN3. The court does not address this factor in the body of the opinion because it is inconclusive. The Defendants argue convincingly that Lectrolarm seeks only money damages so Lectrolarm would not be prejudiced if the trial were delayed. Lectrolarm argues, also convincingly, that because discovery is essentially complete, and the average time for a **reexamination** is roughly one and a half years, staying the case would require expensive discovery to account for factual developments that occurred during the **reexamination.** To the extent that this factor weighs in either party's favor it is in Lectrolarm's. Because the court finds that the Defendants delayed requesting **reexamination** and could have prevented any prejudice to Lectrolarm by requesting **reexamination** in a more timely fashion,

any prejudice to Lectrolarm should be avoided.

The Defendants argue that a **stay** should be granted based on the second factor: whether a **stay** will simplify the issues in question and trial of the case. Granting the Defendants' **motion** could simplify the issues before the court because the PTO could invalidate all the claims. The parties have presented data showing that slightly more than 10% of completed **reexaminations** requested by a third party result in cancellation of all claims at issue. (Def.'s Mem., Ex. H (Ex Parte **Reexamination** Piling Data- March 31, 2004).) The data also shows that 30% of completed **reexaminations** requested by third parties result in confirmation of all claims. (Id.) In slightly fewer than 60% of these types of **reexaminations** the claims are modified in some way, but not all claims are cancelled. Based on this data, there is roughly a 70% chance that granting a **stay** will prevent the court from having to consider the effect modifications made by the PTO may have on the court's orders. [FN4]

> FN4. Even if no changes to the claim language result, the issues before the court would be simplified because the PTO's assessment of the prior art in the **reexamination** request would prevent the court from having to decide parts of the two summary judgment motions based on that prior art. The court, however, would still need to consider the sale or offer-for-sale portions of those motions.

The facts of this case, however, suggest that it is unlikely that the PTO will rule in the Defendants' favor because the request for **reexamination** appears to be motivated more by a desire for tactical delay than a belief that the prior art cited in the **reexamination** request is invalidating. If the Defendants had truly believed that this prior art invalidates some or all of the '088 **Patent's** claims, it seems likely that the Defendants would have requested **reexamination** one and a half years ago, before spending millions of dollars on litigation. Further, **reexamination** only deals with invalidity from printed prior art. Unless all claims were invalidated, a result that has a one-in-ten probability, this court would still need to deal with issues concerning other types of prior art, liability, and damages.

**\*4** Analysis of the third factor, whether discovery is complete and whether a trial date has been set, points

Slip Copy                                                                                                                     Page 4
Slip Copy, 2005 WL 2175436 (W.D.Tenn.)
(Cite as: 2005 WL 2175436 (W.D.Tenn.))

towards denying Vicon's **motion** to **stay**. At the time
the request for **reexamination** was filed, on January
28, 2005, a trial date of September 19, 2005, had
been set on November 30, 2004, and fact discovery
had closed on January 17, 2005. [FN5] Thus, Vicon's
request for **reexamination** was filed at the close of
fact discovery, over a year and a half after the
complaint in this case had been filed and two months
after a trial date had been set.

> FN5. The September 19, 2005, trial date will
> need to be reset. This fact, however, has no
> bearing on the court's analysis of the third
> factor considered in deciding whether to stay
> litigation pending **reexamination** because
> the court's main concern is whether the
> **reexamination** process is being abused. *See
> Softview,* 56 U.S.P.Q.2d at 1635. Thus, the
> relevant trial date is the date set when the
> **reexamination** request was filed, not the
> date the trial actually occurs.

When a petition for **reexamination** is filed after a
trial date has been set, extensive discovery has been
conducted, and the **reexamination** does not involve
newly discovered prior art, courts uniformly refuse to
**stay** the case pending **reexamination**. *See, e.g.,
Xerox,* 69 F.Supp.2d 404 (refusing to grant a **stay**
where a request for **reexamination** was filed one and
a half years into a lawsuit, six months before
discovery was to close, and there was evidence that
the defendant had known of the allegedly invalidating
prior art eight months before filing the request);
*Galdish v. Tyco Toys, Inc.,* 1993 WL 625509
(E.D.Cal. Sept.15, 1993) (refusing to grant a **stay**
where there was evidence that the party requesting
**reexamination** had known about the prior art in
question for six months before filing the
**reexamination** request); *Remington Arms Co., Inc. v.
Modern Muzzleloading, Inc.,* 1998 WL 1037920
(M.D.N.C. Dec.17, 1998) (finding that the "most
compelling reason for denying the **stay**" was the
"unjustified delay" in requesting **reexamination**
more than three months after learning of the allegedly
invalidating prior art) *Output Technology Corp v.
Dataproducts Corp.,* 22 U.S.P.Q.2d 1072
(W.D.Wash 1991)(denying a **motion** to **stay** pending
**reexamination** when discovery was scheduled for
completion in four months and trial was scheduled in
less than nine months); *Accent Designs, Inc. v. Jan
Jewelry Designs, Inc.,* 1994 WL 121673, at *3
(S.D.N.Y. Apr.6, 1994) ("in a case such as this, in
which multiple opinions have been issued, discovery
is well under way and no prejudice to either party is
likely to ensue, there is simply no justification for

further delay in the action").

The Defendants cite a number of cases for the
proposition that stays for **reexamination** are
routinely granted by trial courts after extensive
litigation has already occurred. All cases that the
defendants cite in support of this proposition,
however, are readily distinguishable. In *Gonnocci,* 68
U.S.P.Q.2d 1755, the court granted a stay after
extensive discovery had been conducted and a trial
date had been set. The court, however, explicitly
stated that it could not find that the party seeking
**reexamination** had delayed because nothing in the
record indicated when that party had become aware
of the allegedly invalidating prior art. *Id.* at 1758. In
this case it is undisputed that the Defendants were
aware of the prior art cited in their request for
**reexamination** and its relevance to Lectrolarm's
claim of infringement at least five years before they
filed their request. Similarly, the court's decision to
grant a stay one month before trial in *Robert H.
Harris Co., Inc. v. Metal Mfg. Co., Inc.,* 19
U.S.P.Q.2d 1786 (E.D.Ark.1991), can be
distinguished because the court found that the parties
had not participated in protracted or expensive
discovery and the prior art cited in the
**reexamination** request was "recently discovered." *Id.*
at 1788-89. Likewise, in *Grayling Industries, Inc. v.
GPAC, Inc.,* 19 U.S.P.Q.2d 1872 (N.D.Ga.1991),
"the prior art on which the petition [for
**reexamination** was] based was uncovered during
discovery." *Id.* at 1874. Finally, *Middleton, Inc. v.
Minnesota Mining and Mfg. Co.,* 2004 WL 1968669
(S.D.Iowa Aug.24, 2004), is distinguishable because
the court's grant of a stay after 8 years of litigation
was motivated by the fact that the validity of the
**patent** that was the subject of the **reexamination** had
only recently become an issue in the case. [FN6]

> FN6. The defendants also cite *Snyder Seed
> Corp. v. Scrypton Systems, Inc.,* 52
> U.S.P.Q.2d 1221 (W.D.N.Y.1999). In that
> case, however, the court granted a stay
> because "[n]o discovery has been
> conducted. In fact, no scheduling order has
> been entered." *Id.* at 1224.

