# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
**(Cite as: 2003 WL 21105073 (D.Del.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PEGASUS DEVELOPMENT CORPORATION and
Personalized Media Communications, L.L.C.,
Plaintiffs
v.
DIRECTV, INC., Hughes Electronics Corporation,
Thompson Consumer Electronics,
Inc., and Philips Electronics North America Corporation,
Defendants.
**No. Civ.A. 00-1020-GMS.**

May 14, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

*1 AND RELATED COUNTERCLAIMS

I. INTRODUCTION

On December 4, 2000, Pegasus Development Corporation ("Pegasus") and Personalized Media Communications, L.L.C. ("PMC") filed a complaint against several defendants, alleging infringement of six patents, including U.S. Patent Nos. 4,965,825 ("the '825 patent") and 5,335,277 ("the '277 patent"). Since that time, the original scheduling order has been revised several times. Currently, fact discovery is scheduled to close on August 22, 2003, and a trial is scheduled for February of 2004.

On February 4, 2003 and March 14, 2003, respectively, the defendant Thomson Consumer Electronics, Inc. ("Thomson") filed with the Patent and Trademark Office ("PTO") a request for *ex parte* reexaminations of the '825 and '277 patents. The request for reexamination of the '825 patent was granted on April 10, 2003. [FN1] Presently before the court is a joint motion by the defendants to stay the litigation pending the completion of the patent reexaminations (D.I.459). After careful consideration of the

parties' submissions, and for the reasons detailed below, the court will grant the motion.

> FN1. The court is not yet aware of a decision by the PTO regarding reexamination of the '277 patent.

II. DISCUSSION

The decision to stay a case is firmly within the discretion of the court. *Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir.1985).* This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed.Cir.1988)* ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citation omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg., 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987)* ("[I]n passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed.Cir.1983)* (citing legislative history of reexamination statute). In determining whether a stay is appropriate, the court is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp v. 3 Comm Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y.1999)* (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217 (D.Del.1991)* (stating a similar test)

In this case, there are two plaintiffs, four defendants, and several counter claimants, as well as six patents comprising dozens of claims. In addition, the written submissions in this case have been particularly voluminous; the briefing on claim construction alone, for example, constitutes 576 pages. *See* Report and Recommendation of Special Master Regarding Claim Construction at 2 (citing "copious briefing"). In these ways, the present suit is quite complex, although, perhaps, not extraordinarily so. The greater context of this suit is extraordinary, however: the plaintiffs

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
**(Cite as: 2003 WL 21105073 (D.Del.))**

have filed more than 300 related patent applications based upon an original patent application filed in 1981 and supplemented in 1987. Together, these applications contain an estimated 10,000 claims. Furthermore, as observed by the Special Master appointed in this case, the 1987 application alone constitutes over 300 columns of patent text and "is, by any measure, an extremely complex document." *Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21. Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

**\*2** The reexamination process will serve this purpose. For example, the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech, Inc.,* 1997 WL 94237, at \*9 (D.Kan.1997); *Hamilton Indus., Inc. v. Midwest Folding Products Mfg.,* 1990 WL 37642, at \*1-2 (N.D.Ill.1990). Other potential efficiencies resulting from the reexamination process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant

reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainsley,* 213 U.S.P.Q. 290, 290 (W.D.Okla.1982) ("Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc.,* 2000 WL 1134471, at \*3 (S.D.N.Y.2000) ("[T]he grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the reexamination process will proceed "with special dispatch," 35 U.S.C. 305, the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, the court reminds the plaintiffs that they affirmatively invoked the rights of the patent statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the reexamination mechanism, and the PTO has determined that reexamination is warranted. There is nothing facially untoward in that. Moreover, the court notes that if, after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed.Cir.1986) (holding that upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1139 (Fed.Cir.1985)). In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is undue.

**\*3** Objecting to a stay, the plaintiffs also have complained

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
**(Cite as: 2003 WL 21105073 (D.Del.))**

of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint Motion to Stay (D.I.488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of Motion to Stay (D.I.460) at 4 ("Many of the Harvey patents had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("[I]t appears that PMC sought to 'overwhelm' the PTO and the Courts.")

As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for reexamination of the '825 patent comprised 2,610 pages; its request regarding the '277 patent totaled 4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's reexamination requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the reexamination procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the patents-in-suit, the implications of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found "substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the '825 patent necessitate a reexamination. *See* PTO's Decision Granting Reexamination, Supp. Appendix to Defs.' Joint Brief in Support of Motion to Stay (D.I.467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a stay outweigh the costs.

III. CONCLUSION

Because the PTO's reexamination of one or more of the patents-in-suit may materially affect the issues in this case, the court will grant the defendants' motion to stay. The case is stayed pending a disposition of the PTO's reexamination of patent '825, and will be stayed pending reexamination of the '277 patent, if applicable. All pending motions will be denied without prejudice; the parties may refile them

following the stay and upon the entry of a new scheduling order, if applicable.

Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The defendants' Motion to Stay Pending Reexamination by the U.S. Patent and Trademark Office (D.I.459) is GRANTED. The proceedings are stayed from the date of this order until further notice.

2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '825 patent, and any other decision of the PTO regarding reexamination of any of the other patents-in-suit.

*4 3. The plaintiffs' Motion for Leave to Assert Claim 15 of U.S. Patent 4,965,825 (D.I.399) is DENIED without prejudice.

4. Thomson's Motion to Dismiss or in the Alternative for Summary Judgment (D.I.376) is DENIED without prejudice.

5. Phillips' Motion to Dismiss for Lack of Standing (D.I.396) is DENIED without prejudice.

Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00cv01020 (Docket) (Dec. 04, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 1998 WL 1037920 (M.D.N.C.)
**(Cite as: 1998 WL 1037920 (M.D.N.C.))**

☞

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, M.D. North Carolina.
REMINGTON ARMS COMPANY, INC., Plaintiff,
v.
MODERN MUZZLELOADING, INC., Defendant.
**No. 2:97CV00660.**

Dec. 17, 1998.

Christopher G. Daniel, Womble Carlyle Sandridge & Rice
POD 84, Michael E. Ray, Womble Carlyle Sandridge &
Rice POD 84, Winston-Salem, for Remington Arms
Company, Inc., plaintiffs.