**\*5** Finally, and most significantly, granting Vicon's
**motion** to **stay** would impermissibly permit Vicon to
abuse the **reexamination** process. The Defendants
were aware of the allegedly invalidating prior art that
is central to their request for **reexamination** long
before they actually submitted the request to the
PTO. The prior art cited in the **reexamination**
request forms the basis of two summary judgment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**motions** filed with this court on September 24, 2004, and November 19, 2004. In fact, defendants Sensormatic and Vicon alleged in 2000 that this prior art anticipated the '088 Patent. (Pl.'s Resp., Ex. 4, 5 (Letters dated in 2000 from Vicon and Sensormatic respectively alleging that the VPS 1200 Instruction Manual and a brochure for the SensorVision System are prior art that invalidate the '088 Patent).) There is no reason that Vicon could not have requested a **reexamination** months or years earlier. Consequently, staying the case at this point in the litigation would permit Vicon to "abuse the process by applying for **reexamination** after protracted, expensive discovery or trial preparation." *Softview,* 56 U.S.P.Q .2d at 1635.

Not staying the case pending **reexamination** raises one additional issue: the possibility that this court and the PTO will render contradictory decisions. The Federal Circuit has held that inconsistency between the two forums is not a serious concern:

> The awkwardness presumed to result if the PTO and court reached different conclusions is more apparent than real. The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions.... Once again, it is important that the district court and the PTO can consider different evidence. Accordingly, different result between the two forums may be entirely reasonable.

> *Ethicon,* 849 F.2d at 1428.

The easier course for the court would be to **stay** the action. That, however, would reward the Defendants' unexplained, and seemingly unexplainable, delay in filing the **reexamination** request. As the court in *Enprotech Corp. v. Autotech Corp.,* 15 U.S.P.Q.2d 1319 (N.D.Ill.1990) stated, "[w]e are too far along the road to justify halting the journey while the defendant explores an alternate route. The **motion** to **stay** is denied." *Id.* at 1320.

The Defendants have also requested an oral argument on the **motion** to **stay**. The law is clear: a decision to grant a **stay** is at the discretion of the trial court based on the facts before the court. The court's decision to deny the **motion** to **stay** is based largely on the fact that the Defendants have alleged for five years that the prior art cited in the **reexamination** request is invalidating, but waited until the close of fact discovery to request **reexamination.** This fact is uncontroverted. Letters between the parties in 2000 show that, from the moment a lawsuit was threatened, Vicon and Sensormatic alleged that this

prior art could be used as a defense to Lectrolarm's infringement claims. Because the legal issues are clearly identified, and the key facts are uncontested, the court finds that holding an oral argument on the **motion** to **stay** would be unproductive.

VI. Conclusion

**\*6** For the foregoing reasons, defendant Vicon's **motion** to **stay** on behalf of all defendants is DENIED.

So ORDERED.

Slip Copy, 2005 WL 2175436 (W.D.Tenn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 20

Westlaw.

Not Reported in F Supp                                                                    Page 1
Not Reported in F.Supp , 1991 WL 217666 (E D Ark ), 19 U S P Q 2d 1786
**(Cite as: 1991 WL 217666 (E.D.Ark.))**

United States District Court, E D Arkansas,
Jonesboro Division
ROBERT H HARRIS COMPANY, INC , Plaintiff,
v.
METAL MANUFACTURING CO , INC ,
Defendant
**Civ. No. J-C-90-179.**

June 21, 1991

J. Frank Lady, Jr , Lady & Houston, P A , Jonesboro,
Ark , for plaintiff

Glenn Lovett, Jr., Snellgrove, Laser, Langley &
Lovett, Jonesboro, Ark , for defendant

*ORDER*

GEORGE HOWARD, Jr , District Judge

*1 Plaintiff brings this action alleging that defendant
manufactures and sells a product which infringes
plaintiff's patent   Defendant has filed a motion to
dismiss for lack of personal jurisdiction and for
improper venue   In the alternative, defendant asks
that the Court transfer this action pursuant to 28
U.S.C. § 1404(a)   Defendant has also filed a motion
for stay pending re-examination

*Motion to Dismiss or to Transfer*

To determine whether the Court can exercise
personal jurisdiction over defendant, the Court must
find that jurisdiction is proper under the Arkansas
long-arm statute and that the exercise of personal
jurisdiction is consistent with due process
*Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d
651, 653 (8th Cir.1982)

The Arkansas long-arm statute provides that a court
may exercise personal jurisdiction over a non-
resident for a cause of action arising from the
defendant's transacting any business in this state
A.C.A. § 16-4- 101(C)(1)(a).    The Arkansas
Supreme Court has held that the term "transacting
business" is more inclusive than the previous
statutory provision of "doing business" and that the
legislative intent is to expand jurisdiction to the limits
permitted by the due process clause of the United
States Constitution   *Dudley v. Dittmer,* 795 F.2d 669,
672 (8th Cir.1986)

Defendant states that its contacts with the state are
too "attenuated" to comport with due process
Defendant also asserts that the Court cannot exercise
personal jurisdiction over it unless plaintiff
demonstrates that defendant has shipped the allegedly
infringing product into Arkansas

The Court disagrees   Defendant has purposefully
availed itself of the privilege of conducting business
in Arkansas  *See Burger King Corp. v. Rudzewicz,*
105 S.Ct. 2174 (1985).    Defendant has derived
significant revenues from the sale of its products in
Arkansas  It solicits business in Arkansas (including
the sale of the allegedly infringing product) through
the mailing of catalogs, magazine advertisements,
and telephone contacts    The documentation
provided by plaintiff demonstrates sufficient
"minimum contacts" between the non-resident
defendant and the forum state so that the exercise of
personal jurisdiction over defendant is consistent
with traditional notions of fair play and substantial
justice  *International Shoe Co. v. Washington,* 326
U.S. 310 (1945)

Defendant also argues that venue is inappropriate in
this district   Defendant relies on the language of the
patent venue statute, 28 U.S.C. § 1400(b) which
provides that an action for patent infringement may
be brought in the judicial district where the defendant
resides, or where defendant has committed acts of
infringements and has a regular and established place
of business

The question of the meaning of the patent venue
statute in light of the recent changes to the general
venue statute, 28 U.S.C. § 1391(c) was addressed in
a recent decision   *VE Holding Corp. v. Johnson Gas
Appliance Co.,* 917 F.2d 1574 (Fed.Cir.1990)    The
court held that the definition of "reside" in § 1391(c)
applies to § 1400(b)

*2 By order dated December 12, 1990, the Court
stayed a decision on the motion to dismiss because of
improper venue pending action by the United States
Supreme Court on the petition for certiorari filed in
*VE Holding Corp*  Certiorari in that case has recently
been denied  111 S.Ct. 1315 (1991)

As the Court noted in its December 12th order, the
holding in *VE Holding Corp*  is dispositive of the

© 2005 Thomson/West  No Claim to Orig  U S  Govt  Works

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 217666 (E.D.Ark.), 19 U.S.P.Q.2d 1786
(Cite as: 1991 WL 217666 (E.D.Ark.))