Daniel Alan M. Ruley, Bell, Davis & Pitt, P.A., James R.
Fox, Bell, Davis & Pitt, P.A., William Kearns Davis, Bell,
Davis & Pitt, P.A., Winston-Salem, Thad G. Long, Bradley,
Arant, Rose & White, L.L. P., Birmingham, AL, Donald H.
Zarley, Zarley McKee Thomte Voorhees & Sease, P.L.C.,
Des Moines, IA, Timothy J. Zarley, Daniel J. Cosgrove,
Zarley McKee Thomte Voorhees & Sease, P.L.C., Des
Moines, IA, Dennis L. Thomte, Zarley McKee Thomte
Voorhees & Sease, P.L.C., Omaha, NE, for Modern
Muzzleloading, Inc., defendants.

ORDER

OSTEEN, District J.

*1 For the reasons set forth in the memorandum opinion
filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendant's
Motion To Stay District Court Proceedings Pending
Reexamination [89] is denied.

MEMORANDUM OPINION

This matter comes before the court on Defendant's Motion
to Stay District Court Proceedings Pending Reexamination.

For the reasons discussed herein, the court will deny
Defendant's Motion to Stay District Court Proceedings
Pending Reexamination.

I. FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 1997, Plaintiff Remington Arms Company, Inc.
(Remington), filed this lawsuit against Modern
Muzzleloading, Inc. (Modern), alleging willful infringement
of Plaintiff's U.S. Patent No. 5,606,817 entitled
Muzzle-loading Firearm ('817 patent) (Pl.'s Resp. Mot. Stay
at 1.) Modern timely filed an answer and counterclaim
denying infringement and alleging invalidity of the patent.
(Def.'s Answer and Countercl.)

In the fall of 1997, Defendant submitted its first request for
reexamination to the Patent and Trademark Office (PTO) on
the grounds that the claims of the '817 patent were obvious.
The PTO denied Defendant's request for reexamination.
(Pl.'s Resp. Mot. Stay at 1-2.) During the next few months,
the parties engaged in extensive discovery which closed on
July 30, 1998. Id. A trial date has been set for February 16,
1999. A Markman Hearing was scheduled for November 5,
1998, and was postponed pending the outcome of
Defendant's Motion to Stay. Id. Several dispositive motions
are also pending before this court. Id.

Although there is evidence in the record indicating that
Defendant was aware of the prior art as early as May 5,
1998, [FN1] Defendant chose not to request a second
reexamination of Plaintiff's patent until August 13, 1998,
after dispositive motions by both parties were briefed and
filed, a trial date was set, and two weeks after discovery had
closed. On October 15, 1998, the PTO granted Defendant's
second request for reexamination of the '817 patent. Id. at 3.
Modern has now moved this court to stay this litigation
pending the outcome of the reexamination proceeding and
Plaintiff has filed a response to Modern's motion to stay.

> FN1. There is also evidence which suggests that
> Defendant was aware of the prior art which forms
> the basis for its second request for reexamination
> as early as March 1998 when the Defendant
> received notice of a second lawsuit filed by
> Remington, for patent infringement, which
> disclosed some of the same prior art at issue in the
> present action. (Pl.'s Resp. Mot. Stay, Ex. 4 and Ex.
> 4A.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Westlaw.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 1998 WL 1037920 (M.D.N.C.)
**(Cite as: 1998 WL 1037920 (M.D.N.C.))**

II. DISCUSSION

A. Motion to Stay District Court Proceedings Pending Reexamination.

It is well settled that the decision to stay district court proceedings pending the outcome of a PTO reexamination proceeding "resides in the [sound] discretion of the district court." *Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co.*, 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987). In determining whether to grant or deny a stay, "courts consider whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party, whether a stay will simplify the issues in question and trial of the case, whether discovery is completed and whether a trial date has been set." *See Target Therapeutics Inc. v. SciMed Life Sys. Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D.Cal.1995). While this court is cognizant of the advantages of granting the stay, this court finds that the many burdens associated with a stay outweigh the benefits.

1. Motion to Stay Would Not Be Judicially Efficient.

**\*2** The court agrees with Plaintiff that under the circumstances, granting the motion to stay would not be judicially efficient. Discovery has closed, a trial date has been set, and both parties have submitted dispositive motions which are presently pending before the court. (Pl.'s Resp. Mot. Stay at 2.) Finally, the Markman Hearing, originally scheduled for November 5, 1998, has already been postponed pending the outcome of Defendant's Motion to Stay. *Id.* Because a reading of the record suggests to the court that considerable monies have already been expended, staying the proceedings would only result in a waste of time and judicial resources, especially at this late stage of the litigation. *See Ascii Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp. 1378, 1380 (N.D.Cal.1994) (Evidence that "substantial expense and time had been invested in the litigation [ ] would militate against granting the motion.").

In addition, other federal courts have declined to stay district court proceedings where discovery has been completed and a trial date has been set. *See Wayne Automation Corp. v. R.A. Pearson Co.*, 782 F.Supp. 516, 519 (E.D.Wash.1991) (denying plaintiff's motion to stay

litigation where the parties had conducted extensive discovery and the case was set for trial); *Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d 1319, 1320 (N.D.Ill.1990) (finding that "[w]e are too far along the road to justify halting the journey while the defendant explores an alternate route"); *Accent Designs Inc. v. Jan Jewelry Designs Inc.*, 32 U.S.P.Q.2d 1036, 1039- 40 (S.D.N.Y.1994); *Digital Magnetic Sys., Inc. v. Ansley*, 213 U.S.P.Q. 290 (W.D.Okla.1982) ("Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation."). [FN2]

> FN2. The court also finds that a stay would be inappropriate because the average duration of a PTO reexamination proceeding is 19 months. (Pl.'s Resp. Mot. Stay, Ex. 2, PTO Data, at 3.)

Although Defendant contends, and the court does not disagree, that stays are to be liberally granted, the cases which have granted stays pending reexamination are easily distinguishable from the present action. Generally, courts grant stays where the case is in the early stages of litigation. *See Target Therapeutics*, 33 U.S.P.Q. at 2023 (Stay of proceedings is warranted where the action is in its early stages and the parties have not yet engaged in extensive discovery.); *accord Ascii*, 844 F.Supp. at 1381. Because this court finds the cases granting stays to be inapposite to the present matter, Defendant's reliance on these authorities is misplaced.