Page 2

venue issue. As defendant is subject to personal jurisdiction in this district, venue is proper here.

Defendant contends, in the alternative, that the Court should transfer the case to the Middle District of Florida.

Under 28 U.S.C. § 1404(a), a court may transfer an action to any district where it might have been brought "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." The plaintiff's choice of forum is usually entitled to great weight and should not be disturbed unless the balance of the various factors is clearly in favor of the defendants. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). However, "[t]his choice is deserving of less weight when none of the operative facts of the action occur in the forum selected by the plaintiff." *National Mortgage Network, Inc. v. Home Equity Centers, Inc.*, 683 F.Supp. 116, 119 (E.D.Pa.1988). In determining whether to exercise its discretion to transfer an action, the Court may consider a number of factors, including the convenience of the parties and the witnesses, the availability of judicial process to compel the attendance of unwilling witnesses, the governing law, ease of access to sources of proof such as the location of records and documents, the place where the events at issue occurred, and the place where the case could be tried more expeditiously and inexpensively. *Darchuk v. Kellwood Co.*, 47 FEP Cases 1259 (E.D.Ark.1988); *Kolko v. Holiday Inns, Inc.*, 672 F.Supp. 713 (S.D.N.Y.1987).

The Court has weighed the factors and is persuaded that the balance of convenience or burden to defendants in this instance does not outweigh plaintiff's choice of forum. Both plaintiff and defendant will be somewhat burdened by having to obtain witnesses and documents from Florida. Plaintiff, however, contends that it is not financially able to prosecute its action in Florida.

In sum, the Court finds that defendant has not met its burden of demonstrating that transfer is warranted under 28 U.S.C. § 1404(a).

*Motion for Stay Pending Re-Examination*

Defendant has filed a reexamination request with the United States Patent and Trademark Office (PTO) on June 7, 1991. The reexamination process is a relatively new procedure codified at 35 U.S.C. § § 301-307. When a petition for reexamination is filed, the PTO must decide within three months whether

there is a substantial question of patentability. 35 U.S.C. § 303(a). If a substantial question of patentability is found, the patent will be reexamined, and the patent owner will be given a reasonable period to respond. 35 U.S.C. § 304. *See Freeman v. Minnesota Mining & Mfg. Co.*, 661 F.Supp. 886 (D.Del.1987).

*3 Only items of prior art are to be considered in the reexamination proceeding. "Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application which results in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to do so 'with special dispatch.' 37 C.F.R. § 1.550(a)." *Ingro v. Tyco Industries, Inc.*, 227 U.S.P.Q. 69, 70 (N.D.Ill.1985).

In this instance, defendant states that a recently discovered manual raises new questions of patentability with respect to plaintiff's patent. Defendant therefore has requested that Claims 1-8 of the Harris patent be reexamined.

Whether the action should be stayed pending the outcome of a reexamination proceedings before the PTO resides in the discretion of the court. The legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays.

The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of the United States patents in an efficient and relatively inexpensive manner.

H.R.Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, *reprinted* in 1980 U.S Code Cong. & Ad. News 6460, 6463.

A number of courts have recognized the advantages of staying a pending infringement action until completion of a reexamination request. In *Emhart Industries, Inc. v. Sankyo Keiki Mfg.*, 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987), the court enumerated the following advantages in granting a stay which would

Not Reported in F.Supp.                                                                    Page 3
Not Reported in F.Supp., 1991 WL 217666 (E.D.Ark.), 19 U.S.P.Q.2d 1786
**(Cite as: 1991 WL 217666 (E.D.Ark.))**

shift to the PTO the validity of a patent claim:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

Similarly, in *Loffland Brothers Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886, 887 (W.D.Okla.1985), the court noted that "[t]he reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled. It is equally possible for all of the claims in plaintiff's patent to be upheld ... In any event, the expert view of the Patent Office examiner will certainly benefit this Court."

**\*4** Plaintiff objects to a stay. It argues that defendant seeks a stay solely to prolong the litigation and increase plaintiff's costs. In particular, plaintiff argues that it continues to be prejudiced by the existence of defendant in the marketplace. Plaintiff argues that the prejudice of the delay would outweigh any benefit which might result from the reexamination procedure.

The Court has weighed the costs and benefits of granting a stay. This action has been pending less than a year. Although it is set for trial next month, the Court is not persuaded that this is a case which has "run an overly protracted course." *See Toro Company v. L.R. Nelson Corp.*, 223 U.S.P.Q. 636, 638 (C.D.Ill.1984). The parties appear not to have engaged in expensive discovery or extensive pretrial preparation. Furthermore, plaintiff has sued for damages and has an adequate legal remedy. *See*

*Ingro, supra.*

The Court is not persuaded that defendant has abused the reexamination process in an attempt to delay trial proceedings. The Court notes that the decision on whether defendant's request for reexamination is granted will be forthcoming; should it be denied, the case can immediately be replaced on the trial calendar.

Should the reexamination request be granted, some delay will result. The Court, however, is not of the opinion that the delay will be significant and finds that the benefits of the reexamination procedure far outweigh the prejudice to plaintiff resulting from the delay.

Thus, the Court grants defendant's motion for stay of proceedings pending resolution of its request for reexamination by the PTO. Defendant is directed to notify the Court as soon as the PTO acts on the request. The case will be removed from the July 29th trial calendar.

Accordingly, the motion to quash or dismiss for lack of jurisdiction or improper venue, or in the alternative, to transfer venue is denied. The motion for stay of proceedings or to continue is granted.

Not Reported in F.Supp., 1991 WL 217666 (E.D.Ark.), 19 U.S.P.Q.2d 1786

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 21

Westlaw

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 236196 (N.D.Ga.), 19 U.S.P.Q.2d 1872
**(Cite as: 1991 WL 236196 (N.D.Ga.))**

Page 1

ℙ

**Motions, Pleadings and Filings**

United States District Court, N.D. Georgia, Atlanta
Division.
GRAYLING INDUSTRIES, INC. and Kurt Hittler
v.
GPAC, INC.
**Civ. No. 1:89-CV-451-ODE.**

March 25, 1991.

Michael A. McKenzie, Wayne David Taylor,
Colleen Patricia O'Neill, McKenzie, Martin, Taylor
& McConnaughery, Robert B. Kennedy, Kennedy &
Kennedy, Steven David Kerr, Hopkins & Thomas,
Atlanta, Ga., for plaintiffs.

Jerry Byron Blackstock, William M. Ragland, Jr.,
Powell, Goldstein, Frazer & Murphy, Atlanta, Ga.,
Allen W. Wark, Michael R. Slobasky, Harvey B.
Jacobson, Fleit, Jacobson, Cohn, Holman & Stern,
Washington, D.C. for defendant.

*ORDER*

ORINDA D. EVANS, District Judge.