2. Stay of the Proceedings Would Be Unfairly Prejudicial to Plaintiff.

In ruling on a motion to stay proceedings, a court should consider whether a stay would unduly prejudice the non-moving party. *See United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212, 217 (D.Del.1991); *Wayne*, 782 F.Supp. at 519. In the present case, it is clear that Plaintiff will be prejudiced by staying the proceeding. Discovery has closed and a trial date has been set. In addition, the court is persuaded by Plaintiff's argument that since "a stay for reexamination could last for years ... [a]fter such a passage of time, Remington's prayer for relief to enjoin Modern from further infringement may no longer have value as technology or market conditions change."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                    Page 3
Not Reported in F.Supp.2d, 1998 WL 1037920 (M.D.N.C.)
(Cite as: 1998 WL 1037920 (M.D.N.C.))

(Pl.'s Resp. Mot. Stay at 7.)

**\*3** The most compelling reason for denying the stay,
however, is Defendant's unjustified delay in requesting a
second reexamination with the PTO. Although Defendant
maintains that the newly found prior art, which forms the
basis for its second reexamination petition, was just recently
discovered, this court finds evidence to the contrary. The
record indicates that Defendant was aware of the prior art as
early as May 5, 1998, if not sooner, when Defendant
deposed the inventor of the patent. (Pl.'s Resp. Mot. Stay at
2; Resp. Def.'s Mot. Leave Am. Answer & Countercl. at 4.)
[FN3]

>    FN3. It is arguable that Defendant had knowledge
>    of this prior art as early as March 1998, when
>    Plaintiff filed a second but related patent
>    infringement lawsuit against Modern. In the second
>    action, Plaintiff attached a copy of the '073 patent
>    to the complaint, which included some of the prior
>    art (i.e., Rodney patent) that Defendant now alleges
>    Plaintiff should have disclosed to the PTO in its
>    '817 patent application. Thus, Defendant was put
>    on notice that the Rodney patent was relevant prior
>    art in March 1998. (Pl.'s Resp. Mot. Stay at 2, Ex.
>    4 and Ex. 4A.)
>    Finally, Defendant has failed to convince the court
>    that it was not fully aware of the existence of this
>    material prior to deposing patent attorney Donald
>    Huntley on July 6, 1997. On July 1, 1998, in the
>    second but related patent action, Defendant filed a
>    motion to amend the answer and counterclaim to
>    add the affirmative defense of inequitable conduct
>    based upon Plaintiff's failure to disclose material
>    prior art, despite the fact that it had not yet deposed
>    Mr. Huntley. (Resp. Def.'s Mot. Leave Am.
>    Answer & Countercl. at 4.) This strongly suggests
>    that Mr. Huntley's testimony was not critical to
>    Defendant's discovering the existence of this
>    undisclosed prior art.

Generally, courts are reluctant to stay proceedings where a
party is using the reexamination process merely as a dilatory
tactic. See *Freeman v. Minnesota Mining and Mfg. Co.,* 661
F.Supp. 886, 887 (D.Del.1987) (denying a stay where

defendant knew of the prior art for eight months yet delayed
in filing its request for reexamination). Therefore,
Defendant's unjustified delay in filing its reexamination
petition weighs in favor of denying the stay.

The PTO may ultimately conclude that in light of the
undisclosed prior art, Plaintiff's patent is invalid. Even if
this court, however, were to uphold the validity of the
patent, it is well settled that "the two forums can quite
correctly come to different conclusions regarding validity."
*Whistler Corp. v. Dynascan Corp.,* 29 U.S.P.Q.2d 1866,
1872 (N.D.Ill.1993); *Output Tech. Corp. v. Dataproducts
Corp.,* 22 U.S.P.Q.2d 1073-1074 (W.D.Wash.1991) ("[T]he
Court and PTO have different functions and they are
'concepts not in conflict.' ").

While the court would surely benefit from the expert
opinion of the PTO, [FN4] and while awaiting the outcome
of the reexamination process could possibly eliminate the
need for trial if the claims are canceled, prejudice to
Plaintiff counsels strongly against granting the stay.
Therefore, in its discretion, this court will deny Defendant's
Motion To Stay pending reexamination.

>    FN4. See *Bausch & Lomb Inc. v. Alcon Lab., Inc.,*
>    914 F.Supp. 951, 953 (W.D.N.Y.1996); *Wayne
>    Automation Corp. v. R.A. Pearson Co.,* 782
>    F.Supp. 516, 518 (E.D.Wash.1991); *United
>    Sweetener USA, Inc. v. Nutrasweet Co.,* 766
>    F.Supp. 212, 217 (D.Del.1991) (finding that the
>    PTO's expertise in construing the validity of a
>    patent is a factor which weighs heavily in favor of
>    granting a stay pending reexamination).

III. CONCLUSION

For the reasons stated above, the court will deny
Defendant's Motion To Stay District Court Proceedings
Pending Reexamination.

An order in accordance with this memorandum opinion
shall be filed contemporaneously herewith.

Not Reported in F.Supp.2d, 1998 WL 1037920 (M.D.N.C.)

**Motions, Pleadings and Filings (Back to top)**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 1998 WL 1037920 (M.D.N.C.)
**(Cite as: 1998 WL 1037920 (M.D.N.C.))**

• 2:97cv00660 (Docket) (Jun. 18, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CENTILLION DATA SYSTEMS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:04-CV-00073-LJM-WTL |
| ) | |
| CONVERGYS CORPORATION, ) | |
| QWEST COMMUNICATIONS INTERNATIONAL ) | |
| INC., and QWEST CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ------------------------------------------------------ ) | |
| QWEST CORPORATION and QWEST ) | |
| COMMUNICATIONS CORPORATION, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| CENTILLION DATA SYSTEMS, LLC, and ) | |
| CTI GROUP (HOLDINGS), INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF RENEWED MOTION TO STAY

Defendants Qwest Corporation, Qwest Communications Corporation, and Qwest Communications International (collectively, "the Qwest parties") hereby respectfully renew their motion to stay proceedings in the above-named case due to changed circumstances.

### I.  INTRODUCTION

New circumstances have arisen that mandate a stay in this case:  the United States Patent and Trademark Office ("USPTO") on June 26, 2005 ordered a reexamination of all the independent claims of the patent at issue, U.S. Patent Number 5,287,270 (the "'270"). The USPTO determined that prior art not previously considered by the USPTO "raises a substantial new question of patentability."

la-806556

Obviously, having the governmental agency charged with issuance of patents making a determination that substantial new questions of patentability exist with respect to the '270 patent is a new circumstance justifying a stay of this litigation.