**\*1** This action for a declaratory judgment of patent
invalidity and non-infringement is before the court on
Plaintiffs' motion to stay the proceedings during a
reexamination procedure by the United States Patent
and Trade Office ("PTO").

This action has been pending since March 8, 1989,
and the pretrial order was submitted February 6, 1991
and signed March 14, 1991. The instant motion was
filed February 15, 1991, and Defendant responded on
March 5, 1991. Plaintiffs replied on March 19,
1991. The petition for reexamination was filed by
Plaintiffs with the PTO on February 6, 1991.

Reexamination of patent validity is allowed under 35
U.S.C. § 301 *et seq.* The procedure calls for the
petitioner to file a request, allowable at "any time",
with the PTO. 35 U.S.C. § 302. The PTO
then must determine, within three months of filing of the
request, "whether a substantial new question of
patentability affecting any claim of the patent
concerned is raised by the request, with or without

consideration of other patents or printed
publications." 35 U.S.C. § 303(a). If the PTO finds
that a substantial new question of patentability exists,
that order must "include an order for reexamination
of the patent for resolution of the question." 35
U.S.C. § 304. The ultimate result of a
reexamination procedure is an order either cancelling
the patent as unpatentable, confirming the patent, or
amending the patent. Orders of confirmation or
amendment carry the usual presumption of validity
accruing to patents and patent reissues. *See,* 35
U.S.C. § 282; *Patlex Corp. v. Mossinghoff,* 758 F.2d
594, 603 (Fed.Cir.), *modified on other grounds.* 771
F.2d 480 (1985).

The intent behind the patent reexamination
procedure, passed in 1981, clearly was to provide the
federal courts with the expertise of the PTO. As the
Federal Circuit has stated:

The bill's proponents foresaw three principal
benefits. First, the new procedure could settle
validity disputes more quickly and less expensively
than the often protracted litigation involved in such
cases. Second, the procedure would allow courts to
refer patent validity questions to the expertise of the
Patent Office. *See Senate Hearings* at 1, wherein
Senator Bayh said that reexamination would be "an
aid" to the trial court "in making an informed
decision on the patent's validity". Third,
reexamination would reinforce "investor confidence
in the certainty of patent rights" by affording the PTO
a broader opportunity to review "doubtful patents".

*Patlex,* 758 F.2d at 602 (referring to *Patent
Reexamination Hearings on S 1679 Before the
Comm. on the Judiciary,* 96th Cong., 1st Sess. 1
(1979)) (other citation omitted) (dicta). The decision
whether to stay proceedings in district court while a
reexamination by the PTO takes place, while not
vested expressly in the discretion of the district court
by the statute, has been recognized to be within the
district court's inherent discretionary power. *Gould v.
Control Laser Corp.,* 705 F.2d 1340, 1342
(Fed.Cir.1983) (citing H.R.Rep. No. 1307 Part I, 96th
Cong., 2d Sess. 4 (1980), U.S.Code Cong. &
Admin.News 1980, p 6460, 6463).

**\*2** Plaintiffs argue that all three of the interests set
forth by the Federal Circuit are implicated here.
First, Plaintiffs contend that, although only trial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.                                                                                                    Page 2
Not Reported in F.Supp., 1991 WL 236196 (N.D.Ga.), 19 U.S.P.Q.2d 1872
(Cite as: 1991 WL 236196 (N.D.Ga.))

remains in this case, that trial itself would be "prohibitively expensive." Second, Plaintiffs emphasize that they have set forth numerous instances of prior art upon which the petition for reexamination is based. Review of this prior art, Plaintiffs assert, is perfectly suited to the PTO's function as envisaged by the reexamination procedure. Finally, staying the proceedings while giving the PTO an opportunity to reconsider its prior determination will strengthen respect for the patent system by allowing the agency to address its purported mistake.

Defendant argues that the first contention is inaccurate because very substantial expense has already gone into this litigation. Defendant characterizes Plaintiffs' extremely late petition for reexamination as merely dilatory. Defendant attacks the second contention on two grounds. First, Defendant contends that a stay of these proceedings before a determination that a substantial new question of patentability exists is premature. Defendant cites several district court cases in which petitions for reexamination filed after the close of discovery did not result in a stay of district court proceedings. *E.g.*, *Digital Magnetic Systems v. Ansley*, 213 U.S.P.Q. 290 (W.D.Okla.1982). The potential for abuse inherent in granting a stay where the petition for reexamination comes very late and without explanation is apparent. Second, Defendant contends that a determination of a substantial new issue of patentability by the PTO is unlikely. Finally, Defendant stresses the prejudice which will be caused it by the delay in determining whether Plaintiffs are in violation of its patents.

Plaintiffs reply to each of these responses. First, Plaintiffs note that six depositions remain to be taken, representing an expense avoidable if the stay is granted. Second, Plaintiffs note that the pendency of this discovery (which Defendant has refused to allow to proceed during the pendency of this motion) distinguishes this case from *Digital Magnetic*, cited by Defendant. At least one district court has refused to follow *Digital Magnetic* on similar grounds. *Emhart Ind., Inc., v. Sankyo Seiki Mfg. Co., Ltd.*, 3 U.S.P.Q.2d 1889, 1987 WL 6314 (N.D.Ill.1987). The Western District of Oklahoma also granted a stay after substantial discovery, a pretrial conference, and the setting of a trial date. *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886, 1985 WL 1483 (W.D.Okla.1985). Third, Plaintiffs explain the late filing of the petition for reexamination by asserting that the prior art on which the petition is based was uncovered during discovery.

Fourth, Plaintiffs reemphasize the efficiency of gaining a PTO order on the issue of this prior art, which will narrow the issue for trial. Finally, Plaintiffs note that the initial PTO determination is due by May 11, 1991. Even if, therefore, Defendant is correct and no substantial new question of patentability is presented by the petition for reexamination, the delay will be under two months.

*3 The court finds Plaintiffs' reasoning persuasive. The added expense arising from a stay of this proceeding is greatly outweighed by the increase in efficiency which any PTO determination would bring. On the one hand, if the patents are declared unpatentable, this action would be moot. On the other hand, even though Plaintiffs have not agreed to be bound by a PTO finding of a valid patent, such a finding would be admissible and carries a presumption of validity. Moreover, the arguments which Plaintiffs would make at trial will have been explicitly reviewed and rejected by the PTO, adding to the persuasiveness of the PTO determination. Finally, although it is not clear that Plaintiffs had good reason for the delay in petitioning the PTO for reexamination, neither has Defendant shown such egregiously dilatory conduct as would justify short-circuiting the reexamination procedure now that Plaintiffs have invoked it.

The interests underlying the reexamination procedure doubtlessly would have been served better by an earlier filing of the petition for reexamination. However, they are better served by granting a stay at this point than by denying it and allowing the trial on the merits to continue parallel to the reexamination procedure. This action will be stayed until the PTO either determines that no substantial new question of patentability exists, 35 U.S.C. § 303(a), or renders a final certificate of patentability or unpatentability, 35 U.S.C. § 307(a).