Where, as here, few judicial resources have yet been expended and discovery has yet to commence in any depth, the prudent course – and the one followed by nearly all courts – is to order a stay in the proceedings until the reexamination is complete. Such a stay makes eminent good sense; not only will it conserve the resources of the parties and the Court, but it will allow issues to be streamlined.

On the other hand, if this case is allowed to proceed without knowledge of the reexamination findings, the Qwest parties will be severely prejudiced. The reexamination may well find the current independent claims of the '270 invalid, and therefore impact the scope, if not the entire validity, of all the dependent claims. Further, statements made in the reexamination process may and likely will impact the construction of the claims. Clearly, the Plaintiff will provide its argument stating that it is unlikely the USPTO will ultimately find the claims invalid. Of course, the Plaintiff argued wrongly to this court very recently that it was unlikely that the USPTO would grant reexamination of the '270 patent. Given the fact that infringement is based on a comparison of the accused device to the properly construed claims, any claim construction and infringement determination based on a current understanding of the patent would be highly inequitable. At a minimum, the claims would have to be construed again. Not only would this cost the parties, but the Court would pay as well in terms of lost hours of judicial resources.

In contrast, Defendant Centillion Data Systems LLC ("Centillion") can demonstrate little, if any, prejudice resulting from a stay in this case. As shall be seen, the reasons that Centillion put forth in its previous Opposition to Motion to Stay

la-806556

are but thin smokescreens that have no judicial impact on a determination of infringement or on Centillion's actual damages. In fact, Centillion's only argument that would in other circumstances potentially have some merit is prejudice resulting from time that passes which may result in witnesses becoming unavailable or documents being lost. However, Centillion first became aware of certain of the accused products as early as 1996, over seven years before initiating this litigation. For Centillion to now complain about delay that will allow the government agency having responsibility for issuing patents to do its job is simply another of its smokescreens.

Accordingly, the Qwest parties respectfully ask this Court to grant their renewed motion for stay.

## II. RELEVANT FACTS

The '270 patent, which covers a certain type of billing software, was granted on February 15, 1994. Centillion is in the business of, *inter alia*, patent enforcement. Despite the fact that the Qwest parties have been in a field that Centillion deems infringing since 1996 and Centillion was well aware of Qwest's activities at the time, Centillion waited to take up this attack on Qwest until September 2002 – eight years after the issuance of the '270 patent and almost six years after Qwest started offering some of the products accused of infringement. Centillion waited almost a year and a half before suing "Qwest," failing to identify specifically the Qwest entity targeted (and, for that matter, initially failing to actually identify any legal entity at all.) At the same time, Centillion sued several other companies. Most have taken licenses and settled out of the litigation – to avoid the cost of litigation.

In the meantime, the Qwest parties have refused to be "held up" by Centillion's "patent enforcement" program; they have sought to protect their rights substantively

la-806556

as well as procedurally. Believing the '270 patent to be invalid, the Qwest parties conducted searches in April and May and discovered prior art that discloses every element in the '270's independent claims: an article entitled *TI, SW Bell Unite in EDI Billing Trial* (the "SW Bell/TI Article"), and a document entitled *DMW Commercial Systems, Inc. Communications Management Software* (the "DMW Reference"). (Exhs. A and B, respectively.) Immediately thereafter, the Qwest parties filed for a request asking the USPTO to conduct a reexamination of the '270.

On June 26, 2005, the USPTO granted the reexamination request, stating, "It is agreed that SW Bell/TI Article taken alone or incombination [sic] with DMW Reference raises a substantial new question of patentability as to claims 1, 8, and 47. . . . There is a substantial likelihood that a reasonable Examiner would consider the SW Bell/TI Article important to deciding whether or not the claims are patentable." (Exh. C ¶ 3.) The USPTO is therefore considering whether the claims at issue are invalid under 35 U.S.C. §§ 102 (anticipation) or 103 (obviousness).

On May 13, 2005, the Qwest parties moved to stay proceedings in this action. Although the USPTO had not yet agreed to reexamine the '270 patent, the Qwest parties felt the most efficient method of proceeding was to stay the litigation at that time both because of the strength of the reexamination request and because, statistically, the USPTO grants 94% of the reexamination requests that are filed. Given discovery is was (and still is) in the initial stages, numerous discovery and other disputes were likely to consume the Court's time and resources, and the results of the reexamination were (and are) likely to have substantial impact on this litigation, Qwest argued for the stay even before a determination by the USPTO on whether it would grant the request. (*See generally* D.I.[1] 191, 192.) Centillion vehemently protested,

---

[1] The abbreviation "D.I." refers to the Docket Item number in the above-named case.

stating that the motion was premature "until such time as the Patent Office actually orders a reexamination." (D.I. 196 at 5.) The USPTO has now actually ordered a reexamination. On June 13, 2005, the Court denied the Qwest parties' previous motion to stay but stated that the Qwest parties could renew their motion "if the circumstances of the reexamination change in any way that may change the balance of . . . factors." (D.I. 203 at 3.)

With the grant of reexamination on June 26, 2005, due to substantial questions of patentability, the balance has shifted, and the time to grant a stay has come.

## III. STAYS ARE NEARLY ALWAYS GRANTED IN CASES UNDER THESE FACTS

It is well within the power of the Court to order a stay pending reexamination. See Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983). Indeed, a stay is nearly always ordered where – as here – one patent is at issue. See, e.g., Were v. Battenfeld Techs., Inc., Civ. No. 03-1471-AA, 2004 U.S. Dist. Lexis 23250, at **3-4 (D. Or. Nov. 9, 2004) (reexam would simplify issues because, inter alia, "even if the USPTO cancels just some of the claims 1 through 4, that may very well narrow the issues before this court."); Ascii Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1380 (N.D. Cal. 1994) (USPTO's expertise in reviewing the sole patent at issue in the litigation may later assist the court in resolving the patent claims); Gonnocci v. Three M Tool & Mach, Inc., 68 U.S.P.Q. 2d 1755 (E.D. Mich. 2003) (stay granted in part because the remaining patent claim at issue was before the USPTO on reexam); Guthy-Renker Fitness LLC v. Icon Health and Fitness, Inc., 48 U.S.P.Q. 2d 1058, 1060 (C.D. Cal. 1998) (reexam of single patent could narrow scope of the litigation or eliminate trial altogether); Bausch & Lomb v. Alcon, Inc., 914 F. Supp. 951, 953 (W.D.N.Y. 1996) (it would be a waste of resources of the court's time where the same patent is being adjudicated before the USPTO); Perricone v. Unimed Nutritional Servs., 2002 U.S. Dist.

la-806556

Lexis 17613, at **4–6 (D. Conn. July 18, 2002) ("The reexamination procedure will likely inform the Court's determination of the validity of the '868 patent. The reexamination could invalidate the '868 patent or require the patent to be amended."); *Tap Pharm. Prods. v. Aterix Labs., Inc.*, No. 03 C 7822, 2004 U.S. Dist. Lexis 3228, at **3–4 (N.D. Ill. Mar. 3, 2004) (stay warranted in part because the single patent at issue was in reexam).