Accordingly, Plaintiffs' motion for a stay of proceedings, including discovery, is GRANTED.

SO ORDERED.

Not Reported in F.Supp., 1991 WL 236196 (N.D.Ga.), 19 U.S.P.Q.2d 1872

**Motions, Pleadings and Filings (Back to top)**

• <u>1:89cv00451</u>_____(Docket)
(Mar. 08, 1989)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 3
Not Reported in F.Supp., 1991 WL 236196 (N.D.Ga.), 19 U.S.P.Q.2d 1872
**(Cite as: 1991 WL 236196 (N.D.Ga.))**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 22

Westlaw.

1985 WL 1483                                                                     Page 1
Not Reported in F Supp , 1985 WL 1483 (W D Okla ), 225 U S P Q 886
(Cite as: 1985 WL 1483 (W.D.Okla.))

C

United States District Court; W.D. Oklahoma.
LOFFLAND BROTHERS COMPANY, Plaintiff,
v.
MID-WESTERN ENERGY CORP., a corporation;
WESTERN DRILLING COMPANY RIG-205,
INC., a corporation; WESTERN DRILLING
COMPANY RIG-206, INC., a corporation,
successor in interest to Western Drilling Company;
WESTERN DRILLING COMPANY
RIG-207, INC., a corporation; RAYMOND E
SMITH, an individual; CHARLES A.
OVERSTREET, an individual; and BILL BATTLES,
an individual, Defendants.
**No. CIV-83-2255-E.**

January 3, 1985.
James R. Head HEAD, JOHNSON & STEVENSON
228 West 17th Place Tulsa, Oklahoma 74119, for
plaintiff.

Russell Mulinix HASTIE & KIRSHNER 3000 First
Oklahoma Tower Okla. City,   Okla. 73102, for
plaintiff.

Raymond E. Tompkins W. Daniel Shelton LINN &
HEIMS Suite 400, Fidelity Plaza Okla. City, Okla.
73102, for defendant

Richard F. Campbell, III & Robert D. Baron
FELLERS, SNIDER, BLANKENSHIP, BAILEY &
TIPPENS 2400 First National Center Okla. City,
Okla. 73102, for defendant

Kenneth R. Webster McKINNEY, STRINGER &
WHESTER Ninth Floor, City Center Building Main
& Broadway Okla. City, Okla. 73102, for defendant

William R. Davis 1319 Classen Drive Okla. City,
Okla. 73103, for defendant

ORDER

??, District Judge.

*1 This is an action for the infringement of plaintiff's
patent for an elevating catwalk used on drilling rigs.
Jurisdiction over the patent claim is premised upon
28 U.S.C. § 1338. Pendent jurisdiction is alleged
over plaintiff's claims of unfair competition and
misappropriation of trade secrets.

Before the Court for consideration is defendants'
Motion for Partial Summary Judgment, or, in the
alternative, Renewed Motion to Stay.

BACKGROUND
Plaintiff filed its complaint in this action on
September 16, 1983. Defendants filed a request for
reexamination of the patent with the U.S. Patent and
Trademark Office (PTO) on April 11, 1984.  The
PTO granted defendants' request on May 29, 1984.
The decision of the PTO to grant the request for
reexamination states that a substantial new question
of patentability affecting claims 1-6 of plaintiff's
patent is raised by the request. Defendants' Brief in
Support of the Motion for Partial Summary
Judgment, Exhibit A, at 2.

By order of September 21, 1984, the jury trial of this
matter scheduled to commence on October 9, 1984
was continued for a period of ninety (90) days
pending completion of the reexamination proceeding
in the PTO, thereafter to be re-set by order of this
Court. Trial has not been rescheduled.

On October 26, 1984, the PTO examiner issued an
official action rejecting claims 1-6 of plaintiff's
patent. Defendants' Brief in Support of the Motion
for Partial Summary Judgment, Exhibit E. However,
this is not the final action in the reexamination
proceeding. Id., Exhibit E, at 6, ¶ 8.

MOTION FOR PARTIAL SUMMARY
JUDGMENT
Defendants move the Court to grant partial summary
judgment in their favor on plaintiff's claim against
them for patent infringement. In support of their
motion, defendants claim that plaintiff's patent has
been narrowed and restricted in scope during the
course of its reexamination by the PTO. Defendants
further claim that they have not made, used or sold
any elevating catwalk structure of any type since
March 1, 1984.

Defendants contend that the doctrine of intervening
rights is dispositive of plaintiff's claim of patent
infringement, citing 35 U.S.C. § § 307(b) and 252 in
support of this contention.  The portions of the
statutes quoted by the defendants in their argument
on   this   point   concern   rights   following   a
reexamination proceeding, 35 U.S.C. § 307(b), and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1985 WL 1483                                                                                Page 2
Not Reported in F.Supp., 1985 WL 1483 (W.D.Okla.), 225 U.S.P.Q. 886
**(Cite as: 1985 WL 1483 (W.D.Okla.))**

the effect a reissued patent has on a pending action, 35 U.S.C. § 252. (Emphasis added). Pursuant to § 252, the claims of a reissued patent, or (according to the defendants' interpretation) the patent as it exists following a reexamination proceeding, must be compared to those of the original patent to determine the effect of the reissued patent on a pending action. However, absent final action by the PTO, the Court has no basis to determine the ultimate scope of the claims of plaintiff's patent or whether the patent will contain any valid claim or claims identical with the original patent when the reexamination proceeding is concluded.

*2 Briefly stated, plaintiff's position in response to defendants' motion is that the question of patent infringement is a question of material fact and will remain so even upon final action by the PTO.

The Court can only conclude that defendants' motion is premature since there is no final action by the Patent Office pursuant to the reexamination proceeding.

MOTION TO STAY THE INSTANT LITIGATION
As an alternative to their motion for partial summary judgment, defendants seek to stay the present litigation until the reexamination proceeding in the PTO is concluded. Defendants urged the Court to grant a similar motion earlier in these proceedings. The motion was denied at that time because the extremely heavy case load in this district provides an automatic stay. In support of their renewed motion to stay, defendants project that a final action in the reexamination proceeding will be forthcoming near the end of January, 1985.

Plaintiff opposes the motion to stay, but asks the Court to reschedule the dates set by the Court in its Order entered at pretrial for the completion of certain matters required in preparation for trial. The Court notes that extensions of time have previously been granted for at least some of the dates set at pretrial. See, e.g., Orders of: December 4, 1984 (granting plaintiff's application to extend discovery deadline), November 11, 1984 (granting defendants leave to file contentions out of time); September 24, 1984 (filing contentions; completion of discovery); and June 21, 1984 (defendants' witness and exhibit lists; parties' contentions). Additionally, plaintiff states that it 'believes it can be ready for trial by May, 1985.'

The technical expertise provided by the reexamination proceeding, including a final determination by the PTO examiner, will be

extremely helpful to this Court should further consideration of this matter be necessary. Indeed, the Court invites a final determination by the PTO as to the validity of plaintiff's patent claims. The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled. It is equally possible for all of the claims in plaintiff's patent to be upheld, or to be narrowed in some degree. In any event, the expert view of the Patent Office examiner will certainly benefit this Court. Thus, the Court is of the opinion that a stay of the trial of this matter should be granted to allow the PTO to complete the reexamination proceeding.