## IV. DENIAL OF A STAY IS HIGHLY UNFAIR TO THE QWEST PARTIES

Judicial determination of infringement is a two-step inquiry: "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (citations omitted; emphasis added), *aff'd*, 517 U.S. 370 (1996).

Thus, the cornerstone of any infringement inquiry is the claim construction. Without knowing the results of the reexamination, it is impossible for the Court to construe the claims properly. The prosecution history and amendments to the claims are key to claim construction. *Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1300 (Fed. Cir. 2003) ("resort must always be made to . . . the prosecution history" when construing claim terms); *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002) (The prosecution history of the patent can reveal what "the applicant clearly and unambiguously disclaimed or disavowed. . . in order to obtain a claim allowance."). The prosecution history of the '270 includes the prosecution history of the reexamination. Thus, the USPTO's determination is essential: if the USPTO changes the scope of the claims, then the original scope never should have been granted in the first place. Further, if Centillion submits arguments in the reexamination (and it is likely they will do so) which may be used construe the

meaning of the claims, the Court must consider those statements in its construction of the claims.

Given the fact that claims are cancelled or amended in about <u>three-quarters</u> of reexaminations, allowing this case to proceed without knowledge of the reexamined claims – and forcing the parties to litigate the issue of claim construction followed by protracted litigation based on improperly construed claims – will grossly prejudice the Qwest parties. *See Teradyne, Inc. v. Hewlett-Packard Co.*, No. C-91-0344 MHP, 1993 U.S. Dist. LEXIS 14601, at *23 (N.D. Cal. Jan. 7, 1993) ("It has been estimated that in 77 percent of all re-examination applications, the claims are either amended or cancelled during re-examination."); *Rockwood Pigments, NA, Inc. v. Interstate Materials, Inc.*, No. 02-C-2178, 2002 U.S. Dist. LEXIS 9509, at *2-3 (N.D. Ill. May 29, 2002) ("[P]laintiff's data indicates that in third party requester re-examinations the claims are cancelled or at least changed 70 percent of the time.")

At a minimum, it is highly likely – about 75% likely – that the claims will need to be reconstrued after the reexamination is complete. It is also possible that, if the case is allowed to proceed, the Qwest parties may wind up having to litigate through trial twice, the first time needlessly based on an improper claim construction. All of this will cost significant amounts of time, of money, of judicial resources, and – should a verdict of infringement result based on improperly construed claims – may result in gross injustice.

Furthermore, as likely as it is that the claims will be amended or cancelled, it is equally likely that discovery will have been misdirected. An amendment to the scope of an independent claim will necessarily impact the scope of all of its dependant claims. Intervening rights will eliminate any prior damages based on infringement of

claims that have been amended.[2]  *See* 35 U.S.C. §§ 252, 307.  Thus, if the claims are amended, any finding of infringement or award of damages by this Court will be moot. Without a stay, discovery will have been too broad – thus costing time and money – or it will have been too narrow – thus costing time and money.  Either way, it makes no sense to proceed given that the litigation is in the early stages of discovery.  This is a major reason why nearly all courts put proceedings on hold when discovery has yet to really begin and a reexamination has been ordered.  *See* § III, *infra.*

For these reasons, the Qwest parties will be severely prejudiced if this case is allowed to proceed while the reexamination is pending.  As Centillion itself admits, a stay of proceeding is appropriate if denial of a stay would work a clear inequity, as it would here. (*See* D.I. 196 at 6.)  *See also Softview Computer Prods. Corp. v. Haworth, Inc.*, 97 Civ. 8815 (KMW)(HBP), 2000 U. S. Dist. LEXIS 11274, at **8-10, 56 U.S.P.Q. 2d (BNA) 1633 (S.D.N.Y. Aug. 9, 2000) (a stay pending reexamination will maximize the likelihood that the court and the parties will not spend resources unnecessarily on litigating claims found invalid by the PTO); *Clintec Nutrition Co. v Abbott Lab.*, Case No. 94 C 3152, 1995 U.S. Dist. LEXIS 4946, at *9 (N.D. Ill. Apr. 14, 1995) (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)) (one of the goals of the reexamination proceeding is to eliminate the unnecessary trial of an issue in the district court, such as when the PTO cancels an asserted claim).

## V.  THE THREE TRADITIONAL FACTORS WEIGH HEAVILY IN FAVOR OF A STAY

Three factors are traditionally considered in ordering a stay pending reexamination:  (i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (ii) whether a stay will simplify the issues in question and streamline trial; and (iii) whether a stay will reduce the burden of litigation on the

---

[2] Moreover, under equitable intervening rights, the Court will have discretion to also eliminate damages for any infringement going forward.  *See* 35 U.S.C. §§ 252, 307.

la-806556

parties and the court. *See Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808, 1993 U.S. Dist. LEXIS 6449, at *10 (N.D. Cal. May 5, 1993). As shall be seen, these factors now weigh heavily in favor of granting a stay.

**A. Centillion's "Prejudice" Is a Smokescreen Belied by the Facts and the Law.**

The claims of prejudice that Centillion asserted in its opposition to the Qwest parties' original motion comprise nothing but a smokescreen. Both Centillion's historical actions as well as the law belie its claims.

Specifically, Centillion asserts the following potential biases resulting from a stay: 1) spoliation of evidence; 2) loss of the right to enjoin; and 3) diminished value.