Accordingly,

IT IS ORDERED that defendants' Motion for Partial Summary Judgment on the patent infringement claim be and is hereby denied in that it is premature.

IT IS FURTHER ORDERED that defendants' Motion to Stay the trial in the present litigation is granted.

IT IS FURTHER ORDERED that trial of this action be and is hereby stayed pending the conclusion of the reexamination of plaintiff's U.S. Letters Patent No. 4,365,692 currently in progress in the U.S. Patent and Trademark Office.

*3 The Clerk of the Court is instructed to mail a copy hereof to counsel and/or parties of record.

Not Reported in F.Supp., 1985 WL 1483 (W.D.Okla.), 225 U.S.P.Q. 886

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 23

Westlaw.

68 U.S.P.Q.2D 1755
2003 WL 22870902 (E.D.Mich.), 68 U.S.P.Q.2d 1755
(Cite as: 68 U.S.P.Q.2d 1755)

Page 1

Ralph Gonnocci Revocable Living Trust
v.
Three M Tool & Machine Inc.

U.S. District Court Eastern District of Michigan

No. 02-74796

Decided October 7, 2003

**PATENTS**
**[1] Practice and procedure in Patent and Trademark Office -- Reexamination -- In general (§ 110.1501)**

**JUDICIAL PRACTICE AND PROCEDURE**
Procedure -- Stays -- In general (§ 410.2901)
Stay of proceedings in patent infringement action is warranted in view of defendant's application for reexamination of patent in suit before U.S. Patent and Trademark Office, since action has been pending less than one year, and far more time and resources have yet to be spent on case by parties and court, since record does not indicate that defendant unnecessarily delayed in seeking reexamination or that he is doing so to stall litigation, and since PTO's determination will be beneficial to efficient resolution of action, in that disputes may be resolved, issues may be simplified, parties may be encouraged to settle, and PTO's decision will be admissible in district court proceedings and presumed valid.

**PATENTS**
**[2] Practice and procedure in Patent and Trademark Office -- Reexamination -- In general (§ 110.1501)**

**JUDICIAL PRACTICE AND PROCEDURE**
Procedure -- Defenses -- Estoppel (§ 410.1805)
Procedure -- Stays -- In general (§ 410.2901)
Doctrine of primary jurisdiction does not compel stay of proceedings in patent infringement action pending outcome of reexamination of patent in suit by U.S. Patent and Trademark Office, since PTO's decision is presumptively valid, but not binding on federal district court, and since determination of patent validity is question of law within conventional experience of judges; stay will nevertheless be granted in present case, since benefits of permitting

PTO to address reexamination request outweigh any prejudice to plaintiff, and since doctrine of assignor estoppel does not preclude defendant from requesting reexamination of patent.

**PATENTS**
**Particular patents -- General and mechanical -- Machine tools**
5,184,833, Cross and Gonnocci, power chuck, infringement action stayed pending reexamination.

*1755 Action by Ralph Gonnocci Revocable Living Trust against Three M Tool & Machine Inc., Ultra Grip International Inc., Three M Holding Corp., Ultra Grip North Inc., and Michael A. Medwid for patent infringement, in which plaintiffs counterclaim for declaratory judgment of invalidity and unenforceability. On defendants' motion to stay proceedings pending outcome of request for reexamination of patent in suit before U.S. Patent and Trademark Office. Granted.

Rodger D. Young and Steven Susser, of Young & Susser, Southfield, Mich.; Daniel H. Bliss and Gerald E. McGlynn III, of Bliss McGlynn, Troy, Mich., for plaintiff.

Theresa A. Orr and Jeffrey P. Thennisch, of Dobrusin &Thennisch, Birmingham, Mich.; *1756 Leonard K. Berman, of Hainer & Berman, Bingham Farms, Mich., for defendants.

Duggan, J.

In this action, Plaintiff alleges that Defendants are infringing U.S. Patent No. 5,184,833(the '833 Patent) [FN1] Defendants have filed a counterclaim seeking a declaratory judgment that the '833 Patent is invalid and unenforceable. [FN2] This matter is now before the Court on a motion by Defendants, filed August 28, 2003, to stay these proceedings pending the outcome of Defendant Michael Medwid's application to the United States Patent and Trademark Office ("PTO") for a reexamination of the '833 Patent. [FN3] In the alternative, Defendants request an adjournment of the trial date until a date and time after November 29, 2003--the date by which the PTO must provide an initial response to the Request for Reexamination. A hearing on Defendants' motion was held on October 2, 2003.

COPR. © 2005 The Bureau of National Affairs, Inc.

68 U.S.P.Q 2D 1755
2003 WL 22870902 (E.D.Mich.), 68 U.S.P.Q.2d 1755
(Cite as: 68 U.S.P.Q.2d 1755)

### Procedural Background

Plaintiff filed its Complaint for patent infringement on December 2, 2002. This Court entered a Pretrial Scheduling Order on February 3, 2003, setting deadlines for filing witness lists, discovery, and the filing of motions for May 31, June 30, and July 15, 2003, respectively. Pursuant to the February 3 Scheduling Order, the final pretrial conference was to be held on September 10, 2003. On June 30, Defendants filed a motion seeking an extension of the dates set forth in the Court's Scheduling Order. The Court granted Defendants' motion in part, extending the deadlines for discovery and the filing of witness lists and motions by sixty days. On August 4, 2003, the Court set this matter for trial on its October, 2003 trailing trial docket.

According to Plaintiff, as of September 22, 2003, both parties had conducted extensive discovery and only one deposition remained to be taken. Both parties have filed their witness lists. On July 15, 2003, Plaintiff filed a motion for summary judgment. Defendants filed a response on August 22, 2003. Defendants also filed motions for summary judgment on August 29, 2003. All three motions remain pending before the Court.

On August 29, 2003, the same date Defendants' filed their motion to stay, Defendant Michael Medwid ("Medwid") filed a Request for Reexamination with the PTO of Claims 1-20 of the '833 Patent. Medwid seeks to invalidate or amend the claims of the '833 Patent, pursuant to 35 U.S.C. Section 301, on the basis that its inventors, Ralph Gonnocci ("Gonnocci") and Kenneth Cross ("Cross"), failed to file certain prior art references with their patent application. [FN4]

### Applicable Law

Once a request for reexamination has been filed, the PTO must determine within three months "whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications." 35 U.S.C. § 303(a). If a substantial new question of patentability exists, the PTO must issue an order for reexamination. Ultimately, the reexamination procedure will result in an order either cancelling the patent, confirming the patent, or amending the patent.