First, Centillion's claim that it will be prejudiced because "third parties may unknowingly spoil evidence" related to the creation of Qwest's accused software overlooks the fact that a determination of infringement centers solely on a comparison of the properly construed claims to the accused device. *See Markman*, 52 F.3d at 976. Whether the software infringes will not depend on how that software was created. Therefore, this issue of "evidence spoliation" is not material to an infringement analysis.

Moreover, Centillion's claim of potential evidence spoliation is belied by the fact that Centillion waited over 7 years before filing this lawsuit. Indeed, even after initially threatening Qwest in 1996 and then waiting 6 years to again contact Qwest, it was in no hurry to file this lawsuit: it waited almost a year and a half before filing this litigation. And, even then, it caused further delay in this litigation by naming an entity that did not even exist and, despite being told of its clear error, refused to simply amend its complaint without requiring use of this Court's time to hear motions on the issue. Thus, Centillion's claims of urgency ring hollow.

la-806556

Second, Centillion's complaint regarding the loss of its right to enjoin is a red herring. Centillion has willingly licensed its patent to others, including several former defendants in this lawsuit. Therefore, exclusivity is not the real goal here; leverage is. In fact, its CEO has publicly stated that this effort is about obtaining licensing revenue. With all due respect to the right of a patentee to exclude, the leverage provided by the threat of an injunction should not come at the cost of civil justice.

As for Centillion's third assertion of prejudice – diminished value – it has no merit. The progress of technology has nothing to do with the progress of litigation. Any competent arms-length negotiation – whether it takes place in a year or in three years – will take into account technology forecasts.

In any case, should the verdict in this case and the USPTO's findings conflict, it is highly unlikely that Centillion will get its injunction: the Federal Circuit approves stays of permanent injunctions when USPTO findings and court rulings conflict. *See, e.g., Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 897 F.2d 511, 513-15 (Fed. Cir. 1990) (granting stay of permanent injunction and finding that reexamination by USPTO presented a substantial legal question of validity); *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 835 F.2d 277 (Fed. Cir. 1987) (granting stay of permanent injunction and finding that conflicting validity rulings between USPTO and district court raised substantial legal questions for appeal).

Centillion's weak contentions of prejudice should be seen for what they are: excuses designed to inveigle the Court into increasing Centillion's power to pry an unjust license out of the Qwest parties.

### B. A Stay Will Simplify the Issues and Streamline Trial.

It is obvious that the results of the reexamination will simplify the issues and streamline trial: the Court and the parties will have a firm idea of which claims (if

any) are valid and what their scope is. As the Qwest parties noted in their previous motion,

> One purpose of the re-examination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the USPTO (when a claim survives the re-examination proceeding).

*Gould,* 705 F.2d at 1342; *see also Amsted,* 1993 U.S. Dist. LEXIS 21073, at *2 (same). "Even if issues remain to be litigated after the re-examinations are completed, the cost and scope of the remaining litigation are likely to be substantially reduced." *Sun-Flex Co. v. Softview Computer Prods. Corp*, No. 89-C-296, 1989 U.S. Dist. LEXIS 11360, at *2 (N.D. Ill. Sept. 27, 1989).

On the other hand, if a stay is not ordered, the issues and trial will become disproportionately more complicated. Instead of being focused on the actual scope of the claims, the parties will likely need to litigate the same issues twice, once before and once after the reexamination. This can easily be avoided by simply waiting until the reexamination is complete.

### C. A Stay Will Reduce the Burden of Litigation on the Parties and the Court.

New discovery, a new claim construction, and even a new trial: any one or all of these are likely results if the case and the reexamination proceed contemporaneously, which will cost additional time, money, and judicial resources. If the USPTO is allowed to make its determination first, the independent claims may well be eliminated. The dependent claims may be narrowed or eliminated. Statements may be made by Centillion that will impact construction of the claim language. All of this progress will allow the Court as well as the parties to focus their resources on the issues that matter.

The burden of litigation will be further lightened by the USPTO performing part of the needed analysis for the Court in one of its fields of expertise: prior art. *See,*

la-806556

e.g., *Emhart Indus. v. Sankyo Seiki Mfg.*, 3 U.S.P.Q.2d (BNA) 1889, 1890 (N.D. Ill. 1987) (USPTO possesses "particular expertise" in evaluating prior art). Again, this conserves time, money, and judicial resources. *See Methode Elecs., Inc. v. Infineon Techs. Corp.*, No. C-99-21142-JW, 2000 U.S. Dist. LEXIS 20689, at *6 (N.D. Cal. Aug. 7, 2003).

And where, as here, the case is only in the beginning stages of discovery, a stay of the proceedings make eminent sense. *See, e.g., Were v. Battenfeld Techs., Inc.*, Civ. No. 03-1471-AA, 2004 U.S. Dist. Lexis 23250, at **3-4 (D. Or. Nov. 9, 2004) (only a single set of discovery requests had been responded to and no depositions had been taken); *Tap Pharm. Prods. v. Aterix Labs., Inc.*, No. 03 C 7822, 2004 U.S. Dist. Lexis 3228, at **3-4 (N.D. Ill. Mar. 3, 2004) (stay warranted because discovery had not begun); *Guthy-Renker Fitness LLC v. Icon Health and Fitness, Inc.*, 48 U.S.P.Q. 2d 1058, 1060 (C.D. Cal. 1998) (no significant discovery had been conducted); *Target Therapeutics, Inc. v. Scimed Life Sys., Inc.*, 33 U.S.P.Q. 2d (BNA) 2022 (N.D. Cal. 1995) (granting stay because case was in "incipient stages"); *Ascii Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994) (little discovery had occurred).

la-806556

## VI. CONCLUSION

The Qwest parties therefore respectfully renew their request that the Court immediately enter a stay of proceedings in this action, pending the outcome of the re-examination of the '270 Patent by the United States Patent and Trademark Office.