The decision whether to stay pending district court proceedings while the PTO's reexamination takes place, while not vested expressly *1757 by statute, has been recognized to be within the court's inherent discretionary power. Gould v. Control Laser Corp., 705 F.2d. 1340, 1342 [ 217 USPQ 985] (Fed. Cir. 1983). Issuing a stay has many advantages, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

Emhart Indus. v. Sankyo Seiki Mfg. Co., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987) (citing Fisher Controls Co. v. Control Components, Inc., 443 F. Supp. 581, 582 [ 196 USPQ 817] (S.D. Iowa 1977)) The reexamination procedure "was intended 'to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts,' especially where the infringement litigation is in the early stages." Softview Computer Prods. Corp. v. Haworth, Inc., 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y. 2000) (quoting Digital Magnetic Sys., Inc. v. Ansley, 213 U.S.P.Q. 290 (W.D. Okla. 1982)). The court cautioned that "[p]arties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation." Id.

In determining whether to grant a stay, courts have considered the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Id. at 1635-36 (quoting Xerox Corp. v. 3Com Corp., 69 F. Supp.2d

404, 406 [ 50 USPQ2d 1793] (W.D.N Y 1999)).
Despite the third consideration, courts have granted
stays even where discovery has been completed and
even when a trial date has been scheduled or is
forthcoming See. e g, Emhart Indus., 3 U.S.P.Q.2d
at 1891 (granting stay despite completion of costly
discovery where there was no pretrial order in place,
no trial schedule had been set, and virtually no trial
preparations had been carried out); Grayling Indus. v.
GPAC, Inc. , 19 U.S.P.Q.2d 1872 (N.D. Ga. 1991)
(granting stay two years after case filed and one
month after pretrial order submitted, particularly as
six depositions remained to be taken which would
result in added expense); Loffland Bros. Co. v. Mid.
Western Energy Corp. , 225 U.S.P.Q. 886 (W.D.
Okla. 1985) (granting stay one and a half years after
complaint filed and after trial was scheduled to
commence)

### Argument

Defendants raise several arguments in favor of their
request for a stay First, Defendants argue that the
issues before the PTO in Medwid's Reexamination
Request completely overlap the remaining claims
before this Court. Thus awaiting the PTO's
determination, Defendants argue, promotes judicial
economy. Defendants contend that the PTO can more
expeditiously and less expensively resolve the
validity dispute involving the '833 Patent and the
Court is better served by the expertise of the PTO on
this issue. Defendants also claim that "investor
confidence" will be promoted by PTO review of a
"doubtful patent," as Plaintiff's stated goal is to
license the '833 [Patent] to third parties. Defendants
believe that all seven advantages identified above
also will be achieved by a stay of the present action

Turning to the three factors district courts consider
in determining whether to grant a stay, Defendants
argue that Plaintiff will not be prejudiced by a delay
in this action. Most significantly, Defendants point
out that the Court previously denied Plaintiff's earlier
request for injunctive relief Defendants also note that
much remains to be done in this action before it is
ready for trial. For example, no final pretrial
conference has occurred, a joint final pretrial order
has not been drafted, discussed, or entered by the
Court, and extensive, *1758 additional pretrial
preparations must be completed, such as motions in
limine and trial briefs. Staying the proceedings while
the PTO conducts its reexamination, Defendants
therefore argue, will serve to protect the parties and
the Court from additional undue expense and time
spent preparing this matter for trial

Defendants further contend that moving forward
with these proceedings may prove wasteful if the
PTO eventually determines that the '833 Patent is
invalid in whole or in part. For that reason,
Defendants also argue that staying this action could
serve to simplify the issues and trial of the case
Defendants claim that if the PTO invalidates the '833
Patent upon reexamination, this Court will no longer
have subject matter jurisdiction over Plaintiff's claim.
In addition to the additional pretrial preparation that
must be done, Defendants point out that three
extensive summary judgment motions have been
filed and remain pending in this proceeding Finally,
Defendants claim that the doctrine of primary
jurisdiction supports a stay of the present proceedings
pending the PTO's reexamination of the '833 Patent

Plaintiff responds that it will be greatly prejudiced
by a stay and that the proceedings will not aided by
the PTO's decision Plaintiff contends that
Defendants' only reason for requesting a stay nearly
ten months into litigation is to delay the case in the
hopes that Gonnocci, who is in his seventies and has
no income, will cause Plaintiff to drop its claims
Plaintiff doubts that Defendants honestly believe the
'833 is invalid, pointing out that Defendants
previously tried to obtain the '833 Patent in a state
court action. Plaintiff also contends that Defendants'
challenges to the validity of the '833 Patent ultimately
will fail under the doctrine of assignor estoppel.
Finally, Plaintiff believes that a stay is inappropriate
where Defendants have intentionally waited until the
eleventh hour to request a reexamination.

Staying the proceedings at this stage while the PTO
conducts its reexamination, Plaintiff argues, will
delay the resolution of the parties' dispute for close to
twenty months (the amount of time Plaintiff claims
statistics indicate reexamination proceedings last)
Plaintiff points out that as time passes, memories
fade, the availability of witnesses change, and the
importance of the issues diminish as technology
progresses. Furthermore, Plaintiff claims that the
pendency of this litigation makes it difficult for
Plaintiff to license the '833 Patent. Plaintiff also
asserts, as it did in its motion for preliminary
injunction, that Defendants are in a difficult financial
situation and thus may be incapable of compensating
Plaintiff down the road. For that reason, Plaintiff also
asks the Court to order Defendants to post a bond
pursuant to Rule 11 if it grants a stay. [FN5]

### Analysis

Although there are factors supporting Plaintiff's and
Defendants' positions, the Court finds, on balance,

COPR © 2005 The Bureau of National Affairs, Inc.

68 U.S.P.Q 2D 1755
2003 WL 22870902 (E.D.Mich.), 68 U.S.P.Q 2d 1755
(Cite as: 68 U.S.P.Q.2d 1755)

Page 4

that the interests of the parties and the Court weigh in favor of a stay. [FN6]

[1] This action has been pending for less than a year. Undoubtably the parties have spent considerable time and resources thus far-- substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial.

Plaintiff may be correct that Medwid did not act swiftly in seeking reexamination. Nothing in the record, however, indicates when Medwid became aware of the prior art which is the basis for his request for reexamination. Furthermore, Defendants' counsel only filed their notice of appearance on June 30, 2003. Thus the Court cannot conclude that Medwid unnecessarily delayed seeking a reexamination or that he only is doing so now to stall this litigation.

Furthermore, the Court finds that the PTO's determination will be beneficial to the efficient resolution of this action. The PTO may resolve *1759 any remaining disputes, simplify the issues with respect to that patent, or encourage the parties to settle the remaining claims. Although not binding on this Court, the PTO's decision will be admissible and carries a presumption of validity. Furthermore, the parties already have settled their claims with respect to the '382 Patent. Perhaps the PTO's decision regarding the '833 Patent will facilitate a settlement of their remaining claims.

[2] The Court does not find the doctrine of primary jurisdiction applicable to the issues to be decided in this case. As courts have explained this doctrine:

The doctrine of primary jurisdiction represents a version of the administrative exhaustion requirement under circumstances in which a judicially cognizable claim is presented but "enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. . ."