*s/ James W. Riley, Jr.*
James W. Riley, Jr.
No. 6073-49
RILEY BENNETT & EGLOFF, LLP
141 East Washington Street
Fourth Floor
Indianapolis, Indiana 46204
(317) 636-8000
(317) 636-8027 Fax

Vincent J. Belusko
Hector G. Gallegos
MORRISON & FOERSTER LLP
555 West Fifth Street
Suite 3500
Los Angeles, California 90013-1024

Attorneys for Defendants, Qwest Corporation and Qwest Communications International Inc. and Counter-Plaintiff, Qwest Communications Corporation

la-806556

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2005, a copy of the foregoing *Memorandum in Support of Motion to Stay* was filed. Notice of this filing will be sent by operation of the Court's electronic filing system or by U.S. Mail, postage pre-paid, to the following:

| | |
|---|---|
| David C. Campbell<br>Hamish S. Cohen<br>BINHAM McHALE, LLP<br>2700 West Market Tower<br>10 West Market Street<br>Indianapolis, IN 46204-4900<br>dcampbell@binghammchale.com<br>hcohen@binghammchale.com<br><br>Michael C. Greenbaum<br>Michael D. White<br>Peter S. Weissman<br>Denise Lane-White<br>Victor M. Wigman<br>H. Keeto Sabharwal<br>BLANK ROME, LLP<br>600 New Hampshire Avenue, N.W.<br>Washington, DC 20037<br>greenbaum@blankrome.com<br>white@blankrome.com<br>weissman@blankrome.com<br>lane-white@blankrome.com<br><br>Grant S. Palmer<br>Matthew J. Siembieda<br>BLANK ROME, LLP<br>One Logan Square<br>Philadelphia, PA 19103-6299<br>palmer@blankrome.com<br>siembieda@blankrome.com<br><br>Leonard D. Steinman<br>BLANK ROME, LLP<br>405 Lexington Avenue<br>New York, NY 10174<br>lsteinman@blankrome.com | *Counsel for Plaintiff, Centillion Data Systems, LLC* |
| James Dimos<br>Randall R. Riggs<br>Joel E. Tragesser<br>LOCKE REYNOLDS, LLP<br>201 North Illinois Street, Suite 1000 | *Counsel for Defendant, Convergys Corporation* |

la-806556

|  |  |
|---|---|
| P.O. Box 44961<br>Indianapolis, Indiana 46244<br>jdimos@locke.com<br>rriggs@locke.com<br>jtragesser@locke.com<br><br>Edward Han<br>Matthew J. Moore<br>Mark D. Wegener<br>HOWREY SIMON ARNOLD & WHITE, LLP<br>1299 Pennsylvania Ave, N.W.<br>Washington, DC 20004 |  |

s/ James W. Riley, Jr.
James W. Riley, Jr.

JWR/lar/393-55/JWRCL/6008 297

la-806556

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CENTILLION DATA SYSTEMS, LLC, | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No. 05-712 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| AVOLENT, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF DOUG ROBERTS IN SUPPORT OF AVOLENT INC.'S MOTION
TO STAY ACTION PENDING REEXAMINATION OF THE '270 PATENT**

I, Doug Roberts, declare as follows:

1.     I am the chief executive officer of Avolent, Inc. and have held this position since June of 2002. The following is true of my own knowledge and, if called as a witness, I could and would testify competently thereto.

2.     Avolent does not compete in the market with Centillion Data Systems or its parent CTI Group (to whom I will refer collectively as "Centillion"). Until Centillion began efforts to enforce this patent against Avolent in 2004, I did not even know that Centillion existed. Avolent has never encountered Centillion as a competitor in an existing or potential customer account and continues to this day not to see Centillion in its market.

3.     To know what Centillion's business is, I looked at its website. On the Investor's Relations page of Centillion's website (at the URL "www.ctigroup.com/investor_relations/index.asp"), Centillion describes three different kinds of business: electronic invoice management, telemanagement, and patent enforcement activities.

The closest of these businesses to anything Avolent does is the electronic invoice management business. Regarding this part of its company, Centillion states that: "Electronic invoice management software and services are provided and sold directly to service providers who then market and distribute such software to their customers." This is not the market to which Avolent advertises its product. Avolent sells to healthcare payors, leasing companies, and distribution companies.

     4.     I am aware of a suggestion by Centillion that Avolent's software was created in whole or in part through outsourcing to our third party "software partners." This is untrue. No third party software partner participated in the creation of our products. The functionality of our products that I understand to be relevant to Centillion's claim of infringement was developed in-house by Avolent many years ago. Any existing documents, including any in electronic form, relating to the creation of Avolent's software products accused of infringement in this lawsuit are within our possession or control since those products were created in-house.

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed this 30th day of November, 2005, at San Francisco, California.

<br>

_____
Doug Roberts

# EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2001 WL 34368283 (D.Del.)
**(Cite as: 2001 WL 34368283 (D.Del.))**

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
COGNEX CORPORATION, Plaintiff,
v.
NATIONAL INSTRUMENTS CORPORATION,
Defendant
**No. Civ.A. 00-442-JJF.**

June 29, 2001.

Neal C. Belgam, and Dale R. Dube, of Blank Rome
Comisky & McCauley LLP, Wilmington, Delaware, George
M. Sirilla, G. Paul Edgell, and William P. Atkins, of
Pillsbury Winthrop LLP, Washington, D.C., for Plaintiff, of
counsel.

William J. Marsden, Jr., and John T. Meli, Jr., of Fish &
Richardson P.C., Wilmington, Delaware, Frank E.
Scherkenbach, David M. Barkan, and John V. Picone III, of
Fish & Richardson P.C., Menlo Park, California, for
Defendant, of counsel.

*MEMORANDUM OPINION*
FARNAN, J.

**\*1** Pending before the Court in this patent infringement
action is Cognex Corporation's Motion To Stay Or, In The
Alternative, For An Extension Of The Deadlines In This
Case (D.I.84). By its Motion, Plaintiff, Cognex Corporation
("Cognex"), requests a stay or, in the alternative, a three
month delay in the proceedings in this case, because it has
requested a reexamination of the patent in suit by the United
States Patent and Trademark Office ("PTO"). By letter dated
May 29, 2001, Cognex advised the Court that the PTO
granted Cognex's request for reexamination of United States
Patent No. 5,481,712 (the " '712 Patent"). Cognex contends
that reexamination of the '712 Patent will narrow and/or
resolve the issues in this case. Specifically, Cognex
contends that if the '712 Patent is declared unpatentable, it is
likely that the patent litigation will be dismissed. On the
other hand, if the PTO finds the '712 Patent patentable over

the prior art, Cognex contends that the PTO decision might
encourage the parties to settle this action.

Defendant, National Instruments Corporation ("National
Instruments"), opposes any stay in this case. Specifically,
National Instruments contends that a stay would cause
National Instruments severe prejudice because: (1) the
litigation schedule and trial date would be delayed causing
National Instruments additional expense; (2) Cognex would
be able to continue to hold the specter of litigation over
National Instruments and its customers; and (3) Cognex has
already forced National Instruments to spend over a million
dollars defending itself in this action before requesting the
stay, despite the fact that Cognex had the materials
necessary to seek reexamination earlier.