Goya Foods, Inc. v. Tropicana Prods., Inc. , 846 F.2d 848, 851 [ 6 USPQ2d 1950] (2d Cir. 1988) (quoting United States v. W. Pacific R.R. , 352 U.S.

59, 64, 77 S.Ct. 161, 165 (1956)). The doctrine guarantees "uniformity and consistency in the regulation of business entrusted to a particular agency" and "is intended to recognize that, with respect to certain matters, 'the expert and specialized knowledge of the agencies' should be ascertained before judicial consideration of the legal claim." Id (internal citations omitted)

The Court finds the doctrine inapplicable for the following reasons. The reexamination process only is an alternative method for challenging the validity of a patent. The PTO's decision is presumptively valid, but not binding on the district court. Additional evidence may be submitted in the district court proceedings. Finally, the determination as to whether a patent is valid is a question of law "within the conventional experience of judges." Johnson & Johnson v. Wallace A. Erickson & Co. , 627 F.2d 57, 61-62 [ 206 USPQ 873] (7th Cir. 1980) (quoting Far East Conference v. United States , 342 U.S. 570, 574, 72 S.Ct. 492, 494 (1952)) As the Goya Foods court explained in rejecting the application of the doctrine to a trademark infringement action:

We are not dealing here with a regulated industry in which policy determinations are calculated and rates are fixed in order to calibrate carefully an economic actor's position within a market under agency control, and the PTO's decision to permit, deny, or cancel registration is not the type of agency action that secures "uniformity and consistency in the regulation of business entrusted to a particular agency." Nor does the registration determination raise "technical questions of fact uniquely within the expertise and experience of an agency."

Goya Foods, 846 F.2d at 852 (internal citations omitted) Despite the Court's rejection of the doctrine's application to the present matter, the Court nevertheless concludes that the advantages of a stay to permit the PTO, with its technical expertise, to address Medwid's request for reexamination outweigh any prejudice to Plaintiff.

The Court is not persuaded otherwise by Plaintiff's assertion of the doctrine of assignor estoppel. That doctrine prevents a party who assigns a patent to another from later challenging the validity of the assigned patent. See Mentor Graphics Corp. v. Quickturn Design Sys., Inc. , 150 F.3d 1374, 1377 [ 47 USPQ2d 1683] (Fed. Cir. 1998). Plaintiff anticipates that Defendants will argue that the doctrine of assignor estoppel is inapplicable because, as Defendants claimed in earlier state court

COPR. © 2005 The Bureau of National Affairs, Inc.

68 U.S.P.Q.2D 1755
2003 WL 22870902 (E.D.Mich.), 68 U.S.P.Q.2d 1755
(Cite as: 68 U.S.P.Q.2d 1755)

Page 5

proceedings, Defendant Ultra Grip Incorporated's assignment of the '833 Patent to Gonnocci and Cross was unlawfully accomplished. Plaintiff argues that the state court action was dismissed with prejudice and thus Defendants are precluded from arguing in these proceedings that the assignment was unlawful.

First, while the state court action may have been dismissed with prejudice, the Court lacks sufficient information about that action (particularly under what circumstances it was dismissed) to conclude that Defendants should be barred from raising that issue here. Second, the assignor estoppel doctrine is an equitable doctrine that has been asserted to bar a party from claiming patent invalidity in response to an infringement action. Plaintiff cites no authority to suggest that the doctrine bars a party from requesting the PTO's reexamination of a patent. In fact, at least two courts have held that Section 302 of the patent statute, which permits *any person* to request a reexamination (even anonymously), supersedes contrary equitable principles. *See* **\*1760**Total Containment, Inc. v. Environ Prods., Inc. , 34 U.S.P.Q.2d 1254 (E.D. Pa. 1995) (holding that "[a]lthough assignor estoppel is designed to work equity in proper circumstances, courts may not ignore statutory law . . . Courts are bound to follow express statutory commands under the fundamental principal that equity follows the law "); Vitronics Corp. v. Conceptronic, Inc. , 36 F. Supp. 2d 440, 442[ 44 USPQ2d 1536] (D.N.H. 1997) (Holding that Section 302 places no restrictions on who may seek reexamination and this legal mandate supersedes contrary equitable principles).

Accordingly,

*IT IS ORDERED*, that Defendants' Motion to Stay District Court Proceedings Pending the Outcome of a Request for Reexamination of U.S. Patent No. 5,184,833 Before the U.S. Patent & Trademark Office is *GRANTED*.

*IT IS FURTHER ORDERED*, that this matter is *STAYED* and thus will be removed from the Court's October trailing trial docket.

FN1. In Count II of the Complaint, Plaintiff also claimed that Defendants infringed U.S. Patent No. 6,206,382 (the '382 Patent). The parties, however, have stipulated to the dismissal of Count II. A Stipulation and Order for Dismissal with Prejudice of Claim II was entered on September 3, 2003.

FN2. In Count I of their Counter-Complaint, Defendants also seek a declaratory judgment that the '382 Patent is invalid.

FN3. Plaintiff filed a Response to Defendants' motion to stay on September 22, 2003. On September 29, Defendants filed a Reply in which they ask the Court to strike Plaintiff's Response as it was filed late. Defendants note that while the Court "has admonished counsel for all parties to cooperate with one another in this litigation, it is submitted that even the civility rules do not excuse non-compliance with the local rules of the Court." *See* Reply at 1. Plaintiff's Response was due September 15. While the Court does not excuse Plaintiff's untimely filing, its Response only was seven days late. Furthermore, if the Court were to strictly enforce the local rules and thus strike Plaintiff's Response, it also would be inclined to strike Defendants' motion and reply for failing to comply with Local Rule 5.1 (requiring top and bottom margins to be at least 1 1/2" and type size of all text *and footnotes* to be no smaller than 10 characters per inch (non-proportional) or 12 point (proportional).

FN4. Gonnocci and Cross were the original holders of the '833 Patent. Cross subsequently died, but before his death he assigned his interest in the patent to Gonnocci. Gonnocci then assigned his ownership in the patent to Plaintiff.

FN5. Rule 11 does not grant the Court authority to order Defendants to post a bond now *in the event* Defendants are unable to pay a potential judgment in this matter. The only additional authority Plaintiff cites for its request is the district court's decision in Canady v. Erbe Elektromedizin GMBH, 2002 WL 32128716 (D.D.C. 2002). Nothing in that case, however, suggests that a court may require a bond under these circumstances.

FN6. The Court finds that a stay at least is warranted while the PTO makes its initial determination as to whether to proceed with a reexamination. If the PTO finds in its initial review that Medwid's request fails to raise "substantial new questions of patentability," Plaintiff can ask the Court to

COPR. © 2005 The Bureau of National Affairs, Inc

68 U.S.P.Q.2D 1755
2003 WL 22870902 (E.D.Mich.), 68 U.S.P.Q.2d 1755
**(Cite as: 68 U.S.P.Q.2d 1755)**

Page 6

      lift the stay at that time.

E.D.Mich.

68 U.S.P.Q.2D 1755

END OF DOCUMENT

COPR. © 2005 The Bureau of National Affairs, Inc.