After reviewing the parties' positions with respect to the
instant motion and the applicable law, the Court concludes
that a stay and/or extension is not warranted in this case.
Accordingly, for the reasons discussed, the Court will deny
Cognex's Motion To Stay Or, In The Alternative, For An
Extension Of The Deadlines In This Case.

DISCUSSION
The decision to grant or deny a stay is within the court's
broad range of discretionary powers. *Dentsply International,
Inc. v. Kerr Manufacturing Co., 734 F.Supp. 656, 658
(D.Del.1990)* (citations omitted). In determining whether a
stay is appropriate, the court should "weigh the competing
interests of the parties and attempt to maintain an even
balance." *Id.* In weighing the interests involved, courts are
generally guided by such factors as (1) whether a stay would
unduly prejudice or present a clear tactical advantage to the
non-movant; (2) whether a stay will simplify the issues
raised by the parties; and (3) whether discovery is complete
and a trial date has been set. *Gioello Enterprises Ltd. v.
Mattel, Inc., 2001 WL 125340 (D.Del. Jan.29, 2001);
United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp.
212, 217 (D.Del.1991).* In balancing these factors, courts
must be particularly mindful of the consequences of the stay
on other parties. *Dentsply International, 734 F.Supp. at 658*
(recognizing that Court must consider whether "there is
'even a fair possibility' that the stay would work damage on
another party") (citations omitted). Where a stay will
forestall the trial date agreed upon by the parties, this Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368283 (D.Del.)
(Cite as: 2001 WL 34368283 (D.Del.))

Page 2

has required the party requesting the stay to "make a showing of 'a clear case of hardship or inequity' before the Court can enter a stay order." *Id.* (citing *Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1076 (3d Cir.1983)*)

**\*2** In this case, discovery was scheduled to close on May 4, 2001, less than three weeks before Cognex filed the instant Motion To Stay, and trial is scheduled for October 23, 2001. [FN1] Accordingly, Cognex must demonstrate a clear case of hardship or inequity before the Court will enter an order staying this action.

> FN1. Although discovery has since been extended until July 2001 by stipulation between the parties (D.I.106), the trial date in this case has not been changed.

After reviewing the parties' arguments, the Court concludes that Cognex cannot demonstrate a clear case of hardship or inequity, and that National Instruments would be prejudiced if the Court were to grant a stay in this case. Cognex primarily contends that reexamination will simplify the issues in this case such that the litigation may be settled or dismissed and the parties' expenses significantly reduced. However, as National Instruments points out, Cognex's complaint alleges a variety of claims which are not linked to the patent infringement claim, including claims of copyright and trademark infringement and unfair competition, all of which will require a trial.

In addition, Cognex contends that the reexamination may result in changed claims, which would cause this action to be litigated twice, wasting the Court's and the parties' resources. However, the Court is unpersuaded by Cognex's contention. The trial in this case is scheduled for October 2001, and the PTO granted Cognex's request for reexamination in May 2001. Although Cognex disputes the figures provided by National Instruments concerning the pendency of applications in the PTO because National Instruments relies on original applications rather than reexamination applications, even Cognex's figures suggest that the median reexamination time is 16 months. Thus, given the current time tables for action in the PTO, the Court believes that the trial in this case will likely be

completed prior to any action by the PTO. (D.I. 87 at Exh. G; D.I. 94, Exh. D)

Further, any hardship incurred by Cognex as a result of its request for reexamination is, in part, a result of Cognex's own making. National Instruments contends and Cognex has not disputed, that Cognex has had at least some of the documents it presented to the PTO in its request for reexamination for quite some time. National Instruments identified specific prior art references in its Answer to the Complaint in June 2000, yet Cognex waited until six months before the scheduled trial date in this case to seek reexamination of the '712 Patent. [FN2] Accordingly, the Court cannot conclude that Cognex has demonstrated a clear case of hardship or inequity justifying a stay in this case. *Dentsply, 734 F.Supp. at 659* ("The Court will not elevate [a party's] failure to address its concerns in a timely fashion to an example of hardship warranting a stay."); *see also Remington Arms Company, Inc. v. Modern Muzzleloading, Inc., 1998 WL 1037920 (D.N.C. Dec.17, 1998)* (denying stay where trial date set and defendant's delay in requesting reexamination with PTO was unjustified given that defendant knew of the prior art forming its request for reexamination well prior to its reexamination request).

> FN2. Although Cognex contends that National Instruments did not produce many of these documents until much later, National Instruments also contends and Cognex has not disputed, that some of the documents Cognex presented to the PTO were in Cognex's possession as early as 1990, well before the inception of this litigation. Thus, it appears to the Court that Cognex still could have filed its request for reexamination at an earlier date.

**\*3** Moreover, given the late stage of Cognex's request, the Court finds that any delay in the trial date scheduled for this case would severely prejudice National Instruments. The parties have conducted extensive discovery in Delaware, California, Texas, Washington, D.C. and Massachusetts based on a schedule coinciding with the October 23 trial date. National Instruments has scheduled its experts and made trial support accommodations in Delaware based upon the October 23 trial date. Any deviation from the October trial date at this late stage in the litigation would necessarily

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 34368283 (D.Del.)
**(Cite as: 2001 WL 34368283 (D.Del.))**

prejudice National Instruments. *See Wayne Automation Corp. v. R.A. Pearson Co., 782 F.Supp. 516 (E.D.Wash.1991)* (denying plaintiff's motion for stay where parties conducted extensive discovery and trial date was set). Accordingly the Court will deny Cognex's request for a stay.

As for Cognex's request for alternative relief in the form of a three month extension, the Court notes that the discovery deadlines in this case have been extended by stipulation of the parties. This scheduling extension should address Cognex's time concerns without necessitating a change in the October 2001 trial date. Accordingly, at this time, the Court will deny Cognex's request for a three month extension.

### CONCLUSION

For the reasons discussed, Cognex Corporation's Motion To Stay Or, In The Alternative, For An Extension Of The Deadlines In This Case will be denied.

An appropriate Order will be entered.

Not Reported in F.Supp.2d, 2001 WL 34368283 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00442 (Docket) (May. 02, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.